# EXHIBIT A

CONFIDENTIAL
Offering Circular dated December 19, 2006

$302,182,000
(Approximate)

# Flagstar Home Equity Loan Trust 2006-2

Issuing Entity

## Home Equity Loan Asset Backed Notes, Series 2006-2

Flagstar ABS, LLC

Depositor

### Flagstar Capital Markets Corporation

Seller

### Flagstar Bank, FSB

Originator, Sponsor, Servicer and Custodian



| | The Notes |
|---|---|
| **Consider carefully the risk factors beginning on page 10 in this offering circular.** | The notes are being offered pursuant to this offering circular: |

| Original Note Principal Balance [1] | Note Rate [3] | Proceeds to Depositor [2] |
|---|---|---|
| $302,182,000 | LIBOR + 0.16% | $301,426,545 |

(1) Subject to a permitted variance of plus or minus 10%.
(2) Before deducting expenses payable by the depositor estimated to be approximately $750,000.
(3) The Notes will accrue interest at a rate equal to the least of (i) One-Month LIBOR plus 0.16%, (ii) the Net WAC Rate, and (iii) 16.00%. The margin over one-month LIBOR payable on the Notes will be multiplied by two as of the interest period starting on the first payment date after the date on which the optional termination may be first exercised.

The Notes represent obligations of the Flagstar Home Equity Loan Trust 2006-2 only and do not represent an interest in or obligation of the depositor, the seller, the sponsor, the servicer, the owner trustee, the indenture trustee or any of their affiliates.

**The Trust Estate**
The notes will be secured by the trust estate consisting primarily of home equity revolving credit line loans made or to be made in the future under certain home equity revolving credit line loan agreements. The loans will generally be secured by second deeds of trust or mortgages primarily on one- to four-family residential properties and will bear interest at rates that adjust based on the prime rate.

**Credit Enhancement**
Credit enhancement for the notes consists of:

- an irrevocable and unconditional financial guaranty insurance policy issued by Financial Security Assurance Inc.,
- overcollateralization, and
- excess interest.

The credit enhancement for the notes is described in more detail in this offering circular.

**The Policy**
Financial Security Assurance Inc. will issue an irrevocable and unconditional financial guaranty insurance policy that will guarantee certain payments of principal and interest to noteholders.



THE OFFERED NOTES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR REGISTERED OR QUALIFIED UNDER ANY APPLICABLE STATE SECURITIES LAWS AND ARE BEING OFFERED ONLY TO (A) "QUALIFIED INSTITUTIONAL BUYERS" WITHIN THE MEANING OF RULE 144A UNDER THE SECURITIES ACT AND (B) TO CERTAIN PERSONS THAT ARE NOT U.S. PERSONS (WITHIN THE MEANING OF REGULATION S UNDER THE SECURITIES ACT) OUTSIDE THE UNITED STATES IN RELIANCE ON REGULATION S UNDER THE SECURITIES ACT. THE OFFERED NOTES WILL NOT BE TRANSFERABLE EXCEPT IN ACCORDANCE WITH THE RESTRICTIONS DESCRIBED UNDER "NOTICE TO INVESTORS."

J.P. Morgan Securities Inc. (the "*Initial Purchaser*") will offer the notes from time to time in negotiated transactions or otherwise at varying prices to be determined at the time of sale, plus accrued interest, if any, from December 21, 2006 (the "*Closing Date*"), subject to its right to reject orders in whole or in part. See "Method of Offering" in this offering circular. The notes will be issued in book-entry form on or about December 21, 2006 through the facilities of The Depository Trust Company and, upon request, through Clearstream, Luxembourg and the Euroclear System.

# JPMorgan

December 19, 2006

**OFFERING CIRCULAR**

**Table of Contents**

| Page | | Page |
|---|---|---|
| Summary......1 | Description of the Sale and Servicing Agreement......64 | |
| Risk Factors......10 | Fees and Expenses......72 | |
| The Issuing Entity......25 | Description of the Purchase Agreement......75 | |
| The Note Insurer......27 | Use of Proceeds......75 | |
| The Depositor......29 | Certain Legal Aspects of the Loans......75 | |
| The Seller......29 | Certain Federal Income Tax and ERISA Considerations......82 | |
| The Sponsor and Servicer......30 | Legal Investment Considerations......88 | |
| Underwriting Procedures......30 | Method of Offering......89 | |
| Description of the Mortgage Loans......32 | Legal Matters......90 | |
| Maturity and Prepayment Considerations......35 | Ratings......90 | |
| Pool Factor......37 | Index of Defined Terms......91 | |
| Description of the Notes......37 | | |
| Description of the Indenture......55 | | |

EXHIBIT A   —   Form of Transfer Certificate – Regulation S Global Security

EXHIBIT B   —   Form of Transfer Certificate – Rule 144A Global Security

## Summary

**This summary highlights selected information from this document and does not contain all of the information that you need to consider in making your investment decision. To understand all of the terms of the offering of the notes, read carefully this entire document.**

**Issuing Entity**

The issuing entity is Flagstar Home Equity Loan Trust 2006-2, a Delaware statutory trust.

