IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSURED GUARANTY MUNICIPAL CORP., f/k/a FINANCIAL SECURITY ASSURANCE INC.,<br><br>    Plaintiff,<br><br> vs.<br><br>FLAGSTAR BANK, FSB; FLAGSTAR CAPITAL MARKETS CORPORATION; and FLAGSTAR ABS, LLC,<br><br>    Defendants. | Civil Action No. 11–CIV–2375 (JSR) |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION *IN LIMINE* REGARDING THE USE OF SAMPLING

Stephen D. Susman
Jacob W. Buchdahl
Arun Subramanian
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, NY 10022
(212) 336-8330
ssusman@susmangodfrey.com
jbuchdahl@susmangodfrey.com
asubrama@susmangodfrey.com

*Attorneys for Plaintiff Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc.*

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

        A.      The Court is Authorized to Approve AG's Proposed Use of Sampling ................. 5

        B.      Sampling is Generally Acknowledged as a Proper Method of Proof ..................... 6

        C.      AG's Intended Uses of Sampling at Trial Are Proper ............................................ 8

        D.      AG's Proposed Sample Will Be Developed by an Expert Statistician ................. 12

        E.      The Court Should Promptly Rule on the Propriety of Sampling in this Case ................................................................................................................... 13

CONCLUSION .......................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Cases**

*Allied Tube & Conduit Corp. v. Southern Pac. Transp. Co.*,
    211 F.3d 367 (7th Cir. 2000) .................................................................................................. 10

*Bippley v. Hollenback*,
    644 N.Y.S.2d 852 (N.Y. Sup. Ct. App. Div. 3d Dept. 1996) ................................................... 11

*Chaves County Homes Health Serv., Inc. v. Sullivan*,
    931 F.3d 914 (D.C. Cir. 1991) ................................................................................................... 7

*Chicago v. Reliable Truck Parts Co.*,
    822 F. Supp. 1288 (N.D. Ill. 1993) ...................................................................................... 9, 10

*Flomenbaum v. N.Y. Univ.*,
    890 N.Y.S.2d 493 (N.Y. Sup. Ct. App. Div. 1st Dep't. 2009) ................................................... 8

*Gerardo v. Commissioner*,
    552 F.2d 549 (3d Cir. 1977) ....................................................................................................... 7

*Hilao v. Estate of Marcos*,
    103 F.3d 767 (9th Cir. 1996) ..................................................................................................... 7

*Ill. Physicians Union v. Miller*,
    675 F.2d 151 (7th Cir. 1982) ..................................................................................................... 7

*In re September 11 Litigation*,
    236 F.R.D. 164 (S.D.N.Y. 2006) ............................................................................................... 5

*Integrated Circuits Unltd., Inc. v. E.F. Johnson Co.*,
    691 F. Supp. 630 (E.D.N.Y. 1988), *rev'd and vacated on other grounds*, 875 F.2d 1040
    (2d Cir. 1989) ............................................................................................................................. 8

*Inwood Post No. 581, Am. Legion v. State Bingo Control Comm'n*,
    254 N.Y.S.2d 603 (N.Y. Sup. Ct. App. Div. 1st Dept. 1964) .................................................... 7

*Kuchment v. Comm'n of the New York States Dept. of Soc. Servs.*,
    634 N.Y.S.2d 849 (N.Y. Sup. Ct. App. Div. 3rd Dept. 1995) ................................................... 7

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999) ................................................................................................................... 5

*Lavin-McEleney v. Marist Coll.*,
    239 F.3d 476 (2d Cir. 2001) ...................................................................................................... 7

*Martin Motor Sales, Inc. v. Saab-Scania of Am., Inc.*,
  452 F. Supp. 1047 (S.D.N.Y. 1978) ................................................................................ 9

*MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*,
  No. 602825/08, 2010 WL 5186702  (N.Y. Sup. Ct. Dec. 22, 2010) ............................... passim

*Mich. Dep't of Educ. v. U.S. Dep't of Educ.*,
  875 F.2d 1196 (6th Cir. 1989) ....................................................................................... 7