**Offered Notes**

Flagstar Home Equity Loan Trust 2006-2 will issue one class of notes and the transferor interest in the Flagstar Home Equity Loan Trust 2006-2. Only the notes are offered by this offering circular.

**Trust Estate**

The trust estate will initially consist of a pool of home equity revolving credit line loans made or to be made in the future under certain home equity revolving credit line loan agreements. During the revolving period the trust estate will also include certain principal and interest collections deposited into the funding account to be used to reduce the additional balance increase amount, to acquire additional balances arising under mortgage loans included in the trust estate and to acquire additional mortgage loans that are not included in the cut-off date pool. The initial mortgage loans and any additional mortgage loans will generally be secured by second deeds of trust or mortgages on primarily one- to four-family residential properties and will bear interest at rates that adjust from time to time based on the prime rate. We sometimes refer to these loans as mortgage loans. The aggregate principal balance of the mortgage loans as of the cut-off date is approximately $302,182,242.

**Depositor**

Flagstar ABS, LLC, a Delaware limited liability company, is a wholly-owned subsidiary of Flagstar Bank, FSB. Its address is 5151 Corporate Drive, Troy, Michigan 48098 and its telephone number is 866-372-8255.

See *"The Depositor"* in this offering circular.

**Seller**

Flagstar Capital Markets Corporation, a Delaware corporation, is a wholly-owned subsidiary of Flagstar Bank FSB.

See *"The Seller"* in this offering circular.

**Sponsor, Originator, Servicer and Custodian**

Flagstar Bank, FSB is a federally-chartered savings bank and a wholly-owned subsidiary of Flagstar Bancorp, Inc., a Michigan corporation, headquartered in Troy, Michigan.

See *"The Sponsor and Servicer"* in this offering circular.

**Indenture Trustee**

The Bank of New York Trust Company, N.A.

**Owner Trustee**

Wilmington Trust Company, a Delaware banking corporation.

**Note Insurer**

Financial Security Assurance Inc.

See *"The Note Insurer"* in this offering circular.

**Auction Agent**

The Bank of New York Trust Company, N.A.

**Indenture**

The notes will be issued pursuant to an indenture between the issuing entity and the indenture trustee.

**Cut-off Date**

For the initial mortgage loans, December 1, 2006, and for any additional mortgage loan purchased during the revolving period, the cut-off date designated for that mortgage loan in the subsequent transfer agreement.

1

**Closing Date**

December 21, 2006.

**Payment Date**

The indenture trustee will make payments on the 25th day of each calendar month beginning in January 2007. If the 25th day of a month is not a business day, then the payment date will be the next business day after the 25th day of the month.

**Record Date**

The day before a payment date or, if the notes are no longer book-entry notes, the last day of the month preceding a payment date.

**Denominations**

The notes will be issued in minimum denominations of $100,000 and multiples of $1,000 in excess of that amount.

**Form of Notes**

The notes will initially be issued in book-entry form. Persons acquiring beneficial ownership interests in the notes may elect to hold their beneficial interests through The Depository Trust Company in the United States, and upon request, Clearstream, Luxembourg or the Euroclear System in Europe.

See *"Description of Notes—Book-Entry Notes"* in this offering circular.

**The Mortgage Loans**

*General*

The mortgage loans are revolving lines of credit. During their draw period, each borrower may borrow additional amounts from time to time up to the credit limit of that borrower's line of credit. If borrowed amounts are repaid, they may again be borrowed during the draw period. All of the mortgage loans are balloon loans which have a lump sum payment of the outstanding principal due after the end of the draw period. The draw period of the mortgage loans is 10 years after origination.

The loan pool balance equals the aggregate of the principal balances of all mortgage loans plus any amounts in the funding account. The principal balance of a mortgage loan (other than a liquidated mortgage loan) on any day is equal to:

- its related cut-off date principal balance;

  plus

- any additional borrowings on that mortgage loan;

  minus

- all collections credited against the principal balance of that mortgage loan before that day.

Once a mortgage loan is finally liquidated, its principal balance is zero.