*Muller v.* Eno,
  14 N.Y. 597 (1856) ........................................................................................................ 7

*Niagra Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*,
  No. 88-CV-819, 1992 WL 121726 (N.D.N.Y. May 23, 1992) ...................................... 9

*Republic Serv. v. Liberty Mut. Ins. Co.*,
  2006 WL 2844122 (E.D. Ky. Oct. 2, 2006) ................................................................. 10

*Rosado v. Wyman*,
  322 F. Supp. 1173 (E.D.N.Y. 1970), *aff'd*, 437 F.2d 619 (2d Cir. 1970) ................... 6

*Royal Bus. Sch., Inc. v. N.Y. Dep't of Ed.*,
  534 N.Y.S.2d 489 (N.Y. Sup. Ct. App. Div. 3rd Dept 1988) ....................................... 7

*Sunset Taxi Co., Inc. v. Blum*,
  423 N.Y.S.2d 231 (N.Y. Sup. Ct. App. Div. 2nd Dept 1979) .................................. 6, 7

*Texpor Traders, Inc. v. Trust Co. Bank*,
  720 F. Supp. 1100 (S.D.N.Y. 1989) .............................................................................. 8

*U.S. v. Fior D'Italia, Inc.*,
  536 U.S. 238 (2002) ....................................................................................................... 7

*U.S. v. Janis*,
  428 U.S. 433 (1976) ....................................................................................................... 7

*United States v. Dardi*,
  330 F.2d 316 (2d Cir. 1964) .......................................................................................... 5

**Statutes**

N.Y. C.P.L.R. 4011 .............................................................................................................. 5

**Other Authorities**

David H. Kaye & David A. Freedman, *Reference Guide on Statistics*,
  REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 83, 86 (Fed. Jud. Ctr. 2d ed. 2000) .................. 6

David S. Moore, *Statistics: Concepts and Controversies* 3 (6th ed. 2006) ................................... 6

Henry R. Rosenblatt & David H. Leroy, *Motion in Limine Practice*,
  20 AM. JUR. *Trials* 441, § 6 (2010) .................................................................................. 5

MANUAL FOR COMPLEX LITIGATION §11.493 (4th ed. 2010) ........................................................ 6

Plaintiff Assured Guaranty Municipal Corp. f/k/a Financial Security Assurance Inc. ("AG") moves *in limine* for an order approving of AG's use of a statistically-valid random sample of loans in order to prove its claims against defendants Flagstar Bank, FSB; Flagstar Capital Markets Corp., Flagstar ABS, LLC (collectively "Flagstar") for breach of contract under New York law, as well as resulting damages. Sampling will streamline the presentation of evidence at trial, conserve the time and resources of the parties and the Court, and result in an efficient disposition of this case without prejudicing any party's rights.

## PRELIMINARY STATEMENT

It is well-settled that statistical sampling is a scientifically valid method of proof used in cases with an otherwise unmanageable volume of data. Courts across the nation have authorized the use of sampling to prove a broad array of legal issues, including both liability and damages. The principles that underlie statistical sampling, as well as sampling itself, have garnered universal acceptance in the scientific community.

This action involves two securitizations consisting of 15,610 individual mortgage loans and loan files, each containing a substantial amount of origination, underwriting, and servicing information. The presentation of proof based on a statistically valid random sample of loans from each securitization would conserve the resources of the parties and the Court, streamline the trial, and promote judicial economy and efficiency. Absent the use of statistical sampling, a loan-by-loan presentation of evidence in this case would be virtually impossible, and without question delay the trial date, dramatically extend the length of trial, and impose a substantial and unwarranted burden on the time and resources of this Court. Just six months ago, in *MBIA Insurance Corp. v. Countrywide Home Loans, Inc.*, No. 602825/08, 2010 WL 5186702 (N.Y. Sup. Ct. Dec. 22, 2010), Justice Bransten accepted the use of sampling in a case brought by a financial guaranty insurance provider, like AG, against the seller of the mortgage backed

1

securities, like Flagstar. Justice Bransten observed that "[s]tatistical sampling is a widely used method to present evidence from a large population of data," noting that "numerous" courts have accepted the use of statistical sampling. *Id*. at *4. She also observed that it was "undisputed" that "statistical sampling is generally accepted in the scientific community," and that "[s]cientific literature and testing is replete with the use of statistical sampling." *Id*. The Court further concluded that the plaintiff's methodology was scientifically accepted, valid and reliable, and could be used at trial. *Id*. at *5. The claims to which sampling would be applied specifically included repurchase claims identical to the claim sustained by this Court on its recent order denying in part Flagstar's motion to dismiss.