As of their cut-off date, the initial mortgage loans had the following characteristics:

Number of loans ....................4,186

Aggregate principal
balance..................................$302,182,242

Average principal
balance..................................$72,189

Range of principal
balances ...............................$2 to $1,270,163

Average credit limit..............$95,137

Average credit limit
utilization rate.......................75.88%

Weighted average
fully indexed
interest rate ..........................9.432%

Range of fully
indexed interest
rates .....................................7.240% to 14.200%

Weighed average
original term .........................120

Weighted average
remaining term......................112

Weighted average
remaining draw term
to stated maturity ..................112

Weighted average
credit score............................715

See *"Description of Mortgage Loans"* in this offering circular.

2

The custodian may resign immediately at any time by giving written notice thereof to the indenture trustee, Servicer, the transferor, and the Note Insurer. No resignation or removal of the custodian and no appointment of a successor custodian shall become effective until the acceptance of appointment by a successor custodian.

Upon the resignation or removal of the Custodian, the indenture trustee shall become the successor custodian, unless the note insurer has consented in writing to the appointment of a different successor custodian.

## Description of the Sale and Servicing Agreement

**Assignment of Mortgage Loans**

At the time of issuance of the notes, the depositor will transfer to the issuing entity all of its interest in each initial mortgage loan acquired by the depositor from the seller on the closing date (including any Additional Balances arising in the future), including all collections received on each initial mortgage loan after the cut-off date of the initial mortgage loans (exclusive of payments of accrued interest due on or before the cut-off date of the initial mortgage loans). The owner trustee, concurrently with the transfer, with the consent of the Note Insurer, will deliver the notes to the depositor and the transferor certificate to the transferor. Subsequent transfers may occur with respect to purchases of Additional Mortgage Loans on dates specified by the depositor during the Revolving Period. On those Subsequent Transfer Dates the depositor will transfer to the issuing entity all of its interest in the Additional Mortgage Loans being acquired by the depositor from the seller on such Subsequent Transfer Date, including all collections received on the Additional Mortgage Loans after the applicable cut-off date. Each mortgage loan transferred to the issuing entity will be identified on a mortgage loan schedule delivered to the indenture trustee pursuant to the sale and servicing agreement. The mortgage loan schedule will include information as to the Cut-off Date Principal Balance of each initial mortgage loan as of its cut-off date or as to the subsequent cut-off date principal balance of each Additional Mortgage Loan as of its cut-off date, as applicable, as well as, in each case, information with respect to the loan rate.

The sale and servicing agreement will require that the seller deliver to the depositor for delivery to the issuing entity, and the issuing entity will deliver to the custodian, on the closing date, the mortgage notes related to the initial mortgage loans with a legend affixed thereto indicating the interest of the issuing entity and, on each Subsequent Transfer Date, the mortgage notes related to the Additional Mortgage Loans transferred to the issuing entity on that date with a legend affixed thereto indicating the interest of the issuing entity, and the related mortgage, an assignment of mortgage in blank, related credit line agreements, and certain other related documents (the "*Related Documents*") on the closing date or the Subsequent Transfer Date, as applicable.

In accordance with the sale and servicing agreement and the custodial agreement, on the closing date the custodian will certify that it has received a mortgage note and the Related Documents for each of the mortgage loans. Within 180 days of the closing date, with respect to the initial mortgage loans, and within 180 days of the relevant Subsequent Transfer Date with respect to the Additional Mortgage Loans, the custodian will review the mortgage loans and the Related Documents. If any mortgage loan or Related Document is missing or found to be defective in any material respect and the defect is not cured within 90 days following notification of it to the seller and the depositor by the indenture trustee, the seller must accept the transfer of the mortgage loan from the trust estate. The principal balance of any mortgage loan so transferred will be deducted from the Loan Pool Balance, thus reducing the amount of the Overcollateralization Amount. If the deduction would cause a Transfer Deficiency to exist, the seller or, if the seller fails to do so, the sponsor must either transfer an Eligible Substitute Mortgage Loans to the issuing entity or make a deposit into the custodial account equal to the Transfer Deposit Amount. *See "Transfer Deficiency" and "Transfer Deposit Amount" under "Maturity and Prepayment Considerations" in this offering circular*. The payment of any Transfer Deposit Amount under such circumstances will be treated under the sale and servicing agreement as a payment of principal of the mortgage loan. Any Transfer Deposit Amount will be treated as a principal collection on the related mortgage loan. No transfer shall be considered to have occurred unless all required deposits to the custodial account are actually made. The obligation of the seller to accept a transfer of a Defective Mortgage Loan and to make any required deposits are the sole remedies for any defects in the mortgage loans and Related Documents available to the owner trustee, the indenture trustee or the noteholders.