As in *MBIA*, AG seeks a ruling from this Court that it be permitted to establish liability and damages for its contract causes of action using sampling. At this point in time, however, AG is not seeking this Court's final approval as to the <u>particular</u> sampling methodology that AG intends to use at trial—indeed, fact discovery has only recently commenced, and substantial documentation concerning the loans in question, including the majority of the loan files, has not yet been turned over by Flagstar. The only question here is whether the general approach is sound in the context of this case, an important inquiry as the expert discovery and trial deadlines in this case are rapidly approaching. If the answer to this question is "no," a lengthy continuance likely will be needed to accommodate expert and fact discovery on up to 15,610 loans in this case.

## FACTUAL BACKGROUND

AG's complaint alleges that Flagstar breached numerous representations and warranties in the transaction documents for the 2005-1 and 2006-2 securitizations, Subramanian Decl., Ex. A, Compl. ¶¶ 63, 68, including those dealing specifically with whether the loans in the portfolio are in compliance with Flagstar's own descriptions in the offering documents and

underwriting criteria, whether the loan information detailed on the Mortgage Loan Schedules was true and correct, and whether there were any acts of fraud, misrepresentations, errors or omissions on the part of the borrower or any person involved in each loan's origination (the loans having been originated, of course, by Flagstar and its affiliated brokers and correspondents).  *See, e.g.,* Subramanian Decl., Ex. B, 2005-1 MLPA, § 3.02(a).

After a "rapid amortization event" took place in 2008, AG investigated a sample of loan files it had received from Flagstar and identified significant breaches in the "vast majority of the loans" AG audited, with many containing evidence of fraud or negligence in the origination process.  AG discovered substantial deficiencies and inaccuracies in the representations and warranties provided by Flagstar with regard to the mortgage loans, the mortgaged properties, Flagstar's original underwriting, servicing and origination processes, and the identity, financial means, and occupational status of the mortgagors.  Subramanian Decl., Ex. A, ¶ 41.  These included misrepresentations of critical information—borrowers' income, employment, debt obligations, DTI ("debt to income") ratios and CLTV ("combined loan to value") ratios.  *Id.*, ¶¶ 43-54.

Accordingly, in January 2009 and July 2010, AG asked Flagstar to repurchase over 900 loans from the sample it had reviewed.  To date, Flagstar has not agreed to repurchase a single one of these loans. Given the high incidence of underwriting violations and misrepresentations found in the loans that AG investigated and identified to Flagstar, as well as the deficiencies and defects in loan documentation that were found, it is a virtual certainty that a substantial percentage of the remaining 14,710 total loans in the securitizations have similar breaches, and never should have been selected to collateralize the securities AG insured.  *Id.*, ¶¶ 58-59.  To date, AG has been forced to pay over eighty million dollars to bondholders due to deficiencies in the collateral.

3

To resolve AG's claims against Flagstar and to quantify the damages for breach of contract, this Court will need to determine how many of the 15,610 loans in the securitized pools fail to comply with Flagstar's contractual covenants, warranties and representations. Taken together, the origination and servicing files for these loans will likely exceed two million pages. Furthermore, the applicable underwriting and servicing guidelines for these loans went through multiple revisions during the period when these loans were originated and serviced by Flagstar, and the parties will need to determine the accuracy of more than 30 data fields in the Mortgage Loan Schedules for each of the 15,000+ loans in the securitizations. Reviewing all the individual loan and servicing files for underwriting and servicing compliance, the correct iteration of the applicable underwriting and servicing guidelines as well as the hundreds of thousands of data fields on the Mortgage Loan Schedules, would be prohibitively expensive and time consuming for both the parties and the Court. For these reasons, AG seeks to prove its claims—and the resulting damages—through statistical sampling of the loans in the securitized pools. Sampling is a generally accepted method of proof in complex cases, and it will enable both the parties and the Court to avoid a needlessly expensive and time-consuming loan-by-loan presentation of proof.

Without sampling, AG will be severely prejudiced and trial of its claims may be rendered unworkable as the parties are forced to conduct individual trials on up to 15,610 individual loans, all of which are governed by similar transactional documents, containing materially identical covenants, representations and warranties, and which will be shown to contain similar types of breaches (*e.g.*, noncompliance with underwriting standards, misrepresentation, errors and omissions regarding borrower and mortgaged-property information, and defective or missing documentation). Accordingly, the Court respectfully should issue an order approving of

statistical sampling as a method of presenting evidence at trial of Flagstar's liability and the damages sustained by AG.

## ARGUMENT

AG believes that sampling will demonstrate the falsity of Flagstar's representations and the remarkable extent to which the loans failed to (amongst other things) comply with underwriting requirements. AG further maintains that sampling will provide a reasonable, efficient, and fair estimation of its damages. The Court is authorized to approve AG's proposed use of sampling, and it should do so in this case.

### A.   The Court is Authorized to Approve AG's Proposed Use of Sampling

This Court has inherent authority to regulate the conduct of the trial. *See, e.g., In re September 11 Litigation*, 236 F.R.D. 164, 172 (S.D.N.Y. 2006); N.Y. C.P.L.R. 4011 ("court may . . . regulate the conduct of trial in order to achieve a speedy and unprejudiced disposition of the matters at issue."). This includes the discretion to maintain control of the proceedings, to expedite the proceedings, and to prevent what the court considers to be an unnecessary use of time or resources. *See, e.g., United States v. Dardi*, 330 F.2d 316, 330 (2d Cir. 1964) ("[T]he court has wide discretion in adopting methods which will expedite a trial . . . ."); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152-53 (1999) (noting trial court's "discretion" and "broad latitude" in determining admissibility of expert evidence, which can be reversed only on a showing that the court abused its discretion). Either party may file a permissive motion *in limine* seeking an order on the admissibility and/or inclusion of certain disputed evidence at trial. Henry R. Rosenblatt & David H. Leroy, *Motion in Limine Practice*, 20 AM. JUR. *Trials* 441, § 6 (2010).

**B.      Sampling is Generally Acknowledged as a Proper Method of Proof**

Dr. Samuel Johnson once noted that "you don't have to eat the whole ox to know the hide is tough."[1]  Indeed, courts have generally accepted this sensible proposition and held that statistical sampling may be used to prove liability and damages in appropriate cases.  According to the Federal Judicial Center's Manual for Complex Litigation,

> [a]cceptable sampling techniques, in lieu of discovery and presentation of voluminous data from the entire population, can save substantial time and expense, and in some cases provide the only practicable means to collect and present relevant data.

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION §11.493 (4th ed. 2010).  Sampling is appropriate proof if the sampled population is properly chosen and defined, the sample chosen is representative of that population, the data gathered regarding the sample are accurately reported, and the data are analyzed in accordance with accepted statistical principles.  *Id.  See also* David H. Kaye & David A. Freedman, *Reference Guide on Statistics*, in REFERENCE MANUAL ON SCIENTIFIC EVIDENCE 83, 86 (Fed. Jud. Ctr. 2d ed. 2000) ("Statistical studies suitably designed to address a material issue generally will be admissible under the Federal Rules of Evidence.").

New York courts have embraced statistical sampling as a method of proof.  *E.g., Sunset Taxi Co., Inc. v. Blum*, 423 N.Y.S.2d 231, 232 (N.Y. Sup. Ct. App. Div. 2d Dept. 1979) ("[T]he contention that sample evidence provides no evidence for the goods or claims not sampled was rejected long ago."); note 2, *infra*.  In fact, New York federal and state courts frequently have permitted the use of sampling to prove both liability and damages, provided that the sample is representative of the total population and the product of reliable statistical methods.  *Rosado v. Wyman*, 322 F. Supp. 1173, 1180 (E.D.N.Y. 1970) ("Sampling has long been considered an

---

[1] Samuel Johnson, *as quoted in* David S. Moore, *Statistics: Concepts and Controversies* 3 (6th ed. 2006).

acceptable method of determining the characteristics of a large universe . . . .Such mathematical and statistical methods are well recognized by the courts as reliable and acceptable in determining adjudicative facts."), *aff'd*, 437 F.2d 619 (2d Cir. 1970); Notes 2 and 3, *infra*.[2] Indeed, the use of sampling was accepted by the New York Court of Appeals as early as 1856. *Muller v.* Eno, 14 N.Y. 597, 598-99, 603-04 (1856) (allowing sampling of "several" of fourteen bales of cotton to be used as evidence as to the state of all fourteen bales). The United States Supreme Court, and courts in a myriad of other jurisdictions, have also firmly embraced sampling as a proper method of proof in complex cases.[3]

Most recently, in the aforementioned *MBIA* decision, the first time the New York courts have addressed sampling in a case involving mortgage-backed securities, Justice Bransten expressly accepted the plaintiff's sampling approach in a lawsuit filed by a financial guaranty insurer against the seller and servicer of the securities, in which breaches were claimed as to a

---

[2] *See also Kuchment v. Comm'n of the New York States Dept. of Soc. Servs.*, 634 N.Y.S.2d 849, 850 (N.Y. Sup. Ct. App. Div. 3rd Dept. 1995) (affirming use of statistical sampling Medicaid litigation to prove false claims); *Inwood Post No. 581, Am. Legion v. State Bingo Control Comm'n*, 254 N.Y.S.2d 603 (N.Y. Sup. Ct. App. Div. 1st Dept. 1964) (affirming use of sampling to find that appellant falsified a report to the Bingo Control Commission); *Sunset Taxi Co., Inc.* 423 N.Y.S.2d at 232 (affirming statistical sampling to prove over-billing to state medical assistance fund); *Royal Bus. Sch., Inc. v. N.Y. Dep't of Ed.*, 534 N.Y.S.2d 489, 490-91 (N.Y. Sup. Ct. App. Div. 3rd Dept 1988) (affirming use of sampling to verify school's certification of student awards).

[3] *U.S. v. Fior D'Italia, Inc.*, 536 U.S. 238, 240-243 (2002) (affirming IRS's use of aggregate estimation method to prove tax consequences of restaurant tips); *U.S. v. Janis*, 428 U.S. 433, 440 (1976) (upholding estimate of tax liability over 77-day period made by extrapolating information based in gross proceeds from 5-day period); *Gerardo v. Commissioner*, 552 F.2d 549, 551-552 (3rd Cir. 1977) (upholding estimate using extrapolation of income over 1-year period based on gross receipts from two days); *Hilao v. Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996) (affirming use of sampling of individuals to determine damages for human rights violations); *Chaves County Homes Health Serv., Inc. v. Sullivan*, 931 F.3d 914, 919, 923-924 (D.C. Cir. 1991) (affirming use of sampling evidence to prove pattern of overpayment in claims); *Ill. Physicians Union v. Miller*, 675 F.2d 151, 155 (7th Cir. 1982) (same); *Mich. Dep't of Educ. v. U.S. Dep't of Educ.*, 875 F.2d 1196, 1204-06 (6th Cir. 1989) (same); *see Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 481 (2nd Cir. 2001) (holding that evidence based on statistical sampling "was permissible not only to establish liability, but also in calculating damages" in discrimination case).

number of loans across many different securitizations. The plaintiff urged that a 400 loan sample for each securitization should be used, and should be applied to determine liability and damages not only on the plaintiff's fraud and servicing claims, but <u>also</u> on the plaintiff's repurchase contract claim—precisely the claim this Court sustained in its recent ruling on Flagstar's motion to dismiss. Noting the strong support in the caselaw and scientific literature, Justice Bransten accepted the use of sampling on these claims, and further determined that "Plaintiff's proposed methodology of statistical sampling may be used at trial. Plaintiff has shown its methodology to be scientifically accepted, valid and reliable . . . ." *MBIA Insurance Corp.*, 2010 WL 5186702, at \*5. AG respectfully submits that this Court adhere to these prior rulings and approve AG's proposed approach of statistical sampling.

      **C.**      <u>**AG's Intended Uses of Sampling at Trial Are Proper**</u>

AG intends to use sampling to establish Flagstar's liability for breach of contract. Under New York law, breach of contract requires proof of the following elements: (1) formation of a contract between the parties; (2) performance by plaintiff; (3) defendant's failure to perform; and (4) resulting damage. *Flomenbaum v. N.Y. Univ.*, 890 N.Y.S.2d 493, 502 (N.Y. Sup. Ct. App. Div. 1st Dep't 2009). AG intends to use sampling to establish the third and fourth elements of breach of contract—that is, (3) Flagstar's breach of representations and warranties, and failure to perform, under the MLPAs, SSAs, and I&I Agreements, and (4) resulting damages.

New York law permits AG to use sampling to prove Flagstar's contractual breaches and failures to perform in this case. In fact, courts in New York and elsewhere have expressly permitted the use of sampling in order to prove the element of liability in breach of contract cases. *Texpor Traders, Inc. v. Trust Co. Bank*, 720 F. Supp. 1100, 1106 (S.D.N.Y. 1989) (shipment of goods found materially defective based on audit by sampling); *Integrated Circuits Unltd., Inc. v. E.F. Johnson Co.*, 691 F. Supp. 630, 631-32 (E.D.N.Y. 1988) (sample of delivered

8

goods supported conclusion that entire shipment was nonconforming under the UCC), *rev'd and vacated on other grounds*, 875 F.2d 1040 (2d Cir. 1989); *Chicago v. Reliable Truck Parts Co.*, 822 F. Supp. 1288, 1293, 1301 (N.D. Ill. 1993) (sampling-based proof adequate to establish plaintiff's right to summary judgment on breach of contract claim).  Similarly, AG should be permitted to use sampling to prove liability in this case and to demonstrate the full breadth of Flagstar's contractual breaches.

AG also intends to use sampling to prove the amount of damages suffered by AG as a result of Flagstar's contractual breaches.  Under the repurchase remedy specified in the MLPA and SSA, for loans whose breaches cannot be cured damages will be measured by the amount of the shortage in collateral, using thresholds set forth explicitly in the transaction documents, assuming the removal of the defective loans from the portfolios at issue.  Flagstar will be required to replenish that shortage with cash.  Using a statistically valid random sample of loans, AG can determine the aggregate asset balance of defective loans in the securitizations, as well as the shortfall in collateral—the "Transfer Deficiency"—that Flagstar must make up with cash. Subramanian Decl., Ex. C, 2005-1 SSA, § 2.07(a).

The parties in this case ultimately will ultimately present the Court with their specific methodologies for proving damages, and AG does not now seek approval of a particular approach.  The point, however, is that estimation of this nature in the damages context is nothing new.  New York courts allow for flexibility when calculating damages and have long permitted sampling as a means of proving damages.  *Martin Motor Sales, Inc. v. Saab-Scania of Am., Inc.*, 452 F. Supp. 1047, 1053 (S.D.N.Y. 1978) ("It is not necessary to prove each damage amount to the penny…Estimates based on sound sampling techniques would suffice." (citation omitted)); *Niagra Mohawk Power Corp. v. Stone & Webster Eng'g Corp.*, No. 88-CV-819, 1992 WL 121726, at *35-37 (N.D.N.Y. May 23, 1992) (noting that "estimates based on 'sound sampling

9

techniques' will, in some circumstances, suffice as the best evidence of proving damages"). *See generally City of Chicago v. Reliable Truck Parts Co., Inc.*, 822 F. Supp. 1288, 1294, 1302 (N.D. Ill. 1993) (approving use of sampling methods to prove damages in breach of contract case, and observing that "the amount of damages can be estimated on any reasonable basis"); *Republic Serv. v. Liberty Mut. Ins. Co.*, 2006 WL 2844122, at *2-*3 (E.D. Ky. Oct. 2, 2006) (in case involving breach of workers' compensation insurance agreement, court observed: "Clearly, this Court cannot individually adjudicate each of the Claims Files at issue in this litigation . . . [S]ome form of statistical sampling will be necessary to resolve issues related to the [defendants'] liability and damages incurred by [plaintiff]. The essence of the science of inferential statistics is that one may confidently draw inferences about the whole from a representative sample of the whole. The applicability of inferential statistics have long been recognized by the courts."); *Allied Tube & Conduit Corp. v. Southern Pac. Transp. Co.*, 211 F.3d 367, 372 (7th Cir. 2000) (in case arising under Carmack Amendment, "a sampling will be accepted as proof of damages when a reasonably representative sample has been taken and so long as the sample is sufficient to indicate fairly the quality, condition and nature of damage to the whole cargo").

AG will also use sampling to demonstrate the pervasiveness of Flagstar's breaches, and will show that Flagstar—who was involved in the origination, underwriting, selection, packaging, and servicing of <u>all</u> the loans in the portfolio—became aware of these pervasive breaches long before this action was filed or AG made a single specific repurchase request. Subramanian Decl., Ex. A, Compl. ¶¶ 21-22.[4]  This is significant because unlike some other

---

[4] Flagstar even certified in the Transaction Documents that it had, with respect to each loan, "approved the Mortgage Loan prior to funding." *Id.*, Ex. B, 2005-1 MLPA, § 3.02(a)(60). In any event, Flagstar was aware of these breaches when AG specifically brought 900 loans to Flagstar's attention and requested repurchase over the two years prior to the filing of the

agreements that have been executed by buyers or insurers of mortgage-backed securities, the repurchase remedy in Flagstar's agreements does not contain any "demand" or "presentment" requirement. Rather, the contracts make plain that Flagstar "shall use all reasonable efforts to cure in all material respects any breach . . . within 90 days of <u>becoming aware</u> of it" or to accept retransfer. Subramanian Decl., Ex. C, 2005-1 SSA, § 2.04(d) (emphasis added). The proof will show that Flagstar did not do this, and thus for this reason (among others) breached the requirements of the "cure or repurchase" remedy set forth in the Transaction Documents. Thus, Flagstar ultimately will be precluded from relying on the exclusive remedy clause it currently hangs its hat on. Section 2.03(h) of the I&I Agreements specifically states that:

> FSA shall have all rights of a third-party beneficiary in respect of the Transaction Documents and hereby incorporate and restate their representations, warranties and covenants as set forth therein for the benefit of FSA, subject to the limitations as to remedies as set forth in the Transaction Documents (***so long as the Bank is in compliance with its repurchase obligation thereunder***).

Subramanian Decl., Ex. D, 2005-1 I&I, §2.03(h) (emphasis added). AG's damages based on this breach would include the loss to AG of the benefit of its bargain due to Flagstar's breaches of the transactional documents, a conventional measure of damages that can easily be extrapolated using a sampling and audit of the underwriting of the loans. *Bippley v. Hollenback*, 644 N.Y.S.2d 852, 853-54 (N.Y. Sup. Ct. App. Div. 3d Dept. 1996) ("[i]n a breach of contract action, the injured party is entitled to be placed in the position he or she would have enjoyed had the contract been performed according to its terms, one measure of which is the cost of remedying the defective performance.").[5]

---

complaint. Flagstar effectively repudiated its obligation to repurchase non-conforming loans by refusing to repurchase even <u>one</u> of those loans.

[5] The Court indicated in its July 7, 2011 Order that AG's claims are "limited to enforcing Flagstar's 'cure or repurchase' obligations set forth in the Transaction Documents." AG assumes that this would encompass demonstrating that Flagstar has materially breached its "cure or repurchase" obligations, as AG pleaded in its complaint, and thus pursuant to §2.03(h) of the I&I Agreements, Flagstar is not entitled to sole-remedy protection.

AG's proposed use of sampling to prove contractual damages is supported by well-settled principles of federal and New York state law.  The Court should permit proof of damages for breach of contract through sampling-based evidence in this case, as courts in New York and other jurisdictions have done in similar cases.[6]

### D. AG's Proposed Sample Will Be Developed by an Expert Statistician

AG intends to use a sampling framework that has been approved in other cases and that is both statistically valid and methodologically sound.  AG anticipates that it will sample two pools of loans drawn from the loans underlying the securitizations at issue in this dispute.  AG anticipates that its proposed samples will be comprised of several hundred loan files selected at random from the total population of loans backing the bonds in the securitizations.  AG will employ a statistics expert to determine the size of the sample and randomly to select the loans comprising the sample.  AG's expert will employ stratification techniques based on key loan characteristics to ensure the sample's overall predictive value.  In so doing, AG's expert will compare the distributions in the sample of certain key variables—including geographic area, combined loan-to-value ratio, payment status, gross coupon rate, loan purpose, and original loan amount—to the distribution of those same variables among the total population.  The final sample size will be calculated to yield a confidence interval of ±5%.

This methodology is precisely the same as that which Justice Bransten accepted for use at trial in the *MBIA* case. *MBIA Insurance Corp.*, 2010 WL 5186702, at *5.  While AG does not ask the Court to approve this precise methodology (or any other) at this stage, AG includes this

---

[6] AG has informed Flagstar that it intends to amend its complaint to include a separate claim for breach of Flagstar's servicing obligations under the 2005-1 and 2006-2 transaction documents. Flagstar has not yet indicated whether it consents to the proposed amendment, and thus it is unclear whether a motion to amend will be necessary.  In any event, AG believes that sampling may be utilized with respect to this claim as well. *See, e.g., MBIA v. Countrywide*, 2010 WL 5186702, at *5 (approving use of sampling as to servicing contract claim).

description of its intended approach to provide the court with a better understanding of how sampling would be applied in this context.

### E. The Court Should Promptly Rule on the Propriety of Sampling in this Case

This Court's prompt decision that sampling is permissible and not precluded by its prior rulings will help streamline and focus fact and expert discovery—which has only recently commenced—without the needless waste of time and expenses of the parties. Further, the current trial date is in three months (October), and expert discovery deadlines loom on the calendar for the coming month (August). Given the labor-intensive nature of reviewing origination files, servicing files and data fields on Mortgage Loan Schedules, if AG's motion is not resolved promptly, either party may be forced to move for a continuance of the trial date after the Court is inevitably forced to address the issue of sampling at a later date. The Court respectfully should take up this issue without delay.

Flagstar will likely contend that a full review of the methodology proposed by AG's expert is needed before the issue of sampling can be resolved. This full review is impossible at the current time given that fact discovery has only recently commenced, and AG has yet to receive critical documents from Flagstar, including the majority of the mortgage loan files, which AG's experts must review. Importantly, however, AG is **not** presently requesting that the Court give approval to any particular sampling methodology. The only question is whether a sampling approach is permissible in the first place, a crucial question at this stage of the proceedings. If this motion is granted, plaintiff will furnish Flagstar with its expert report and proposed methodology in the course of discovery, and if Flagstar chooses to challenge the reliability of AG's expert's methods, it may file a motion *in limine* at the appropriate time before trial. In short, Flagstar's rights in no way would be impinged by granting the current motion.

**CONCLUSION**

Because New York law permits proper sampling as a means of establishing both liability and damages for both contract and tort claims, the Court should issue an order approving AG's use of sampling in this case. AG's proposed approach will enable the Court to avoid a burdensome, time-consuming, and ultimately unworkable trial presentation regarding up to 15,610 individual loans.

RESPECTFULLY SUBMITTED,

July 18, 2011
New York, NY

      __/s/ Arun Subramanian_____
Stephen D. Susman
Jacob W. Buchdahl
Arun Subramanian
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, NY 10022
(212) 336-8330
ssusman@susmangodfrey.com
jbuchdahl@susmangodfrey.com

*Attorneys for Plaintiff Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc.*

Case 1:11-cv-02375-JSR   Document 26   Filed 07/18/11   Page 20 of 20