# EXHIBIT FF

EXECUTION COPY

FLAGSTAR ABS, LLC
Depositor

FLAGSTAR BANK, FSB
Servicer and Sponsor

FLAGSTAR CAPITAL MARKETS CORPORATION
Seller

FLAGSTAR HOME EQUITY LOAN TRUST 2006-2
Issuer

THE BANK OF NEW YORK TRUST COMPANY, N.A.
Indenture Trustee and Auction Administrator

SALE AND SERVICING AGREEMENT
Dated as of December 21, 2006

HOME EQUITY LOAN ASSET BACKED NOTES

SERIES 2006-2

NY1 5998524v.11

## Table of Contents

**Page**

### ARTICLE I

#### DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

Section 1.01  Definitions. ............................................................................................. 1
Section 1.02  Other Terms. ........................................................................................... 1
Section 1.03  Rules of Construction. ............................................................................ 1
Section 1.04  Interest Calculations. ............................................................................. 3

### ARTICLE II

#### CONVEYANCE OF MORTGAGE LOANS; TAX TREATMENT

Section 2.01  Conveyance of Mortgage Loans; Retention of Obligation to Fund
Advances Under Credit Line Agreements. ............................................. 3
Section 2.02  Acceptance by Indenture Trustee. .......................................................... 9
Section 2.03  Representations and Warranties of the Servicer. .................................. 10
Section 2.04  Representations and Warranties Regarding the Mortgage Loans;
Retransfer of Certain Mortgage Loans. ............................................... 12
Section 2.05  Covenants of the Depositor. ................................................................. 15
Section 2.06  Transfers of Mortgage Loans at Election of Transferor. ...................... 15
Section 2.07  Retransfers and Transfer Deficiencies. ................................................ 16
Section 2.08  Tax Treatment. ..................................................................................... 17
Section 2.09  Representations and Warranties of the Depositor. ............................... 17

### ARTICLE III

#### ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01  The Servicer. ........................................................................................ 18
Section 3.02  Collection of Certain Mortgage Loan Payments; Establishment of
Accounts. ............................................................................................. 20
Section 3.03  Deposits to Payment Account. ............................................................. 22
Section 3.04  Maintenance of Hazard Insurance; Property Protection Expenses. ..... 22
Section 3.05  Assumption and Modification Agreements. .......................................... 22
Section 3.06  Realization Upon Defaulted Mortgage Loans; Repurchase of Certain
Mortgage Loans. .................................................................................. 23
Section 3.07  Indenture Trustee to Cooperate. .......................................................... 24
Section 3.08  Servicing Compensation; Payment of Certain Expenses by Servicer. .. 25
Section 3.09  Annual Statement as to Compliance. ................................................... 25
Section 3.10  Annual Servicing Report. ..................................................................... 26
Section 3.11  Access to Certain Documentation and Information Regarding the
Mortgage Loans. .................................................................................. 26

NY1 5998524v.11

Section 3.12  Maintenance of Certain Servicing Insurance Policies.........................................27
Section 3.13  No Liability for Taxes.....................................................................................27
Section 3.14  Information Required by the Internal Revenue Service Generally and
Reports of Foreclosures and Abandonments of Mortgaged Property. ...............27

ARTICLE IV

SERVICING CERTIFICATE

Section 4.01  Servicing Certificate. ......................................................................................28
Section 4.02  Acknowledgement and Cooperation. ...............................................................30
Section 4.03  Optional Advances of the Servicer. .................................................................30
Section 4.04  Statements to Noteholders...............................................................................30

ARTICLE V

THE SERVICER, THE SELLER, THE SPONSOR, AND THE DEPOSITOR

Section 5.01  Liability of the Seller, the Servicer, the Sponsor and the Depositor. ................33
Section 5.02  Merger or Consolidation of, or Assumption of the Obligations of, the
Servicer or the Depositor.................................................................................33
Section 5.03  Limitation on Liability of the Servicer and Others. ..........................................34
Section 5.04  Servicer Not to Resign. ...................................................................................34
Section 5.05  Delegation of Duties. ......................................................................................35
Section 5.06  Indemnification by the Servicer.......................................................................35

ARTICLE VI

SERVICING TERMINATION

Section 6.01  Events of Servicing Termination. ....................................................................36
Section 6.02  Indenture Trustee to Act; Appointment of Successor. ......................................37
Section 6.03  Notification to Noteholders and the Transferor.................................................38

ARTICLE VII

TERMINATION

Section 7.01  Termination. ...................................................................................................39

ARTICLE VIII

MISCELLANEOUS PROVISIONS

Section 8.01  Amendment. ...................................................................................................40
Section 8.02  Governing Law. ..............................................................................................41
Section 8.03  Notices...........................................................................................................41
Section 8.04  Severability of Provisions. ..............................................................................43
Section 8.05  Assignment.....................................................................................................43

NY1 5998524v.11

Section 8.06   Third-Party Beneficiaries. .............................................................. 43
Section 8.07   Counterparts; Electronic Delivery. .................................................. 44
Section 8.08   Effect of Headings and Table of Contents........................................ 44

EXHIBIT A - MORTGAGE LOAN SCHEDULE ......................................................... A-1
EXHIBIT B – FORM OF LETTER OF REPRESENTATIONS ......................................... B-1
EXHIBIT C - FORM OF REQUEST FOR RELEASE OF DOCUMENTS ........................... C-1
EXHIBIT D – [RESERVED] ................................................................................ D-1
EXHIBIT E – FORM OF SUBSEQUENT TRANSFER AGREEMENT.............................. E-1
EXHIBIT F - FORM OF NOTICE OF ADDITIONAL BALANCE INCREASE AMOUNT AND
            ADDITIONAL BALANCES..........................................................................F-1
ANNEX 1    GLOSSARY OF DEFINED TERMS ............................................... ANN-1-1

NY1 5998524v.11

CONFIDENTIAL

This SALE AND SERVICING AGREEMENT, dated as of December 21, 2006, among FLAGSTAR ABS, LLC, as Depositor, FLAGSTAR BANK, FSB, as Servicer and Sponsor, FLAGSTAR CAPITAL MARKETS CORPORATION, as Seller, FLAGSTAR HOME EQUITY LOAN TRUST 2006-2, and THE BANK OF NEW YORK TRUST COMPANY, N.A., as Indenture Trustee and Auction Administrator,

WITNESSETH THAT:

The parties agree as follows:

ARTICLE I

DEFINITIONS AND OTHER PROVISIONS OF GENERAL APPLICATION

Section 1.01    *Definitions.*

Unless the context requires a different meaning, capitalized terms are used in this Agreement as defined in the Glossary of Defined Terms attached hereto as Annex 1.

Section 1.02    *Other Terms.*

Capitalized terms used in this Agreement that are not otherwise defined have the meanings given to them in the Indenture. Defined terms that are used only in one section or only in another definition may be omitted from the list of defined terms in Annex 1. Defined terms used in this Agreement are sometimes defined after their first use without a reference such as "(as hereinafter defined)."

Section 1.03    *Rules of Construction.*

Except as otherwise expressly provided in this Agreement or unless the context clearly requires otherwise:

(a)    Defined terms include, as appropriate, all genders and the plural as well as the singular.

(b)    References to designated articles, sections, subsections, exhibits, and other subdivisions of this Agreement, such as "Section 6.12 (a)," refer to the designated article, section, subsection, exhibit, or other subdivision of this Agreement as a whole and to all subdivisions of the designated article, section, subsection, exhibit, or other subdivision. The exhibits and other attachments to this Agreement are a part of this Agreement. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Agreement as a whole and not to any particular article, section, exhibit, or other subdivision of this Agreement.

(c)    Any term that relates to a document or a statute, rule, or regulation includes any amendments, modifications, supplements, or any other changes that may have occurred since the document, statute, rule, or regulation came into being, including changes that occur after the

1

NYI 5998524v.11

AGM00008499

date of this Agreement. References to law are not limited to statutes. References to statutes include any rules or regulations promulgated under them by a governmental authority charged with the administration of the statute. Any reference to any person includes references to its successors and assigns.

(d)     Any party may execute any of the requirements under this Agreement either directly or through others, and the right to cause something to be done rather than doing it directly shall be implicit in every requirement under this Agreement. Unless a provision is restricted as to time or limited as to frequency, all provisions under this Agreement are implicitly available from time to time.

(e)     The term "including" and all its variations mean "including but not limited to." Except when used in conjunction with the word "either," the word "or" is always used inclusively (for example, the phrase "A or B" means "A or B or both," not "either A or B but not both").

(f)     A reference to "a [thing]" or "any [of a thing]" does not imply the existence or occurrence of the thing referred to even though not followed by "if any," and "any [of a thing]" is any and all of it. A reference to the plural of anything as to which there could be either one or more than one does not imply the existence of more than one (for instance, the phrase "the obligors on a note" means "the obligor or obligors on a note"). "Until [something occurs]" does not imply that it must occur, and will not be modified by the word "unless." The word "due" and the word "payable" are each used in the sense that the stated time for payment has passed. The word "accrued" is used in its accounting sense, i.e., an amount paid is no longer accrued. In the calculation of amounts of things, differences and sums may generally result in negative numbers, but when the calculation of the excess of one thing over another results in zero or a negative number, the calculation is disregarded and an "excess" does not exist. Portions of things may be expressed as fractions or percentages interchangeably. The word "shall" is used in its imperative sense, as for instance meaning a party agrees to something or something must occur or exist.

(g)     All accounting terms used in an accounting context and not otherwise defined, and accounting terms partly defined in this Agreement, to the extent not completely defined, shall be construed in accordance with generally accepted accounting principles in the United States. To the extent that the definitions of accounting terms in this Agreement are inconsistent with their meanings under generally accepted accounting principles, the definitions in this Agreement shall control. Capitalized terms used in this Agreement without definition that are defined in the Uniform Commercial Code of the relevant jurisdiction are used in this Agreement as defined in that Uniform Commercial Code.

(h)     In the computation of a period of time from a specified date to a later specified date or an open-ended period, the words "from" and "beginning" mean "from and including," the word "after" means "from but excluding," the words "to" and "until" mean "to but excluding," and the word "through" means "to and including." Likewise, in setting deadlines or other periods, "by" means "on or before." The words "preceding," "following," and words of

NY1 5998524v.11

CONFIDENTIAL

AGM00008500

similar import, mean immediately preceding or following. References to a month or a year refer to calendar months and calendar years.

(i)        Any reference to the enforceability of any agreement against a party means that it is enforceable against the party in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, and other similar laws of general applicability relating to or affecting creditors' rights and to general equity principles.

Section 1.04    *Interest Calculations*.

All calculations of interest on the Asset Balance of a Mortgage Loan under this Agreement are on a daily basis using a 365-day year. All calculations of interest on the Notes are on the basis of the actual number of days in an Interest Period and a year of 360 days. The calculation of the Servicing Fee is on the basis of a 360-day year consisting of twelve 30-day months. All dollar amounts calculated under this Agreement are rounded to the nearest cent with one-half of one cent being rounded down.

## ARTICLE II

### CONVEYANCE OF MORTGAGE LOANS; TAX TREATMENT

Section 2.01    *Conveyance of Mortgage Loans; Retention of Obligation to Fund Advances Under Credit Line Agreements*.

(a)        *Initial Transfer*. Concurrently with the execution and delivery of this Agreement, the Depositor hereby transfers to the Issuer without recourse (subject to Sections 2.02 and 2.04) all of its right, title, and interest in:

(i)        each Mortgage Loan (including any Initial Mortgage Loan, any Additional Mortgage Loans, any Eligible Substitute Mortgage Loan or any other Mortgage Loans transferred to the Issuer pursuant to Section 2.01 (a) and (b)) including its Asset Balance (including its Cut-off Date Asset Balance and any Additional Balances arising from time to time after its applicable Cut-off Date), the related Mortgage File, all property that secures the Mortgage Loan, and all Collections received with respect to such Mortgage Loan after its Cut-off Date (excluding payments due prior to its Cut-off Date);

(ii)        property that secured a Mortgage Loan that is acquired by foreclosure or deed in lieu of foreclosure;

(iii)        the Depositor's rights under the Purchase Agreement;

(iv)        the Depositor's rights under the hazard insurance policies;

(v)        all rights under any guaranty executed in connection with a Mortgage Loan; and

(vi)        all proceeds of the foregoing (the property described in clauses (ii) through (vi) with respect to any Mortgage Loan is being referred to as the "*Related Assets*").

3

NYI 5998524v.11

Notwithstanding the foregoing, neither the Issuer nor the Depositor assumes the obligation under any Credit Line Agreement to fund draws by the borrower thereunder and neither the Issuer nor the Depositor shall be obligated or permitted to fund any such draws, it being agreed that the Seller will retain the obligation to fund all future draws under the Credit Line Agreements relating to the Mortgage Loans.

By the Closing Date, the Depositor shall cause the Note Insurer to deliver the Policy to the Indenture Trustee for the benefit of the Noteholders.

Collections on the Mortgage Loans will be allocated and applied as provided by the terms of the related Credit Line Agreements. If a Credit Line Agreement relating to a Mortgage Loan does not specify a method of allocation and application for particular Collections, such Collections shall be allocated and applied (i) first to interest in the order of the dates on which such amounts for interest first became due and (ii) then to principal in the order of the dates on which such amounts for principal were first incurred.

(b)     *The Revolving Period; Additional Transfers; Conditions Precedent to Subsequent Additions.*

(i)     On each Payment Date during the Revolving Period, Principal Collections and Interest Collections will be deposited by the Indenture Trustee in the Funding Account to the extent available pursuant to the payment waterfall in Section 8.03(a)(1) of the Indenture.

(ii)    On any day during the Revolving Period, the Depositor may make a request to pay any outstanding Additional Balance Increase Amount in reduction of their principal amount by providing a written notice to the Indenture Trustee substantially in the form of Exhibit F, at least two Business Days before the date designated in such notice by the Depositor for payment. Such notice will direct the Indenture Trustee (A) to apply funds on deposit in the Funding Account to reduce the Additional Balance Increase Amount and (B) to release from the Lien of the Indenture and pay in cash from the Funding Account to the order of the Issuer for payment to the Transferor in reduction of the outstanding Additional Balance Increase Amount, an amount equal to the least of (x) the amount specified in that notice (y) the amount then on deposit in the Funding Account and (z) the outstanding Additional Balance Increase Amount. The Indenture Trustee will act in accordance with such notice pursuant to Section 8.02(b)(i) of the Indenture.

(iii)   On any day during the Revolving Period, the Depositor may make a request to purchase Additional Balances for the Issuer, that were not otherwise purchased from Principal Collections on deposit in the Custodial Account during the current Collection Period, by providing a written notice to the Indenture Trustee substantially in the form of Exhibit F, at least two Business Days before the date designated in such notice by the Depositor for purchase.  Such notice will direct the Indenture Trustee to (A) apply funds on deposit in the Funding Account to purchase the Additional Balances and (B) to release from the Lien of the Indenture and pay in cash from the Funding Account to the order of the Depositor or to the Seller at the direction

4

NY1 5998524v.11

CONFIDENTIAL

of the Depositor as purchase price for the Additional Balances, an amount equal to the lesser of (A) the Asset Balance of the Additional Balances specified in the notice and (B) the amount then on deposit in the Funding Account. The Indenture Trustee will act in accordance with such notice pursuant to Section 8.02(b)(ii) of the Indenture. The Depositor hereby instructs the Indenture Trustee to pay the purchase prices for the Additional Balances directly to the Seller.

(iv)    On any Subsequent Transfer Date designated by the Depositor during the Revolving Period, the Issuer may purchase from the Depositor and the Depositor may sell to the Issuer any available Additional Mortgage Loans by entering into a Subsequent Transfer Agreement with the Issuer and the Seller, substantially in the form of Exhibit E. The Depositor shall notify the Owner Trustee, the Indenture Trustee, the Note Insurer, and each Rating Agency of its designation of a Subsequent Transfer Date at least two Business Days in advance of the Subsequent Transfer Date. On each Subsequent Transfer Date, upon satisfaction of the conditions in Section 2.01(b)(v)(A) - (M) the Depositor shall deliver a revised Mortgage Loan Schedule reflecting the addition of the related Additional Mortgage Loans to the Indenture Trustee and the Indenture Trustee shall pay, on behalf of the Issuer, to the order of the Depositor or to the Seller at the order of the Depositor, from the Funding Account, the purchase price for such Additional Mortgage Loans in an amount equal to the aggregate Subsequent Transfer Date Asset Balances of such Additional Mortgage Loans specified in the Subsequent Transfer Agreement, but not exceeding the amount of funds remaining in the Funding Account. Upon satisfaction of the conditions in the foregoing sentence on the Subsequent Transfer Date, the Depositor hereby transfers to the Issuer without recourse (except as provided herein) all of its right, title, and interest in each Additional Mortgage Loan identified in the Subsequent Transfer Agreement, including its Asset Balance (including all Additional Balances arising from time to time after the Subsequent Transfer Date) and all Collections received on it after the relevant Subsequent Transfer Date (excluding payments due prior to the Subsequent Transfer Date) and Related Assets with respect to such Additional Mortgage Loans. The Depositor hereby directs the Indenture Trustee to pay the purchase price for the Additional Mortgage Loans directly to the Seller.

(v)    The right and obligation of the Indenture Trustee on behalf of the Issuer to pay the purchase price from the Funding Account for the benefit of the Depositor or the Seller at the order of the Depositor and the acceptance by the Issuer of the transfer of the Additional Mortgage Loans and the other property and rights relating to them on the related Subsequent Transfer Date are subject to the satisfaction of each of the following conditions by the related Subsequent Transfer Date:

(A)    the Depositor shall have delivered to the Owner Trustee a properly completed and executed Subsequent Transfer Agreement and the Custodian shall have executed and delivered the Initial Certification pursuant to Section 2.02(a);

5

NY1 5998524v.11

                                    AGM00008503

(B)    as of the related Subsequent Transfer Date, neither the Seller nor the Depositor is insolvent nor shall either of them be made insolvent by the transfer of the Additional Mortgage Loans nor is either of them aware of any pending insolvency;

(C)    the addition shall not result in a material adverse federal tax consequence to the Issuer, the Transferor, or the Noteholders;

(D)    the Revolving Period shall not have ended;

(E)    neither the Depositor nor the Issuer shall have been advised in writing by any Rating Agency that the transfer of the Additional Mortgage Loans would result in a reduction or withdrawal of the Rating Agency's then current rating of the Notes (without regard to the Policy);

(F)    each of the representations and warranties in Section 2.04(a) by virtue of repetition of the representations and warranties set forth in Section 3.02(a) of the Purchase Agreement (excluding clauses (17), (28), (30), (31), (32), (33) and (38) are true and correct in all material respects with respect to the Additional Mortgage Loans;

(G)    addition of the Additional Mortgage Loans will not, in the sole judgment of the Note Insurer, result in a significant variance as of the Subsequent Transfer Date from the Mortgage Loan pool characteristics covered by the representations and warranties in Section 3.02(a)(17), (28), (30), (31), (32), (33) and (38) of the Purchase Agreement after taking into account the addition of the Additional Mortgage Loans;

(H)    the Additional Mortgage Loan shall have been originated by Flagstar Bank, FSB substantially in accordance with its underwriting guidelines;

(I)    the remaining term to stated maturity of the Additional Mortgage Loan shall not exceed 10 years;

(J)    the Additional Mortgage Loan will not have a Credit Limit greater than $750,000;

(K)    Following the purchase of Additional Mortgage Loans by the Issuer, the mortgage loans shall be expected to have the following approximate characteristics (based upon the characteristics of the (a) Initial Mortgage Loans as of the Initial Cut-off Date and (b) Additional Mortgage Loans as of the related Subsequent Transfer Date):

(i)    a weighted average margin of at least 1.15% per annum;

(ii)    a weighted average combined drawn loan-to-value ratio of not more than 81.77%;

6

NY1 5998524v.11

AGM00008504

(iii)     a weighted average credit score of at least 715; and

(iv)     no more than 10.00% of the Mortgage Loans, by aggregate Cut-off Date Principal Balance, will relate to non-owner occupied properties.

(L)     the Depositor or the Seller shall have delivered to the Owner Trustee, the Indenture Trustee, and the Note Insurer an Officer's Certificate confirming the satisfaction of each of the conditions precedent above; and

(M)     The Note Insurer shall have consented to the transfer of the Additional Mortgage Loans to the Issuer.

(c)     Neither the Owner Trustee nor the Indenture Trustee need investigate or otherwise verify compliance with these conditions, except for its receipt of the documents specified above, and except for the Indenture Trustee's determination whether or not the documents conform to the requirements of this Agreement, and they may rely on the required Officer's Certificate.

The Note Insurer may by its prior written consent and its sole discretion permit the transfer to the Issuer of any Additional Mortgage Loans regardless of whether they meet the requirements for Additional Mortgage Loans under Section 2.01(b).

(d)     *Additional Balances; Future Fundings*. Additional Balances shall be part of the Asset Balance and are hereby transferred to the Issuer on the Closing Date for the Initial Mortgage Loans and on the relevant Subsequent Transfer Date for the Additional Mortgage Loans pursuant to this Section 2.01, and thereafter are part of the property of the Issuer. During each Collection Period during the Revolving Period and the Managed Amortization Period, (i) the Servicer shall from time to time pay to the Seller, on behalf of the Depositor and the Issuer, from Principal Collections received by the Servicer during such Collection Period, the purchase price for Additional Balances on the Mortgage Loans as and when such Additional Balances arise or (ii) the Depositor shall pay the purchase price for Additional Balances arising during such Collection Period from funds received by the Depositor on the related Payment Date pursuant to Section 8.03 of the Indenture.

(e)     *Managed Amortization Period*. At any time before the end of the Revolving Period the Seller may, in its sole discretion, elect to terminate the Revolving Period by notice in writing to the Servicer, the Depositor, the Sponsor, the Issuer, the Indenture Trustee and the Note Insurer that the Managed Amortization Event has occurred. Upon such notice, or on the date on which funds on deposit in the Funding Account equal or exceed the amount specified in the definition of Managed Amortization Event, the Revolving Period will immediately terminate.

(f)     *Deliveries*. In connection with the transfer under Section 2.01(a) by the Depositor, the Depositor shall effect delivery of the Mortgage Loan Schedule to the Issuer and the Indenture Trustee by the Closing Date and delivery of the Mortgage Files relating to the Initial Mortgage Loans to the Issuer, and the Issuer shall deliver them to the Indenture Trustee no later than the Closing Date.

7

NY1 5998524v.11

CONFIDENTIAL                                           AGM00008505

In connection with the transfers by the Depositor under Section 2.01(b), the Depositor shall effect delivery of a revised Mortgage Loan Schedule reflecting the addition of the Additional Mortgage Loans to the Indenture Trustee on the relevant Subsequent Transfer Date and of the relevant Mortgage Files to the Custodian no later than the relevant Subsequent Transfer Date.

In lieu of delivery of original documentation, the Depositor may deliver documents that have been imaged optically, to the extent permitted under the definition of "Mortgage File," on delivery of an opinion of counsel to the Indenture Trustee and the Note Insurer that the imaged documents are enforceable to the same extent as the originals and do not impair the enforceability of the transfer to the Issuer of the Mortgage Loans, if the retention of the imaged documents in the delivered format will not result in a reduction in the then current rating of the Notes without regard to the Policy.

(g)     *Mark Records*. The Seller has caused the portions of the Electronic Ledgers relating to the Initial Mortgage Loans to be clearly and unambiguously marked, and has made the appropriate entries in its general accounting records, to indicate that the Initial Mortgage Loans have been transferred to the Issuer at the direction of the Depositor. The Servicer hereby confirms to the Owner Trustee and the Indenture Trustee that it has clearly and unambiguously made appropriate entries in its general accounting records indicating that those Initial Mortgage Loans constitute part of the property of the Issuer and are serviced by it on behalf of the Issuer in accordance with this Agreement.

Not later than the relevant Subsequent Transfer Date, the Seller shall cause the portions of the Electronic Ledgers relating to the Additional Mortgage Loans to be clearly and unambiguously marked, and shall make appropriate entries in its general accounting records, to indicate that those Additional Mortgage Loans have been transferred to the Issuer at the direction of the Depositor. By the relevant Subsequent Transfer Date, the Servicer shall clearly and unambiguously make appropriate entries in its general accounting records indicating that those Additional Mortgage Loans constitute part of the property of the Issuer and are serviced by it on behalf of the Issuer in accordance with this Agreement.

(h)     *UCC Filings*. The Depositor and the Issuer agree (subject to Section 2.01(i) below) to effect any actions and execute any documents necessary to perfect and protect the Issuer's, the Indenture Trustee's, the Noteholders', and the Note Insurer's interests in the Mortgage Loans and all Related Assets with respect thereto, including causing the filing of all necessary Continuation Statements for the UCC-1 Financing Statements filed in the State of Delaware on or prior to the Closing Date describing the Mortgage Loans and the Related Assets with respect thereto and naming the Depositor as debtor and the Issuer as secured party or naming the Issuer as debtor and the Indenture Trustee as secured party, as applicable, and any amendments to UCC-1 Financing Statements required to reflect a change in the UCC or in the name or organizational structure of the Depositor or the Issuer or the filing of any additional UCC-1 Financing Statements due to the change in the state of organization of the Depositor or the Issuer (within 30 days of any event necessitating the filing).

8

NY1 5998524v.11

CONFIDENTIAL

AGM00008506

(i)     *Sale Treatment.* Except as otherwise provided in Section 2.08, the Sponsor, the Depositor and the Issuer intend that the transactions set forth herein constitute sales by the Depositor to the Issuer of all of the Depositor's right, title and interest in and to the Mortgage Loans, including for accounting purposes, and not a secured borrowing. In the event the transactions set forth herein are deemed not to be sales, the Depositor hereby grants to the Issuer a security interest in the Mortgage Loans and the Related Assets to secure all of the Depositor's obligations hereunder, and this Agreement shall and hereby does constitute a security agreement under applicable law.

Section 2.02     *Acceptance by Indenture Trustee.*

(a)     On the Closing Date and each Subsequent Transfer Date, the Custodian shall execute and deliver to the Depositor, the Servicer, the Sponsor, the Indenture Trustee, and the Seller (with a copy to the Note Insurer) the Initial Certification pursuant to the Custodial Agreement with respect to the Initial Mortgage Loans transferred on the Closing Date and the Additional Mortgage Loans transferred on the related Subsequent Transfer Date, as applicable. Within 180 days after the Closing Date and each Subsequent Transfer Date, as applicable, the Custodian shall deliver to the Depositor, the Servicer, the Sponsor, and the Seller (with a copy to the Note Insurer) a Final Certification pursuant to the Custodial Agreement. The Servicer shall (or shall cause the Seller to) correct any exception noted in each Final Certification within 90 days of its receipt.

(b)     Upon the satisfaction of the requirements of Section 2.07(a) (including the deposit of any required Transfer Deposit Amount), all interest of the Issuer in a Mortgage Loan shall automatically be retransferred without recourse, representation, or warranty to the Seller and the Asset Balance of the Mortgage Loan shall be deducted from the Mortgage Loan Pool Balance, if:

(i)     the Indenture Trustee does not receive the Mortgage File for any Mortgage Loan as required by Section 2.01(f);

(ii)    the time to correct any defect in the Mortgage Loan noted on the Final Certification has expired; or

(iii)   the Issuer incurs a loss on the Mortgage Loan because any document in its relevant Mortgage File is defective.

Subject to the prior satisfaction of the requirements of Section 2.07, the Owner Trustee, on behalf of the Issuer, shall execute any documents of transfer presented by the Seller, without recourse, representation, or warranty, and take any other actions reasonably requested by the Seller to effect the transfer by the Issuer of the Defective Mortgage Loan pursuant to this Section as promptly as practical.

The sole remedy of the Noteholders, the Issuer, the Transferor, the Owner Trustee, the Indenture Trustee, and the Note Insurer against the Seller for the transfer of a Defective Mortgage Loan to the Issuer is the Seller's obligation, subject to certain cure periods specified herein, to accept a transfer of a Defective Mortgage Loan and to either convey an Eligible

9

NY1 5998524v.11

Substitute Mortgage Loan and/or to make a deposit of any Transfer Deposit Amount into the Custodial Account in accordance with Section 2.07. If the Seller fails to accept a transfer of a Defective Mortgage Loan and/or to convey an Eligible Substitute Mortgage Loan and/or to make a deposit of any Transfer Deposit Amount into the Custodial Account, the Sponsor will be required to perform such obligations.

Promptly following the transfer of any Defective Mortgage Loan from the Issuer pursuant to this Section or Section 2.07, the Servicer shall amend the Mortgage Loan Schedule, deliver the amended Mortgage Loan Schedule to the Indenture Trustee and the Custodian, with a copy to the Custodian, and make appropriate entries in its general account records to reflect the transfer. Following the retransfer, the Servicer shall appropriately mark its records to indicate that it is no longer servicing the applicable Defective Mortgage Loan on behalf of the Issuer. The Seller shall appropriately mark its Electronic Ledger and make appropriate entries in its general account records to reflect the transfer promptly following the transfer.

(c)     The Seller shall deliver to the Indenture Trustee any documents required to be held by the Indenture Trustee in accordance with Section 2.01(f) with respect to any Eligible Substitute Mortgage Loans. The Servicer shall determine the Transfer Deposit Amount in any Collection Period during which the Seller, substitutes Eligible Substitute Mortgage Loans and the Seller shall deposit that amount in the Custodial Account at the time of substitution. All amounts received on the Eligible Substitute Mortgage Loans during the Collection Period in which the circumstances giving rise to their transfer to the Issuer occur shall not be a part of the property of the Issuer and shall not be deposited by the Servicer in the Custodial Account. All amounts received with respect to a removed Defective Mortgage Loan during the Collection Period in which the circumstances giving rise to its transfer to the Issuer occur shall be a part of the property of the Issuer and shall be deposited by the Servicer in the Custodial Account. An Eligible Substitute Mortgage Loan will be subject to the terms of this Agreement in all respects when transferred to the Issuer, and each of the Seller and the Sponsor hereby makes the representations, warranties, and covenants in Section 2.04 with respect to the Eligible Substitute Mortgage Loan as of the date of substitution.

(d)     The Custodian shall retain possession of each Mortgage File on behalf of the Indenture Trustee in accordance with the Custodial Agreement. The Servicer shall promptly deliver to the Indenture Trustee the originals of any other documents constituting the Mortgage File coming into its possession on their execution or receipt. Any documents to be delivered to the Indenture Trustee under this Agreement may be delivered to the Custodian acting on behalf of the Indenture Trustee.

Section 2.03     *Representations and Warranties of the Servicer.*

The Servicer represents and warrants to the Indenture Trustee and the Note Insurer that as of the Closing Date:

(i)     The Servicer is a federal savings bank, validly existing and in good standing under the laws of the United States, and has the power to own its assets and to transact the business in which it is currently engaged. The Servicer is duly qualified to do

10

NY1 5998524v.11

CONFIDENTIAL

business as a foreign banking institution and is in good standing in each jurisdiction in which the character of its business or any properties owned or leased by it requires such qualification and in which the failure so to qualify would have a material adverse effect on the business, properties, assets, or condition (financial or other) of the Servicer.

(ii)    The Servicer has the power and authority to make, execute, deliver, and perform this Agreement and all of the transactions contemplated under this Agreement, and has taken all necessary corporate action to authorize the execution, delivery, and performance of this Agreement. When executed and delivered, this Agreement will constitute a valid and legally binding obligation of the Servicer enforceable in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting creditors' rights generally and by general principles of equity.

(iii)    The Servicer is not required to obtain the consent of any other party or any consent, license, approval or authorization from, or registration or declaration with, any governmental authority, bureau, or agency in connection with the execution, delivery, performance, validity, or enforceability of this Agreement, except for consents, licenses, approvals or authorizations, or registrations or declarations (i) that have been obtained or filed, as the case may be, before the Closing Date or (ii) the failure of which to file or obtain could not reasonably be expected to have a material adverse effect on (A) the transactions contemplated by this Agreement or (B) the rights or interests of the Issuer, the Noteholders or the Note Insurer.

(iv)    The execution, delivery, and performance of this Agreement by the Servicer will not violate any existing law or regulation or any order or decree of any court applicable to the Servicer or the charter or bylaws of the Servicer, or constitute a material breach of any mortgage, indenture, contract, or other agreement to which the Servicer is a party or by which the Servicer may be bound.

(v)    No litigation or administrative proceeding of or before any court, tribunal, or governmental body is currently pending, or to the knowledge of the Servicer threatened, against the Servicer or any of its properties or with respect to this Agreement, the Indenture, or the Notes that in the opinion of the Servicer has a reasonable likelihood of resulting in a material adverse effect on the transactions contemplated by the Transaction Documents.

The representations and warranties in this Section shall survive the transfer of the Mortgage Loans to the Issuer. Upon discovery of a breach of any such representation or warranty that materially and adversely affects the interests of the Transferor, the Noteholders, or the Note Insurer, the person discovering the breach shall give prompt notice to the other parties and to the Note Insurer. The Servicer shall cure in all material respects any breach of any such representation or warranty within 90 days of becoming aware of it or, with the consent of the Note Insurer and a Responsible Officer of the Indenture Trustee, any longer period specified in the consent.

11

NY1 5998524v.11

CONFIDENTIAL

Section 2.04    *Representations and Warranties Regarding the Mortgage Loans;*
*Retransfer of Certain Mortgage Loans.*

(a)    Each of the Seller and the Sponsor, by this reference repeats and incorporates in this Agreement each representation and warranty made by it in Section 3.02(a) of the Purchase Agreement (other than Section 3.02(a)(1) and (2)) to the Indenture Trustee, the Issuer, and the Note Insurer and, in addition, represents and warrants to the Indenture Trustee, the Issuer, and the Note Insurer that as of each Transfer Date:

(i)    This Agreement constitutes its valid and legally binding obligation, enforceable against it in accordance with its terms, except as such enforceability may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting creditors' rights generally and by general principles of equity.

(ii)    Either:

(A)    the Purchase Agreement constitutes a valid transfer to the Depositor of all right, title, and interest of the Seller in the Mortgage Loans (including all Additional Balances arising from time to time after the Initial Closing Date, in the case of the Initial Mortgage Loans, and the Subsequent Transfer Date in the case of the Eligible Substitute Mortgage Loans and the Additional Mortgage Loans, the Related Property), and this Agreement constitutes a valid transfer to the Issuer of the foregoing property such that, on execution of this Agreement, such property is owned by the Issuer free of all Liens other than Permitted Liens; or

(B)    the Purchase Agreement, if found not to be a sale, constitutes a Grant of a Security Interest to the Depositor of the property described in the Purchase Agreement, and this Agreement, if found not to be a sale, constitutes a Grant of a Security Interest to the Issuer in the property described in clause (A) above and the Indenture constitutes a Grant of a Security Interest to the Indenture Trustee in the Collateral. The Indenture Trustee has a first priority perfected Security Interest in the Collateral, free and clear of any Liens other than Permitted Liens subject to the effect of Section 9-315 of the UCC with respect to Collections on the Mortgage Loans that are deposited in the Custodial Account in accordance with the next to last paragraph of Section 3.02(b), and if this Agreement constitutes the Grant of a Security Interest in the property described in clause (A) above to the Issuer, the Issuer has a first priority perfected Security Interest in the property, subject to the same limitations. This Security Interest is enforceable as such against creditors of and purchasers from the Issuer, the Depositor, and the Seller.

(b)    If the substance of any representation and warranty with respect to a Mortgage Loan in this Section made to the best of the Seller's and the Sponsor's knowledge or as to which the Seller or the Sponsor has no knowledge is inaccurate and the inaccuracy materially and adversely affects the interest of the Issuer, the Noteholders or the Note Insurer in the related Mortgage Loan then, notwithstanding that the Seller or the Sponsor, as applicable, did not know

12

NY1 5998524v.11

the substance of the representation and warranty was inaccurate at the time the representation or warranty was made, the inaccuracy shall be a breach of the applicable representation or warranty.

(c)     The representations and warranties in this Section shall survive the transfer and assignment of the Mortgage Loans to the Issuer and the delivery of the respective Mortgage Files to the Custodian pursuant to the Custodial Agreement and the termination of the rights and obligations of the Servicer pursuant to Section 5.04 or 6.01. If the Seller, the Sponsor, the Depositor, the Servicer, the Note Insurer, or a Responsible Officer of the Indenture Trustee discovers a breach of any of the foregoing representations and warranties, without regard to any limitation concerning the knowledge of the Seller and the Sponsor, that materially and adversely affects the interests of the Issuer, the Indenture Trustee under the Indenture, the Noteholders, or the Note Insurer in the Mortgage Loan, the party discovering the breach shall give prompt notice to the other parties and the Note Insurer.

(d)     The Seller shall use all reasonable efforts to cure in all material respects any breach of any of the foregoing representations and warranties (other than a breach of the representation and warranty in Section 2.04 by virtue of the repetition of the representation in Section 3.02(a)(6) of the Purchase Agreement) within 90 days of becoming aware of it or, not later than the Business Day before the Payment Date in the month following the Collection Period in which the cure period expired (or any later date that the Indenture Trustee and the Note Insurer consent to), all interest of the Issuer in the Defective Mortgage Loan shall, subject to the satisfaction of the requirements of Section 2.07, automatically be retransferred without recourse, representation, or warranty to the Seller and the Asset Balance of each such retransferred Mortgage Loan shall be deducted from the Loan Pool Balance.

The cure for any breach of a representation and warranty relating to the characteristics of the Mortgage Loans in the aggregate shall be a repurchase of or substitution for only the Mortgage Loans necessary to cause the characteristics to comply with the related representation and warranty and the selection of such Mortgage Loans shall not be made in a manner intended to have an adverse effect on the Issuer, the Noteholders, or the Note Insurer.

Subject to the prior satisfaction of the requirements of Section 2.07, the Owner Trustee, on behalf of the Issuer, shall execute any documents of transfer presented by the Seller and take any other actions reasonably requested by the Seller to effect the transfer by the Issuer of the Defective Mortgage Loan pursuant to this Section as promptly as practical. Any transfer by the Issuer to the Seller of a Defective Mortgage Loan pursuant hereto shall be without recourse, representation or warranty.

Promptly following the transfer of any Defective Mortgage Loan from the Issuer pursuant to this Section, the Servicer shall amend the Mortgage Loan Schedule, deliver the amended Mortgage Loan Schedule to the Indenture Trustee and the Custodian, and make appropriate entries in its general account records to reflect the transfer. Following the retransfer, the Servicer shall appropriately mark its records to indicate that it is no longer servicing the Mortgage Loan on behalf of the Issuer. The Seller shall appropriately mark its Electronic

13

NY1 5998524v.11

AGM00008511

Ledger and make appropriate entries in its general account records to reflect the transfer promptly following the transfer.

If the Seller defaults or of fails to perform any of its obligation under this clause (b), the Sponsor will be required to perform the Seller's obligations under this clause.

(e)    The sole remedy (other than the indemnities provided pursuant to clauses (g) and (h) below) of the Noteholders, the Indenture Trustee on behalf of Noteholders, the Owner Trustee, and the Note Insurer against the Seller and the Sponsor for the breach of a representation or warranty with respect to a Mortgage Loan other than the representation and warranty in Section 2.04(a) by virtue of the repetition of Section 3.02(a)(6) of the Purchase Agreement is the Seller's obligation (and the Sponsor's obligation if the Seller fails to perform such obligation), subject to certain cure periods specified herein, to accept a transfer of a Mortgage Loan as to which a breach has occurred and is continuing and to make any required deposit in the Custodial Account or to substitute an Eligible Substitute Mortgage Loan.

(f)    If the representation and warranty in Section 2.04(a) by virtue of the repetition of Section 3.02(a)(6) of the Purchase Agreement is breached, the transfer of the affected Mortgage Loans to the Issuer shall be void and the Seller shall pay to the Issuer the sum of (i) the amount of the aggregate Asset Balances of the affected Mortgage Loans, plus accrued interest on each Asset Balance at the applicable Loan Rate to the date of payment and (ii) the amount of any loss or expense incurred by the Transferor, the Noteholders, the Issuer, or the Note Insurer with respect to the affected Mortgage Loans. The Indenture Trustee may enforce the Seller's obligations under this Section in its own right or as the owner of the Issuer's right to seek enforcement as the assignee of the Issuer's rights under this Agreement pursuant to the Indenture.

If the Seller defaults or otherwise fails to perform any of its obligation under this clause (f), the Sponsor will be required to perform the Seller's obligations under this clause and the Indenture Trustee will have enforcement rights with respect to the Sponsor.

(g)    The Seller and the Sponsor, as applicable, shall defend and indemnify the Indenture Trustee, the Owner Trustee, the Note Insurer and the Noteholders against all reasonable costs and expenses, and all losses, damages, claims, and liabilities, including reasonable fees and expenses of counsel and the amount of any settlement entered into without the consent of the Seller or the Sponsor, as applicable (this consent not to be unreasonably withheld), that may be asserted against or incurred by any of them as a result of any third-party action arising out of any breach of a representation and warranty by the Seller or the Sponsor, as applicable.

(h)    A breach of any of the representations and warranties set forth in Section 3.02(a)(14) and (15) of the Purchase Agreement will be deemed to materially and adversely affect the interests of the Noteholders.

14

NYI 5998524v.11

CONFIDENTIAL

Section 2.05     *Covenants of the Depositor.*

The Depositor covenants that:

(a)     *Security Interests.* Except as contemplated pursuant to this Agreement, the Depositor will not transfer any Mortgage Loan to any other person, or create or suffer to exist any Lien on any Mortgage Loan other than Permitted Liens; the Depositor will notify the Indenture Trustee of the existence of any Lien on any Mortgage Loan promptly following discovery thereof; and the Depositor will defend the right, title, and interest of the Issuer in the Mortgage Loans, whether existing now or in the future, against all claims of third parties claiming through the Depositor.

(b)     *Negative Pledge.* The Depositor shall not transfer or grant a Security Interest in the Transferor Certificates except in accordance with Section 3.10 of the Trust Agreement.

(c)     *Additional Indebtedness.* So long as the Notes are outstanding the Depositor will not incur any debt other than debt that (i) is non-recourse to the assets of the Depositor other than the mortgage loans specifically pledged as security for the debt, (ii) is subordinated in right of payment to the rights of the Noteholders, (iii) contains non-petition covenants with respect to the Depositor by all parties to the transaction and (iv) is assigned a rating by each of the Rating Agencies that is the same as the then current rating of the Notes.

(d)     *Downgrading.* The Depositor will not engage in any activity that would result in a downgrading of the Notes without regard to the Policy.

(e)     *Amendment to Certificate of Formation.* The Depositor will not amend its Certificate of Formation or state of organization without prior notice to the Rating Agencies, the Indenture Trustee, and the Note Insurer.

Section 2.06     *Transfers of Mortgage Loans at Election of Transferor.*

Subject to the conditions below, the Transferor may require the transfer of Mortgage Loans from the Issuer to the Transferor as of the close of business on a Payment Date (the "*Date of Transfer*"). In connection with any transfer, the Transferor Interest shall be reduced by the aggregate Asset Balances of the Mortgage Loans transferred as of the applicable Date of Transfer. On the fifth Business Day (the "*Transfer Notice Date*") before the Date of Transfer designated in the notice, the Transferor shall give the Owner Trustee, the Indenture Trustee, the Servicer, and the Note Insurer a notice of the proposed transfer that contains a list of the Mortgage Loans to be transferred. These transfers of Mortgage Loans shall be permitted if the following conditions are satisfied:

(a)     No Rapid Amortization Event has occurred.

(b)     On the Date of Transfer the Overcollateralization Amount (after giving effect to the removal of the Mortgage Loans proposed to be transferred) is equal to or *exceeds* the Overcollateralization Target Amount.

(c)     The transfer of any Mortgage Loans on any Date of Transfer during the Managed Amortization Period shall not, in the reasonable belief of the Transferor, cause a

15

CONFIDENTIAL                                                                                                            AGM00008513

Rapid Amortization Event to occur or an event that with notice or lapse of time or both would constitute a Rapid Amortization Event.

(d)    By the Date of Transfer, the Transferor shall have delivered to the Indenture Trustee, with a copy to the Custodian, a revised Mortgage Loan Schedule, reflecting the proposed transfer and the Date of Transfer, and the Servicer shall have marked the Electronic Ledger to show that the Mortgage Loans transferred to the Transferor are no longer owned by the Issuer.

(e)    The Mortgage Loans to be removed from the Issuer shall have been randomly selected by the Servicer.

(f)    In connection with each transfer of Mortgage Loans pursuant to this Section, each Rating Agency and the Note Insurer shall have received by the related Transfer Notice Date notice of the proposed transfer of Mortgage Loans and, before the Date of Transfer, each Rating Agency shall have notified in writing the Transferor, the Indenture Trustee, and the Note Insurer that the transfer of Mortgage Loans would not result in a reduction or withdrawal of its then current rating of the Notes without regard to the Policy.

(g)    The Transferor shall have delivered to the Owner Trustee, the Indenture Trustee, and the Note Insurer an Officer's Certificate certifying that the items in subparagraphs (a) through (f), inclusive, have been performed or are true, as the case may be. The Owner Trustee and the Indenture Trustee may conclusively rely on the Officer's Certificate, shall have no duty to make inquiries with regard to the matters in it, and shall incur no liability in so relying.

Upon receiving the requisite information from the Transferor, the Servicer shall perform in a timely manner those acts required of it, as specified above. Upon satisfaction of the above conditions, on the Date of Transfer the Indenture Trustee shall effect delivery to the Transferor of the Mortgage File for each Mortgage Loan being so transferred, and the Indenture Trustee shall execute and deliver to the Transferor any other documents prepared by the Transferor reasonably necessary to transfer the Mortgage Loans to the Transferor. Any transfer of Mortgage Loans by the Issuer to the Transferor pursuant to this Section shall be without recourse, representation, or warranty by the Indenture Trustee or the Issuer to the Transferor.

Section 2.07    *Retransfers and Transfer Deficiencies.*

(a)    The Indenture Trustee, based on the information concerning the Mortgage Loans set forth on the most recent Monthly Statement shall determine if reducing the Loan Pool Balance by the aggregate Asset Balances of any retransferred Mortgage Loans pursuant to Section 2.02(b) or 2.04(d) would cause a Transfer Deficiency. If so, the Indenture Trustee shall notify the Seller of the deficiency, and the Seller shall transfer to the Issuer within five Business Days Eligible Substitute Mortgage Loans or deposit into the Custodial Account an amount in immediately available funds equal to the amount of the Transfer Deficiency reduced by the Asset Balance of any such Eligible Substitute Mortgage Loans transferred to the Issuer (the "*Transfer Deposit Amount*").

16

NY1 5998524v.11

    AGM00008514

(b)      The Seller shall deliver to the Indenture Trustee any documents required to be held by the Indenture Trustee in accordance with Section 2.01 with respect to any Eligible Substitute Mortgage Loans.

(c)      All Collections received on Eligible Substitute Mortgage Loans during the Collection Period in which the circumstances giving rise to their transfer to the Issuer occur shall not be a part of the property of the Issuer and shall not be deposited by the Servicer in the Custodial Account.

All Collections received on a removed Defective Mortgage Loan during the Collection Period in which the circumstances giving rise to its transfer to the Issuer occur shall be a part of the property of the Issuer and shall be deposited by the Servicer in the Custodial Account.

(d)      An Eligible Substitute Mortgage Loan will be subject to the terms of this Agreement in all respects when transferred to the Issuer, and the Seller hereby makes the representations, warranties, and covenants in Section 2.04 with respect to the Eligible Substitute Mortgage Loan as of the applicable Date of Transfer.

(e)      Promptly following the transfer of any Eligible Substitute Mortgage Loan to the Issuer pursuant to this Section, the Servicer shall amend the Mortgage Loan Schedule, deliver the amended Mortgage Loan Schedule to the Indenture Trustee, with a copy to the Custodian, and make appropriate entries in its general account records to reflect the transfer. The Seller shall appropriately mark its Electronic Ledger and make appropriate entries in its general account records to reflect the transfer promptly following the transfer.

Section 2.08    *Tax Treatment*.

Notwithstanding Section 2.01(i), the Depositor and the Transferor intend that the Notes will be indebtedness secured by the assets of the Issuer for federal, state, and local income and franchise tax purposes and for purposes of any other tax imposed on or measured by income. The Transferor and the Depositor shall treat the Notes for purposes of federal, state, and local income or franchise taxes and any other tax imposed on or measured by income, as indebtedness secured by the assets of the Issuer and shall report the transactions contemplated by this Agreement on all applicable tax returns in a manner consistent with this treatment.

Section 2.09    *Representations and Warranties of the Depositor*.

The Depositor represents and warrants to the Indenture Trustee on behalf of the Noteholders and the Note Insurer as follows:

(i)      This Agreement constitutes a valid and legally binding obligation of the Depositor, enforceable against the Depositor in accordance with its terms except as such enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting creditors' rights generally or by general principles of equity.

(ii)     Immediately before the sale and assignment by the Depositor to the Issuer of each Mortgage Loan, the Depositor was the sole beneficial owner of each Mortgage

17

NY1 5998524v.11

CONFIDENTIAL                                               AGM00008515

Loan (insofar as the title was conveyed to it by the Seller) subject to no prior Lien, other than Permitted Liens.

(iii)    As of the applicable Transfer Date, this Agreement constitutes a valid transfer to the Issuer of all of the Depositor's right, title, and interest in the applicable Mortgage Loans.

(iv)    The Depositor has not transferred the Mortgage Loans to the Issuer with any intent to hinder, delay, or defraud any of its creditors.


## ARTICLE III

### ADMINISTRATION AND SERVICING OF MORTGAGE LOANS

Section 3.01    *The Servicer.*

(a)    The Servicer shall service and administer the Mortgage Loans in a manner consistent with the terms of this Agreement and with Customary Servicing Practices and shall have full power and authority, acting alone or through a subservicer, (i) to execute and deliver, on behalf of the Noteholders, the Issuer, and the Indenture Trustee, customary consents or waivers and other instruments and documents, (ii) to consent to transfers of any Mortgaged Property and assumptions of the Mortgage Notes and related Mortgages (but only in the manner provided in this Agreement), (iii) to collect any Insurance Proceeds and other Liquidation Proceeds, and (iv) to effectuate foreclosure or other conversion of the ownership of the Mortgaged Property securing any Mortgage Loan. The Servicer shall remain responsible to the parties to this Agreement and the Note Insurer for its obligations under this Agreement. Any amounts received by any subservicer on a Mortgage Loan shall be considered to have been received by the Servicer whether or not actually received by it. Without limiting the generality of the foregoing, the Servicer may execute and deliver, on behalf of itself, the Noteholders, and the Indenture Trustee, or any of them, any instruments of satisfaction or cancellation, or of partial or full release or discharge, and all other comparable instruments, with respect to the Mortgage Loans and with respect to the Mortgaged Properties, in each case to the extent not inconsistent with this Agreement.

At the request of a Servicing Officer, the Indenture Trustee shall furnish the Servicer with any powers of attorney and other documents appropriate to enable the Servicer to carry out its servicing and administrative duties under this Agreement.

The Servicer may without the prior approval of the Rating Agencies or the Note Insurer agree to modify the terms of a Credit Line Agreement or increase the Credit Limit of a Mortgage Loan, if such modification complies with the Seller's underwriting guidelines, does not materially and adversely affect the interest of the Noteholders, the Transferor or the Note Insurer, is consistent with prudent business practices, and does not cause a first lien Mortgage Loan to be subordinated into a second lien position, as follows:

18

NY1 5998524v.11

CONFIDENTIAL

AGM00008516

(i)       the Servicer may replace the current senior lien on an unlimited number of Mortgage Loans as long as the current Loan-to-Value Ratio of each such Mortgage Loan is not greater than the Loan-to-Value Ratio on such Mortgage Loan at origination; the Servicer may allow borrowers with Asset Balances up to 5% of Loan Pool Balance as of the Initial Cut-off Date to replace their existing senior lien with a new senior lien that will increase the Loan-to-Value Ratio of each such Mortgage Loan up to 85%;

(ii)      the Servicer may increase the Credit Limit with respect to any Mortgage Loan if, on a fully drawn basis, the current Loan-to-Value Ratio (verified with a new appraisal) after giving effect to the increase does not exceed the original Loan-to-Value Ratio of that Mortgage Loan; with respect to Mortgage Loans with an Asset Balance of up to 5% of the Loan Pool Balance as of the Initial Cut-Off Date, the Servicer may allow an increase in their Credit Limit that increases their current Loan-to-Value Ratio up to 85%; and

(iii)     the Servicer may offer to borrowers reductions in their Loan Rates. If a borrower is granted a rate reduction, the Loan Rate may not be reduced unless the Mortgage Loan is purchased from the Issuer. Mortgage Loans with aggregate Asset Balances of no more than 5% of the Loan Pool Balance as of the Initial Cut-Off Date may be purchased from the Issuer to accommodate reductions in Loan Rates.

With respect to a Mortgage Loan with respect to which the Loan Rate is expected to be reduced, the Seller shall purchase the Mortgage Loan from the Issuer as described below. Effective immediately on the same Business Day on which the Seller delivers the Purchase Price for the relevant Mortgage Loan to the Servicer, all interest of the Issuer in the relevant Mortgage Loan shall automatically be transferred and assigned to the Seller and all benefits and burdens of ownership of the relevant Mortgage Loan, including the right to accrued interest on it from the date of purchase and the risk of default on the Mortgage Loan, shall pass to the Seller.

The Servicer shall promptly deliver to the Indenture Trustee a certification signed by a Servicing Officer to the effect that all of the requirements for a purchase of a Mortgage Loan in connection with the reduction in Loan Rate have been satisfied with respect to the relevant Mortgage Loan. The Seller shall deliver the Purchase Price for the relevant Mortgage Loan to the Servicer promptly after a borrower notifies the Seller or the Servicer that it wants a reduction in Loan Rate, and the Servicer shall deposit the Purchase Price for the modified Mortgage Loan in the Custodial Account pursuant to Section 3.02 within one Business Day after its receipt of the Purchase Price for the modified Mortgage Loan. Upon receipt by the Indenture Trustee and the Custodian of written notification of the deposit signed by a Servicing Officer, the Custodian shall release to the Seller the related Mortgage File and shall execute and deliver any instruments of transfer or assignment delivered to it for execution and reasonably acceptable to it, in each case without recourse, representation, or warranty, necessary to release the Mortgage Loan from the lien of the Indenture and vest in the Seller the Mortgage Loan previously transferred and assigned pursuant to this provision. The certification and written notification of the deposit each from a Servicing Officer may be delivered to the Indenture

19

CONFIDENTIAL

Trustee electronically, and to the extent the transmission originates on its face from a Servicing Officer, need not be manually signed.

The relationship of the Servicer to the Issuer and the Indenture Trustee under this Agreement is intended by the parties to be that of an independent contractor and not that of a joint venturer, partner, or agent of the Issuer or the Indenture Trustee.

(b)      If the rights and obligations of the Servicer are terminated under this Agreement, any successor to the Servicer in its sole discretion may terminate the existing subservicer arrangements with any subservicer or assume the terminated Servicer's rights under those subservicing arrangements to the extent permitted by applicable law and the subservicing agreements.

Section 3.02      *Collection of Certain Mortgage Loan Payments; Establishment of Accounts.*

(a)      The Servicer shall make reasonable efforts to collect all payments called for under the Mortgage Loans, and shall follow the collection procedures it follows for mortgage loans in its servicing portfolio comparable to the Mortgage Loans, to the extent consistent with this Agreement. Consistent with the foregoing, and without limiting the generality of the foregoing, the Servicer may in its discretion (i) waive any late payment charge or any assumption fees or other fees that may be collected in the ordinary course of servicing the Mortgage Loans and (ii) arrange with a borrower a schedule for the payment of interest due and unpaid if the arrangement is consistent with the Servicer's policies with respect to the mortgage loans it owns or services and in accordance with Customary Servicing Practices. Notwithstanding any arrangement, the Mortgage Loans will be included in the information regarding delinquent Mortgage Loans in the Servicing Certificate and monthly statement to Noteholders pursuant to Section 7.04 of the Indenture.

(b)      The Servicer shall establish and maintain a trust account (the "*Custodial Account*") as specified in the Adoption Annex. The Custodial Account shall be an Eligible Account and will initially be established by the Servicer at The Bank of New York Trust Company, N.A. The Servicer or the Seller, as the case may be, shall deposit or cause to be deposited in the Custodial Account within two Business Days following its receipt the following payments and collections received or made by it (without duplication):

(1)      all Collections on the Mortgage Loans;

(2)      the amounts deposited by the Servicer to the Custodial Account pursuant to Sections 3.04 and 4.03;

(3)      Net Liquidation Proceeds net of any related Foreclosure Profit;

(4)      Insurance Proceeds; and

(5)      any amounts required to be deposited pursuant to Section 7.01.

No other amounts are to be deposited to the Custodial Account, including amounts representing Foreclosure Profits, fees (including annual fees) or late charge penalties payable by borrowers, or amounts received by the Servicer for the accounts of borrowers for application towards the payment of taxes, insurance premiums, assessments, excess pay off amounts, and

20

NYI 5998524v.11

similar items. The Servicer shall remit all Foreclosure Profits to the Seller. Notwithstanding the foregoing, the Servicer may (i) retain from Interest Collections in each Collection Period, the related Servicing Fee for the Collection Period and any unreimbursed optional advance with respect to the Mortgage Loans made by the Servicer pursuant to Section 4.03 and (ii) to the extent available, pay Principal Collections to the Seller on behalf of the Depositor and the Issuer in respect of the purchase price of Additional Balances on the Mortgage Loans arising during each Collection Period during the Managed Amortization Period as and when such Additional Balances arise, and (iii) the Servicer may make a net deposit in the Custodial Account of the amounts required by this Section.

On the Business Day before each Payment Date from the amount then on deposit in the Custodial Account, the Servicer shall withdraw from the Custodial Account and remit to the Indenture Trustee, the amount to be applied on that Payment Date by the Indenture Trustee pursuant to Section 8.03 of the Indenture, and the Indenture Trustee will deposit that amount in the Payment Account pursuant to the Indenture.

The Indenture Trustee shall hold amounts deposited in the Payment Account as trustee for the Noteholders, the Transferor, and the Note Insurer. In addition, the Servicer shall notify the Indenture Trustee and the Note Insurer on each Determination Date of the amount of Collections in the Custodial Account to be transferred to the Payment Account and their allocation to Interest Collections and Principal Collections for the Mortgage Loans for the related Payment Date. Following this notification, the Servicer may withdraw from the Custodial Account and retain any amounts that constitute income realized from the investment of the Collections. The Servicer will be entitled to receive, as additional servicing compensation, income earned on the amounts held in the Payment Account.

Amounts on deposit in the Custodial Account will be invested in Eligible Investments maturing no later than the day before the next Payment Date at the direction of the Servicer. All income realized from any investment in Eligible Investments of funds in the Custodial Account shall be the property of the Servicer and may be withdrawn from time to time from the Custodial Account. Any losses incurred on these investments that reduce their principal amount shall be deposited in the Custodial Account by the Servicer out of its own funds immediately as realized.

(c)    From time to time withdrawals shall be made from the Funding Account by the Indenture Trustee on each day during the Revolving Period. Upon satisfaction of the conditions in Section 2.01(b)(v)(A)-(M), the Indenture Trustee shall withdraw from the Funding Account and pay to (i) the Transferor, with respect to Additional Balance Increase Amount, (ii) the Depositor or the Seller at the direction of the Depositor, with respect to purchase of Additional Balances, and (iii) the Depositor or the Seller at the direction of the Depositor, with respect to the purchase of Additional Mortgage Loans, the applicable amounts specified in the applicable subsection of Section 2.01(b).

(d)    Any funds in excess of the amounts described in the preceding sentence remaining in the Funding Account shall, after giving effect to the foregoing payments, be invested in Eligible Investments maturing no later than the next day on which withdrawals may

21

NY1 5998524v.11

AGM00008519

occur at the direction of the Servicer. All income realized from any investment in Eligible Investments of funds in the Funding Account shall be the property of the Servicer and may be withdrawn from time to time at its request from the Funding Account. On the first Payment Date following the end of the Revolving Period, any amounts remaining on deposit in the Funding Account (other than investment earnings) shall be deposited into the Payment Account for payment pursuant to the payment waterfall in Section 8.03(a)(2) or (3), as applicable, of the Indenture.

Section 3.03    *Deposits to Payment Account.*

On the Closing Date, the Servicer shall pay to the Indenture Trustee for deposit in the Payment Account any amounts representing Collections in respect of, the Initial Mortgage Loans received after the Initial Cut-off Date and before the Closing Date (exclusive of payments of accrued interest due prior to the Initial Cut-off).

Section 3.04    *Maintenance of Hazard Insurance; Property Protection Expenses.*

The Servicer shall cause to be maintained for each Mortgage Loan hazard insurance naming the Servicer or the related subservicer as loss payee under it providing extended coverage in an amount that is at least equal to the lesser of (i) the maximum insurable value of the improvements securing the Mortgage Loan from time to time or (ii) the combined principal balance owing on the Mortgage Loan and any mortgage loan senior to the Mortgage Loan from time to time. The Servicer shall also maintain on property acquired through foreclosure, or by deed in lieu of foreclosure, hazard insurance with extended coverage in an amount which is at least equal to the lesser of (i) the maximum insurable value from time to time of the improvements that are a part of the property or (ii) the combined principal balance owing on the Mortgage Loan and any mortgage loan senior to the Mortgage Loan at the time of the foreclosure or deed in lieu of foreclosure plus accrued interest and the good-faith estimate of the Servicer of related Liquidation Expenses to be incurred.

Amounts collected by the Servicer under these policies shall be deposited in the Custodial Account to the extent called for by Section 3.02. The hazard insurance to be maintained for the related Mortgage Loan shall include flood insurance when the Mortgaged Property is located in a federally designated flood area. The flood insurance shall be in the amount required under applicable guidelines of the Federal Flood Emergency Act. No other insurance need be carried on any Mortgaged Properties pursuant to this Agreement.

Section 3.05    *Assumption and Modification Agreements.*

When a Mortgaged Property has been or is about to be conveyed by the borrower, the Servicer shall exercise its right to accelerate the maturity of the Mortgage Loan consistent with the then current practice of the Servicer and without regard to the inclusion of the Mortgage Loan in the property of the Issuer. If it elects not to enforce its right to accelerate or if it is prevented from doing so by applicable law, the Servicer (so long as its action conforms with the underwriting standards generally acceptable in the industry at the time for new origination) may enter into an assumption and modification agreement with the person to whom the Mortgaged Property has been or is about to be conveyed, pursuant to which that person becomes liable

22

NY1 5998524v.11

under the Credit Line Agreement and, to the extent permitted by applicable law, the borrower remains liable on it. The Servicer shall notify the Indenture Trustee that any assumption and modification agreement has been completed by delivering to the Indenture Trustee an Officer's Certificate certifying that the agreement is in compliance with this Section and by forwarding the original copy of the assumption and modification agreement to the Custodian. Any assumption and modification agreement shall be a part of the related Mortgage File. No change in the terms of the related Credit Line Agreement may be made by the Servicer in connection with the assumption to the extent that the change would not be permitted to be made in the original Credit Line Agreement pursuant to Section 3.01(a). Any fee collected by the Servicer for entering into the assumption and modification agreement will be retained by the Servicer as additional servicing compensation.

Section 3.06    *Realization Upon Defaulted Mortgage Loans; Repurchase of Certain Mortgage Loans.*

The Servicer shall foreclose or otherwise comparably convert to ownership Mortgaged Properties securing defaulted Mortgage Loans when, in the opinion of the Servicer based on normal and usual practices and procedures, no satisfactory arrangements can be made for collection of delinquent payments pursuant to Section 3.02. Alternatively, the Servicer may forego foreclosure and charge off a defaulted Mortgage Loan if in the Servicer's opinion the proceeds of foreclosure and liquidation are likely to produce an amount less than the unpaid principal balance of senior liens on the Mortgaged Property. If the Servicer has actual knowledge or reasonably believes that any Mortgaged Property is affected by hazardous or toxic wastes or substances and that the acquisition of the Mortgaged Property would not be commercially reasonable, then the Servicer will not cause the Issuer to acquire title to the Mortgaged Property in a foreclosure or similar proceeding. In connection with foreclosure or other conversion (or a decision to forego foreclosure and charge off a defaulted Mortgage Loan), the Servicer shall follow the practices and procedures it deems appropriate and that are normal and usual in its general mortgage servicing activities, including advancing funds to correct a default on a related senior mortgage loan. However, the Servicer shall not be required to expend its own funds in connection with any foreclosure or towards the correction of any default on a related senior mortgage loan or restoration of any property unless it determines, in its sole discretion, that the expenditure will increase Net Liquidation Proceeds and the Servicer acts in accordance with the servicing standards in this Agreement.

If title to any Mortgaged Property is acquired in foreclosure or by deed in lieu of foreclosure, the deed or certificate of sale shall be issued to the Indenture Trustee, or to its nominee on behalf of Noteholders. The Servicer shall dispose of the Mortgaged Property as soon as practicable in a manner that maximizes its Liquidation Proceeds.

The Servicer, in its sole discretion, may purchase for its own account from the Issuer any Mortgage Loan that is 91 days or more delinquent. If the Servicer exercises this right, the delinquent Mortgage Loans will be selected by the length of time of their delinquency, with the most delinquent Mortgage Loans being purchased first. The price for any such Mortgage Loan purchased shall be 100% of its Asset Balance plus accrued interest on it at the applicable Loan

23

NY1 5998524v.11

Rate from the date through which interest was last paid by the related borrower to the first day of the month in which the purchase price is to be distributed to the Noteholders. The purchase price shall be deposited in the Custodial Account. The Servicer may only exercise this right on or before the penultimate day of the calendar month in which the Mortgage Loan became 91 days delinquent. Any delinquent Mortgage Loan that becomes current but thereafter again becomes 91 days or more delinquent may be purchased by the Servicer pursuant to this Section. The aggregate Asset Balance of all the delinquent Mortgage Loans purchased from the Issuer pursuant to this paragraph shall not exceed 1.00% of the Cut-off Date Asset Balance of the Initial Mortgage Loans, unless the Note Insurer's consent has been obtained.

Upon receipt of a certificate from the Servicer in the form of Exhibit C, the Indenture Trustee shall release to the Servicer the related Mortgage File and shall execute and deliver any instruments of transfer prepared by the Servicer, without recourse, necessary to vest in the purchaser of the Mortgage Loan any Mortgage Loan released to it and the Servicer shall succeed to all the Issuer's interest in the Mortgage Loan and all related security and documents. This assignment shall be an assignment outright and not for security. The Servicer shall then own the Mortgage Loan, and all security and documents, free of any further obligation to the Issuer, the Owner Trustee, the Indenture Trustee, the Note Insurer, the Transferor, or the Noteholders with respect to it. The certification by the Servicer may be delivered to the Indenture Trustee electronically, and if it is, its form may differ from Exhibit C so long as it contains the information required by Exhibit C (that is, the relevant loan number, at least one of the five reasons for requesting file as found in Exhibit C, and the acknowledgment that the Mortgage File will be held in accordance with this Agreement and will promptly be returned to the Indenture Trustee when the need for it by the Servicer no longer exists unless the Mortgage Loan has been liquidated or retransferred), and to the extent the transmission originates on its face from a Servicing Officer, need not be manually signed.

Section 3.07    *Indenture Trustee to Cooperate.*

By each Payment Date, the Servicer will notify the Indenture Trustee whenever the Asset Balance of any Mortgage Loan has been paid in full during the preceding Collection Period. A Servicing Officer shall certify that the Mortgage Loan has been paid in full and that all amounts received in connection with the payment that are required to be deposited in the Custodial Account pursuant to Section 3.02 have been so deposited or credited. Upon payment in full pursuant to Section 3.01, the Servicer is authorized to execute an instrument of satisfaction regarding the related mortgage, which instrument of satisfaction shall be recorded by the Servicer if required by applicable law and be delivered to the person entitled to it.

As appropriate for the servicing or foreclosure of any Mortgage Loan, or in connection with the payment in full of the Asset Balance of any Mortgage Loan and termination of the related Credit Line Agreement, upon request of the Servicer and delivery to the Indenture Trustee of a Request for Release substantially in the form of Exhibit C signed by a Servicing Officer, the Indenture Trustee shall release the related Mortgage File to the Servicer and the Indenture Trustee shall execute any documents provided by the Servicer necessary to the prosecution of any proceedings or the taking of other servicing actions. The Request for Release

24

NY1 5998524v.11

CONFIDENTIAL

AGM00008522

by a Servicing Officer may be delivered to the Indenture Trustee electronically, and if it is, its form may differ from Exhibit C so long as it contains the information required by Exhibit C (that is, the relevant loan number, at least one of the five reasons for requesting file as found in Exhibit C, and the acknowledgment that the Mortgage File will be held in accordance with this Agreement and will promptly be returned to the Indenture Trustee when the need for it by the Servicer no longer exists unless the Mortgage Loan has been liquidated or retransferred), and to the extent the transmission originates on its face from a Servicing Officer, need not be manually signed. The Servicer shall return the Mortgage File to the Indenture Trustee when the need for it by the Servicer no longer exists, unless the Mortgage Loan is liquidated, in which case, upon receipt of a certificate of a Servicing Officer similar to that specified above, the Request for Release shall be released by the Indenture Trustee to the Servicer.

To facilitate the foreclosure of the mortgage securing any Mortgage Loan that is in default following recordation of the assignments of mortgage in accordance with this Agreement, if so requested by the Servicer, the Indenture Trustee shall execute an appropriate assignment in the form provided to the Indenture Trustee by the Servicer to assign the Mortgage Loan for the purpose of collection to the Servicer or a subservicer. The assignment shall unambiguously indicate that the assignment is for the purpose of collection only. The Servicer will then bring all required actions in its own name and otherwise enforce the terms of the Mortgage Loan and deposit the Net Liquidation Proceeds, exclusive of Foreclosure Profits, in the Custodial Account. If all delinquent payments due under the Mortgage Loan are paid by the borrower and any other defaults are cured, then the Servicer shall promptly reassign the Mortgage Loan to the Indenture Trustee and return the related Mortgage File to the place where it was being maintained.

Section 3.08   *Servicing Compensation; Payment of Certain Expenses by Servicer.*

The Servicer may retain the Servicing Fee pursuant to Section 3.02 as compensation for its services in servicing the Mortgage Loans. Moreover, additional servicing compensation in the form of late payment charges or other receipts not required to be deposited in the Custodial Account (other than Foreclosure Profits) shall be retained by the Servicer. The Servicer must pay all expenses incurred by it in connection with its activities under this Agreement (including payment of all other fees and expenses not expressly stated under this Agreement to be for the account of another person and any fees payable to the Custodian) and shall not be entitled to reimbursement under this Agreement except as specifically provided in this Agreement. Liquidation Expenses are reimbursable to the Servicer from related Liquidation Proceeds.

Section 3.09   *Annual Statement as to Compliance.*

(a)      The Servicer will deliver to the Indenture Trustee, the Note Insurer, and the Rating Agencies, by the date in each year specified in the Adoption Annex, beginning on the date specified in the Adoption Annex, an Officer's Certificate stating that (i) a review of the activities of the Servicer during the preceding fiscal year (or the applicable shorter period for the first report) and of its performance under this Agreement has been made under the officer's supervision and (ii) to the best of the officer's knowledge, based on the review, the Servicer has fulfilled all of its material obligations under this Agreement throughout the fiscal year, or, if

25

NY1 5998524v.11

CONFIDENTIAL

there has been a default in the fulfillment of those obligations, specifying each default known to the officer and its nature and status.

(b)    Within five Business Days after obtaining knowledge of it, the Servicer shall notify the Indenture Trustee, the Note Insurer, and each of the Rating Agencies of any event that with the giving of notice or the lapse of time would become an Event of Servicing Termination by delivering an Officer's Certificate describing the event.

Section 3.10    *Annual Servicing Report.*

By the date in each year specified in the Adoption Annex, beginning on the date specified in the Adoption Annex, the Servicer, at its expense, shall cause a firm of nationally recognized independent public accountants (who may also render other services to the Servicer) to furnish a report using generally accepted accounting principles to the Indenture Trustee, the Note Insurer, and each Rating Agency to the effect that the firm has examined certain documents and records relating to the servicing of mortgage loans during the most recent fiscal year then ended under sale and servicing agreements or pooling and servicing agreements (substantially similar to this Agreement, including this Agreement), that the examination was conducted substantially in compliance with the Uniform Single Attestation Program for Mortgage Bankers, and that the examination has disclosed no items of noncompliance with this Agreement that, in the opinion of the firm, are material, except for the items of noncompliance described in the report.

Section 3.11    *Access to Certain Documentation and Information Regarding the Mortgage Loans.*

(a)    The Servicer shall provide to the Indenture Trustee, the Note Insurer, the Office of Thrift Supervision, successor to the Federal Home Loan Bank Board, the FDIC, and the supervisory agents and examiners of the Office of Thrift Supervision access to the documentation regarding the Mortgage Loans required by applicable regulations of the Office of Thrift Supervision and the FDIC (acting as operator of the Savings Association Insurance Fund or the Bank Insurance Fund). The Servicer will provide access without charge but only after reasonable notice and during normal business hours at the offices of the Servicer. Nothing in this Section shall derogate from the obligation of the Servicer to observe any applicable law prohibiting disclosure of information regarding the borrowers and the failure of the Servicer to provide access as provided in this Section as a result of this obligation shall not constitute a breach of this Section.

(b)    The Servicer shall supply the information needed to make required payments and to furnish required reports to Noteholders and to make any claim under the Policy, in the form the Indenture Trustee reasonably requests, to the Indenture Trustee and any Paying Agent by the start of the Determination Date preceding the related Payment Date.

(c)    The Servicer covenants that it will fully furnish, in accordance with the Fair Credit Reporting Act and its implementing regulations, accurate and complete information (i.e., favorable and unfavorable) on its credit files for the related borrower for each Mortgage Loan to Equifax, Experian, and Trans Union Credit Information Company on a monthly basis.

26

NY1 5998524v.11

                                        AGM00008524

Section 3.12   *Maintenance of Certain Servicing Insurance Policies.*

The Servicer shall during the term of its service as servicer maintain in force (i) policies of insurance covering errors and omissions in the performance of its obligations as servicer under this Agreement and (ii) a fidelity bond covering its officers, employees, or agents. Each policy and bond together shall comply with the requirements from time to time of Fannie Mae for persons performing servicing for mortgage loans purchased by Fannie Mae.

Section 3.13   *No Liability for Taxes.*

The Servicer shall not be liable for any liabilities, costs, or expenses of the Issuer, the Noteholders, the Transferor, or the Note Owners arising under any tax law, including federal, state, or local income and franchise or excise taxes or any other tax imposed on or measured by income (or any interest or penalty with respect to any tax or arising from a failure to comply with any tax requirement).

Section 3.14   *Information Required by the Internal Revenue Service Generally and Reports of Foreclosures and Abandonments of Mortgaged Property.*

Except as otherwise provided in Section 4.04, the Servicer shall prepare and deliver all federal and state information tax returns when and as required by all applicable state and federal income tax laws. In particular, with respect to the requirement under Section 6050J of the Code for reports of foreclosures and abandonments of any mortgaged property, the Servicer shall file reports relating to each instance occurring during the previous calendar year in which the Servicer (i) on behalf of the Indenture Trustee acquires an interest in any Mortgaged Property through foreclosure or other comparable conversion in full or partial satisfaction of a Mortgage Loan, or (ii) knows or has reason to know that any Mortgaged Property has been abandoned. The reports from the Servicer shall be in form, substance, and timing sufficient to meet the reporting requirements imposed by Section 6050J of the Code.

Section 3.15   *Application of Article 6 of the Indenture to the Auction Administrator.*

The Indenture Trustee shall act as the Auction Administrator with regard to the auction activities described in Section 7.01(d) herein and Section 10.04 of the Indenture. To the extent applicable, the defenses awarded to, and the rights of, the Indenture Trustee pursuant to Sections 6.01, 6.03, 6.04, 6.05 and 6.06 of the Indenture shall inure to the benefit of the Auction Administrator acting pursuant to this Agreement.

27

CONFIDENTIAL

ARTICLE IV

SERVICING CERTIFICATE

Section 4.01    Servicing Certificate.

Not later than each Determination Date, the Servicer shall deliver (a) to the Indenture Trustee, an aggregate report setting forth the information below in sufficient detail to permit the Indenture Trustee to prepare the statement for Noteholders required pursuant to Section 4.04 and (b) to the Indenture Trustee, the Owner Trustee, the Seller, the Depositor, the Paying Agent, the Note Insurer, and each Rating Agency a Servicing Certificate (in written form or the form of computer readable media or such other form as may be agreed to by the Indenture Trustee and the Servicer), together with an Officer's Certificate to the effect that the Servicing Certificate is correct in all material respects, stating the related Collection Period, Payment Date, the series number of the Notes, the date of this Agreement and

| | |
|---|---|
| (i) | the aggregate amount of Collections received on the Mortgage Loans by the Determination Date for the related Collection Period; |
| (ii) | the aggregate amount of (a) Interest Collections for the related Collection Period and (b) Principal Collections for the related Collection Period; |
| (iii) | any accrued Servicing Fees for the Mortgage Loans for previous Collection Periods and the Servicing Fee for the related Collection Period; |
| (iv) | the Liquidation Loss Amount on the Mortgage Loans for the related Collection Period to be allocated to the Notes (the Investor Loss Amount) and to the Additional Balance Increase Amount; |
| (v) | the Loan Pool Balance as of the end of the preceding Collection Period and as of the end of the second preceding Collection Period; |
| (vi) | the Additional Balance Increase Amount as of the end of the preceding Collection Period; |
| (vii) | the aggregate Asset Balances of all Mortgage Loans which became Defective Mortgage Loans during the preceding Collection Period; |
| (viii) | the aggregate amount of Additional Balances created on the Mortgage Loans during the previous Collection Period; |
| (ix) | the number and aggregate Asset Balances of Mortgage Loans (x) as to which the Minimum Monthly Payment is delinquent for 30-59 days, 60-89 days, 90-180, and 180 or more days, respectively, (y) that have become REO, and (z) that are in foreclosure or subject to bankruptcy proceedings stated separately, in each case as of the end of the preceding Collection Period; |
| (x) | whether a Managed Amortization Event or a Rapid Amortization Event has occurred since the prior Determination Date, specifying the |

28

NY1 5998524v.11

CONFIDENTIAL

Managed Amortization Event or the Rapid Amortization Event if one has occurred;

(xi)  whether an Event of Servicing Termination has occurred since the prior Determination Date, specifying the Event of Servicing Termination if one has occurred;

(xii)  the amount to be distributed on the Mortgage Loans to the Transferor pursuant to Section 8.03(a)(1)(B)(ii), (F) and (I), Section 8.03(a)(2)(B)(ii), (D), (G) and (J), or Section 8.03(a)(3)(B)(ii), (F) and (I) of the Indenture, as applicable, stated separately;

(xiii)  the amount distributed from the Funding Account during the related Collection Period pursuant to Sections 8.02(b)(i), (b)(ii) and (b)(iii) of the Indenture;

(xiv)  the Net WAC Rate for the related Collection Period and the weighted average Loan Rate for the Mortgage Loans;

(xv)  the expected amount of any Servicer Advances included in the distribution on the related Payment Date and the aggregate expected amount of Servicer Advances outstanding on the Mortgage Loans as of the close of business on the related Payment Date;

(xvi)  the book value (within the meaning of 12 C.F.R. § 571.13 or comparable provision) of any real estate acquired through foreclosure or grant of a deed in lieu of foreclosure for the Mortgage Loans;

(xvii)  the number and principal balances of any Mortgage Loans transferred to the Transferor pursuant to Sections 2.04 and 2.06;

(xviii)  whether a Subsequent Transfer Date has occurred since the immediately preceding Payment Date;

(xix)  the amounts paid to the Servicer pursuant to Section 3.08;

(xx)  the amount of the aggregate of unreimbursed Liquidation Loss Amount allocated to the Notes (Investor Loss Amount) after giving effect to the payment;

(xxi)  the amount of Relief Act Shortfalls for the payment date;

(xxii)  the amount withdrawn from the Custodial Account in the related Collection Period to pay for Additional Balances;

(xxiii)  the amount of Principal Collections that were applied to purchase Additional Mortgage Loans or fund Additional Balances during the related Collection Period; and

(xxiv)  the amount of any Transfer Deposit Amount paid by the Seller or the Depositor pursuant to Section 2.07.

The Indenture Trustee and the Owner Trustee shall conclusively rely on the information in a Servicing Certificate for purposes of making distributions pursuant to Section 8.03 of the

NY1 5998524v.11

CONFIDENTIAL

AGM00008527

Indenture or distributions on the Transferor Certificates and for creating the Monthly Statements pursuant to Section 4.04 of this Agreement, shall have no duty to inquire into this information, and shall have no liability in so relying. The format and content of the Servicing Certificate may be modified by agreement among the Servicer, the Indenture Trustee, and the Note Insurer. The Servicer shall give notice of any changes to the Rating Agencies.

    Section 4.02    *Acknowledgement and Cooperation*.

    The Depositor, the Servicer, and the Indenture Trustee acknowledge that without the need for any further action on the part of the Note Insurer, the Depositor, the Servicer, the Indenture Trustee, or the Note Registrar (a) to the extent the Note Insurer makes payments, directly or indirectly, on account of principal of or interest or other amounts on any Notes to the Holders of the Notes, the Note Insurer will be fully subrogated to the rights of these Holders to receive the principal and interest from the Issuer and (b) the Note Insurer shall be paid the principal and interest or other amounts but only from the sources and in the manner provided in this Agreement for the payment of the principal and interest or other amounts. The Indenture Trustee and the Servicer shall cooperate in all respects with any reasonable request by the Note Insurer for action to preserve or enforce the Note Insurer's rights or interests under this Agreement and the Indenture without limiting the rights or affecting the interests of the Holders as otherwise stated in this Agreement and the Indenture.

    Section 4.03    *Optional Advances of the Servicer*.

    The Servicer, in its sole discretion, may advance the interest component of any delinquent Minimum Monthly Payment (or any portion of it) by depositing the amount into the Custodial Account by the related Determination Date.

    Section 4.04    *Statements to Noteholders*.

    Based upon the receipt of the Servicing Certificate delivered to the Indenture Trustee pursuant to Section 4.01, the Indenture Trustee shall prepare a statement (the "*Monthly Statement*") for each Payment Date with the following information with respect the Mortgage Loans:

|       |       |
|-------|-------|
| (i)   | the related Investor Allocation Percentage for the Payment Date; |
| (ii)  | the aggregate amount to be paid to the Noteholders; |
| (iii) | the amount of Note Interest in the payment related to the Notes and the Note Rate for the related Interest Period; |
| (iv)  | the Investor Interest Collections and the Net Principal Collections, for the Payment Date; |
| (v)   | the amount of the shortfall in payment of Note Interest due on the Notes caused due to insufficient Investor Interest Collections; |
| (vi)  | the Unpaid Investor Interest Shortfall of the Notes and the amount of interest on the shortfall at the Note Rate (separately stated) to be distributed on the Payment Date; |

NY1 5998524v.11

CONFIDENTIAL

AGM00008528

(vii)   the remaining Unpaid Investor Interest Shortfall of the Notes after the distribution on the Payment Date;

(viii)  the amount of any Unpaid Investor Interest Shortfall included in the payment;

(ix)    the amount of principal in the payment, separately stating its components;

(x)     the amount of the aggregate of unreimbursed Liquidation Loss Amount allocated to the investor interest after giving effect to the payment;

(xi)    the amount of the reimbursement of previous related Investor Loss Amounts in the payment;

(xii)   the amount of any Basis Risk Carryforward in the payment;

(xiii)  the amount of the remaining Basis Risk Carryforward after giving effect to the payment;

(xiv)   the amount of Basis Risk Shortfall for the Payment Date;

(xv)    the Servicing Fee for the Payment Date;

(xvi)   the Note Principal Balance and the factor to seven decimal places obtained by dividing the Note Principal Balance for the Payment Date by the Original Note Principal Balance after giving effect to the payment;

(xvii)  the Loan Pool Balance as of the end of the preceding Collection Period separately stating the amount on deposit in the Funding Account;

(xviii) any amounts drawn under the Policy for the Notes;

(xix)   the number and aggregate Asset Balances of Mortgage Loans as to which the Minimum Monthly Payment is delinquent for 30-59 days, 60-89 days, 90-180, and 180 or more days, respectively, as of the end of the preceding Collection Period;

(xx)    the book value (within the meaning of 12 C.F.R. § 571.13 or comparable provision) of any real estate acquired through foreclosure or grant of a deed in lieu of foreclosure for the Mortgage Loans;

(xxi)   the amount of any Servicer Advances included in the payment on the Payment Date and the aggregate amount of Servicer Advances outstanding as of the close of business on the Payment Date;

(xxii)  the number and Asset Balances of any Mortgage Loans retransferred to the Transferor pursuant to each of Section 2.04, Section 2.06 and Section 2.07;

(xxiii) the Transferor Interest Collections;

31

CONFIDENTIAL

AGM00008529

(xxiv)   the amount of Overcollateralization Release Amount excluded from the payment;

(xxv)   the Overcollateralization Amount for the Payment Date;

(xxvi)   the Overcollateralization Target Amount for that Payment Date

(xxvii)   the excess of the Overcollateralization Target Amount over the Overcollateralization Amount, and the amount of Investor Interest Collections on that Payment Date that will be distributed in reduction of that excess;

(xxviii)   the portion of Principal Collections for the related Collection Period in excess of the Principal Distribution Amount for the Collection Period;

(xxix)   the aggregate Asset Balances of any Additional Mortgage Loans acquired by the Issuer in the related Collection Period, separately stating which amount were applied for such purpose from (i) funds in the Funding Accounts or (ii) fund in, or funds that if not for the acquisition would have been deposited in, the Custodial Account;

(xxx)   amount to be deposited in the Payment Date in the Funding Account, separately stating their source (Interest Collections or Principal Collections);

(xxxi)   amounts of Additional Balance Increase Amount paid during the Collection Period from funds in the Funding Account and on the Payment Date from funds applied pursuant to Section 8.03 of the Indenture,

(xxxii)   the amount to be deposited in the Funding Account on that Payment Date during the Revolving Period, separately stating its sources;

(xxxiii)   the amount of funds remaining in the Funding Account (after taking into account any purchases of Additional Balances and any acquisition of Additional Mortgage Loans);

(xxxiv)   whether the Stepdown Cumulative Loss Test is satisfied on such Payment Date;

(xxxv)   whether the Stepdown Date has occurred since the prior Determination Date and whether such Payment Date is the Stepdown Date;

(xxxvi)   whether a Cut-off Date has occurred since the prior Determination Date;

(xxxvii)   the Three Month Rolling Average of the Excess Spread Rate;

(xxxviii)   certain amounts to be distributed to the Note Insurer pursuant to the payment waterfall; and

(xxxix)   the amount of any draw under the Policy for such Payment Date.

32

NYI 5998524v.11

The amounts furnished pursuant to clauses (ii), (iii) (for Note Interest), (iv), (v), (vi), (vii), (viii) and (ix) above shall be expressed as a dollar amount per $1,000 increment of Notes.

If the Monthly Statement is not accessible to any of the Noteholders, the Servicer, the Note Insurer, or either Rating Agency on the Indenture Trustee's internet website, the Indenture Trustee shall forward a hard copy of it to each Noteholder, the Servicer, the Note Insurer, and each Rating Agency immediately after the Indenture Trustee becomes aware that the Monthly Statement is not accessible to any of them via the Indenture Trustee's internet website. The address of the Indenture Trustee's internet website where the Monthly Statement will be accessible is https://www.jpmorgan.com/sfr. Assistance in using, the Indenture Trustee's internet website may be obtained by calling the Indenture Trustee's customer service desk at (877) 722-1095. The Indenture Trustee shall notify each Noteholder, the Servicer, the Note Insurer, and each Rating Agency in writing of any change in the address or means of access to the internet website where the Monthly Statement is accessible.

Within 60 days after the end of each calendar year, the Servicer shall prepare and forward to the Indenture Trustee the information in clauses (iii) and (vi) above aggregated for the calendar year. This requirement of the Servicer shall be satisfied if substantially comparable information is provided by the Servicer pursuant to any requirements of the Code.

The Indenture Trustee shall prepare (in a manner consistent with the treatment of the Notes as indebtedness) Internal Revenue Service Form 1099 (or any successor form) and any other tax forms required to be filed or furnished to Noteholders with respect to payments by the Indenture Trustee (or the Paying Agent) on the Notes and shall file and distribute such forms as required by law.

## ARTICLE V

THE SERVICER, THE SELLER, THE SPONSOR, AND THE DEPOSITOR

Section 5.01    *Liability of the Seller, the Servicer, the Sponsor, and the Depositor.*

The Seller, the Sponsor, the Depositor, and the Servicer shall be liable only for their express agreements under this Agreement.

Section 5.02    *Merger or Consolidation of, or Assumption of the Obligations of, the Sponsor, the Servicer or the Depositor.*

Any corporation into which the Sponsor, the Servicer or the Depositor may be merged or consolidated, or any corporation resulting from any merger, conversion, or consolidation to which the Sponsor, the Servicer or the Depositor is a party, or any corporation succeeding to the business of the Sponsor, the Servicer or the Depositor, shall be the successor of the Sponsor, the Servicer or the Depositor, as the case may be, under this Agreement, without the execution or filing of any paper or any further act on the part of any of the parties to this Agreement, notwithstanding anything in this Agreement to the contrary.

33

NY1 5998524v.11

AGM00008531

Section 5.03   *Limitation on Liability of the Servicer and Others.*

Neither the Servicer nor any of its directors, officers, employees, or agents is liable to the Issuer, the Owner Trustee, the Transferor, or the Noteholders for the Servicer's taking any action or refraining from taking any action in good faith pursuant to this Agreement, or for errors in judgment. This provision shall not protect the Servicer or any of its directors, officers, employees, or agents against any liability that would otherwise be imposed for misfeasance, bad faith, or gross negligence in the performance of the duties of the Servicer or for reckless disregard of the obligations of the Servicer. The Servicer and any of its directors, officers, employees, or agents may rely in good faith on any document of any kind *prima facie* properly executed and submitted by any person about anything arising under this Agreement.

The Servicer and each of its directors, officers, employees, and agents shall be indemnified by the Issuer and held harmless against any loss, liability, or expense incurred in connection with any legal action relating to this Agreement, the Transferor Certificates, or the Notes, other than any loss, liability, or expense related to any specific Mortgage Loan that is otherwise not reimbursable pursuant to this Agreement and any loss, liability, or expense incurred due to its willful misfeasance, bad faith, or gross negligence in the performance of duties under this Agreement or due to its reckless disregard of its obligations under this Agreement.

The Servicer need not appear in, prosecute, or defend any legal action that is not incidental to its duties to service the Mortgage Loans in accordance with this Agreement, and that in its opinion may involve it in any expense or liability. The Servicer may in its sole discretion undertake any action that it deems appropriate with respect to this Agreement and the interests of the Noteholders. If so, the reasonable legal expenses and costs of the action and any resulting liability shall be expenses, costs, and liabilities of the Issuer, and the Servicer shall only be entitled to be reimbursed pursuant to Sections 8.03(a)(i)(A) and (a)(ii)(A) of the Indenture. The Servicer's right to indemnity or reimbursement pursuant to this Section shall survive any resignation or termination of the Servicer pursuant to Section 5.04 or 6.01 with respect to any losses, expenses, costs, or liabilities arising before its resignation or termination (or arising from events that occurred before its resignation or termination).

Section 5.04   *Servicer Not to Resign.*

Subject to Section 5.02, the Servicer shall not resign as Servicer under this Agreement except:

(i)   if the performance of its obligations under this Agreement are no longer permissible under applicable law or due to applicable law are in material conflict with any other activities carried on by it or its subsidiaries or Affiliates that are of a type and nature carried on by the Servicer or its subsidiaries or Affiliates at the date of this Agreement; or

(ii)   if,

34

CONFIDENTIAL

(a)    the Servicer has proposed a successor Servicer to the Indenture Trustee and the proposed successor Servicer is reasonably acceptable to the Indenture Trustee;

(b)    each Rating Agency has delivered a letter to the Indenture Trustee before the appointment of the successor Servicer stating that the proposed appointment of the successor Servicer as Servicer under this Agreement will not result in the reduction or withdrawal of the then current rating of the Notes without regard to the Policy; and

(c)    the proposed successor Servicer is reasonably acceptable to the Note Insurer in its sole discretion, as evidenced by a letter to the Indenture Trustee.

No resignation by the Servicer shall become effective until a successor Servicer designated by the Servicer has assumed the Servicer's obligations under this Agreement or the Indenture Trustee has designated a successor Servicer in accordance with Section 6.02. Any resignation shall not relieve the Servicer of responsibility for any of the obligations specified in Sections 6.01 and 6.02 as obligations that survive the resignation or termination of the Servicer. Any determination permitting the resignation of the Servicer pursuant to clause (i) above shall be evidenced by an Opinion of Counsel to that effect delivered to the Indenture Trustee and the Note Insurer. The Servicer shall have no claim (whether by subrogation or otherwise) or other action against the Transferor, any Noteholder, or the Note Insurer for any amounts paid by the Servicer pursuant to any provision of this Agreement.

Section 5.05    *Delegation of Duties.*

In the ordinary course of business, the Servicer may delegate any of its duties under this Agreement at any time to any person who agrees to act in accordance with standards comparable to those with which the Servicer complies pursuant to Section 3.01, including any of its Affiliates or any subservicer referred to in Section 3.01. This delegation shall not relieve the Servicer of its obligations under this Agreement and shall not constitute a resignation within the meaning of Section 5.04.

Section 5.06    *Indemnification by the Servicer.*

The Servicer shall indemnify the Issuer, the Owner Trustee, the Note Insurer and the Indenture Trustee against any loss, liability, expense, damage, or injury suffered or sustained due to the Servicer's actions or omissions in servicing or administering the Mortgage Loans that are not in accordance with this Agreement, including any judgment, award, settlement, reasonable attorneys' fees, and other costs or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim. This indemnification is not payable from the assets of the Issuer. This indemnity shall run directly to and be enforceable by an injured party subject to any applicable limitations.

The Indenture Trustee and any director, officer, employee, or agent of the Indenture Trustee shall be indemnified by the Servicer and held harmless against any loss, liability or expense, including any judgment, award, settlement, reasonable attorneys' fees, and other costs

35

CONFIDENTIAL

or expenses incurred in connection with the defense of any actual or threatened action, proceeding, or claim, (i) incurred in connection with any legal action relating to this Agreement, the Indenture, the Custodial Agreement, the Administration Agreement, the Notes, or the Transferor Certificates, or in connection with the performance of any of the Indenture Trustee's duties thereunder, other than any loss, liability or expense incurred by reason of willful misfeasance, bad faith or gross negligence in the performance of any of the Indenture Trustee's duties under this Agreement, the Indenture, the Custodial Agreement or any other Transaction Documents to which the Indenture Trustee is a party, or by reason of reckless disregard of the Indenture Trustee's obligations and duties under this Agreement.

The indemnity provisions of this Section shall survive the termination of this Agreement or the resignation or removal of the Indenture Trustee under the Indenture.

## ARTICLE VI

### SERVICING TERMINATION

Section 6.01    *Events of Servicing Termination*.

If any one of the following events ("*Events of Servicing Termination*") shall occur and be continuing:

> (i)    any failure by the Servicer to deposit in the Custodial Account any deposit required to be made under this Agreement or to remit to the Indenture Trustee amounts required to be deposited to the Payment Account that continues unremedied either beyond the relevant Payment Date or for three Business Days after the date when notice of the failure has been given to the Servicer by the Indenture Trustee or to the Servicer and the Indenture Trustee by the Note Insurer or Holders of Notes representing not less than 25% of the Outstanding Amount of the Notes; or

> (ii)    failure by the Servicer duly to observe or perform in any material respect any other covenants or agreements of the Servicer in the Notes or in this Agreement that materially and adversely affects the interests of the Noteholders or the Note Insurer and continues unremedied for 60 days after the date on which notice of the failure, requiring it to be remedied, and stating that the notice is a "Notice of Default" under this Agreement, has been given to the Servicer by the Indenture Trustee or to the Servicer and the Indenture Trustee by the Note Insurer or the Holders of Notes representing not less than 25% of the Outstanding Amount of the Notes; or

> (iii)    an Insolvency Event occurs with respect to the Servicer; or

> (iv)    The Servicer Termination Test has been met,

then, until the Event of Servicing Termination has been remedied by the Servicer, either the Indenture Trustee (with the consent of the Note Insurer), the Note Insurer, or the Holders of Notes representing not less than 51% of the Outstanding Amount of the Notes with the consent of the Note Insurer by notice then given to the Servicer (and to the Indenture Trustee if given by

36

NY1 5998524v.11

AGM00008534

the Note Insurer or the Holders of Notes) may terminate all of the rights and obligations of the Servicer as servicer under this Agreement. This notice to the Servicer shall also be given to each Rating Agency and the Note Insurer.

From the receipt by the Servicer of the notice, all the rights and obligations of the Servicer under this Agreement, whether with respect to the Notes or the Mortgage Loans or otherwise, shall pass to and be vested in the Indenture Trustee pursuant to this Section; and the Indenture Trustee is authorized to execute and deliver, on behalf of the Servicer, as attorney-in-fact or otherwise, any documents, and to do anything else appropriate to effect the purposes of the notice of termination, whether to complete the transfer and endorsement of each Mortgage Loan and related documents, or otherwise. The Servicer agrees to cooperate with the Indenture Trustee in effecting the termination of the rights and obligations of the Servicer under this Agreement, including the transfer to the Indenture Trustee for the administration by it of all cash amounts that are held by the Servicer and are to be deposited by it in the Custodial Account, or that have been deposited by the Servicer in the Custodial Account or are subsequently received by the Servicer with respect to the Mortgage Loans. All reasonable costs and expenses (including attorneys' fees) incurred in connection with transferring the Mortgage Files to the successor Servicer and amending this Agreement to reflect the succession as Servicer pursuant to this Section shall be paid by the predecessor Servicer (or if the predecessor Servicer is the Indenture Trustee, the initial Servicer) on presentation of reasonable documentation of the costs and expenses.

Notwithstanding the foregoing, a delay in or failure of performance under Section 6.01(i) for a period of three or more Business Days or under Section 6.01(ii) for a period of 60 or more days, shall not constitute an Event of Servicing Termination if the delay or failure could not be prevented by the exercise of reasonable diligence by the Servicer and the delay or failure was caused by an act of God or the public enemy, acts of declared or undeclared war, public disorder, rebellion or sabotage, epidemics, landslides, lightning, fire, hurricanes, earthquakes, floods, or similar causes. The preceding sentence shall not relieve the Servicer from using its best efforts to perform its obligations in a timely manner in accordance with the terms of this Agreement, and the Servicer shall provide the Indenture Trustee, the Depositor, the Transferor, the Note Insurer, and the Noteholders with an Officers' Certificate giving prompt notice of its failure or delay, together with a description of its efforts to perform its obligations. The Servicer shall immediately notify the Indenture Trustee and the Note Insurer of any Events of Servicing Termination.

Section 6.02   *Indenture Trustee to Act; Appointment of Successor*.

(a)      From the time the Servicer receives a notice of termination pursuant to Section 6.01 or resigns pursuant to Section 5.04, the Indenture Trustee shall be the successor in all respects to the Servicer in its capacity as Servicer under this Agreement and the transactions contemplated by this Agreement and shall be subject to all the obligations of the Servicer under this Agreement except (i) the obligation to repurchase or substitute for any Mortgage Loan, (ii) with respect to any representation or warranty of the Servicer, or (iii) for any act or omission of either a predecessor or successor Servicer other than the Indenture Trustee. As its compensation under this Agreement, the Indenture Trustee shall be entitled to the compensation the Servicer

37

NY1 5998524v.11

CONFIDENTIAL

AGM00008535

would have been entitled to receive from the Servicer under this Agreement if no notice of termination had been given. In addition, the Indenture Trustee will be entitled to compensation with respect to its expenses in connection with conversion of certain information, documents, and record keeping, as provided in Section 6.01.

Notwithstanding the above, (i) if the Indenture Trustee is unwilling to act as successor Servicer, or (ii) if the Indenture Trustee is legally unable to so act, the Indenture Trustee may (in the situation described in clause (i)) or shall (in the situation described in clause (ii)) appoint, or petition a court of competent jurisdiction to appoint, any established housing and home finance institution, bank, or other mortgage loan or home equity loan servicer having a net worth of not less than $15,000,000 as the successor to the Servicer under this Agreement to assume of any obligations of the Servicer under this Agreement. The successor Servicer must be acceptable to the Note Insurer in its sole discretion, as evidenced by the Note Insurer's prior consent. The appointment of the successor Servicer must not result in the qualification, reduction, or withdrawal of the ratings assigned to the Notes by the Rating Agencies without regard to the Policy.

Pending appointment of a successor to the Servicer, unless the Indenture Trustee is prohibited by law from so acting, the Indenture Trustee shall act as Servicer. In connection with this appointment and assumption, the successor shall be entitled to receive compensation out of payments on Mortgage Loans in an amount equal to the compensation that the Servicer would otherwise have received pursuant to Section 3.08 (or any lesser compensation the Indenture Trustee and the successor agree to). The Indenture Trustee and the successor shall take any action, consistent with this Agreement, necessary to effectuate the succession.

(b)      The appointment of a successor Servicer shall not affect any liability of the predecessor Servicer that may have arisen under this Agreement before its termination as Servicer (including any deductible under an insurance policy pursuant to Section 3.04), nor shall any successor Servicer be liable for any acts or omissions of the predecessor Servicer or for any breach by the predecessor Servicer of any of its representations or warranties in this Agreement. Except for any compensation agreement with the Indenture Trustee, any successor Servicer shall be subject to all the terms of this Agreement from the time that it accepts its appointment to the same extent as if it were originally named as Servicer.

Section 6.03    *Notification to Noteholders and the Transferor*.

Upon any termination or appointment of a successor to the Servicer pursuant to this Article or Section 5.04, the Indenture Trustee shall give prompt notice of it to the Noteholders at their respective addresses appearing in the Note Register, the Transferor, the Note Insurer, and each Rating Agency.

NY1 5998524v.11

CONFIDENTIAL                                                    AGM00008536

ARTICLE VII

TERMINATION

Section 7.01    *Termination.*

(a)    The respective obligations and responsibilities of the Seller, the Sponsor, the Servicer, the Depositor, the Issuer, and the Indenture Trustee created by this Agreement (other than the obligation of the Servicer to send certain notices) shall terminate on the earlier of:

(i)    the transfer of all the Mortgage Loans pursuant to Section 7.01(b) and 7.01(d);

(ii)    the termination of the Trust Agreement or the Indenture; or

(iii)    the final payment or other liquidation of the last Mortgage Loan owned by the Issuer or the disposition of all property acquired in foreclosure or by deed in lieu of foreclosure of any Mortgage Loan.

Upon termination in accordance with this Section, the Indenture Trustee shall execute any documents and instruments of transfer presented by the Transferor, in each case without recourse, representation, or warranty, and take any other actions the Transferor reasonably requests to effect the transfer of the Mortgage Loans to the Transferor. Notwithstanding the termination of this Agreement, the Servicer shall comply with this Agreement in winding up activities under this Agreement after termination if necessary.

(b)    The Servicer, or if the Servicer fails to do so, the Note Insurer, may effect the transfer of all the Mortgage Loans at their termination purchase price on any Payment Date on which the aggregate Note Principal Balance is less than 10% of the aggregate Original Note Principal Balance and require the Issuer to redeem the Notes pursuant to Section 10.01 of the Indenture with the proceeds. The termination purchase price is the sum of:

(i)    the Note Principal Balance on the applicable date of purchase;

(ii)    accrued aggregate Note Interest through the day preceding the final Payment Date; and

(iii)    interest accrued on any aggregate Unpaid Investor Interest Shortfall, to the extent legally permissible.

*provided, however* that the Servicer may not effect such transfer and redemption of the Mortgage Loans without the consent of the Note Insurer if the exercise of such right would cause a draw on the Policy, or if any amounts due to the Note Insurer would remain unreimbursed on the Final Payment Date.

(c)    The Servicer shall notify the Note Insurer, the Issuer, and the Indenture Trustee of any election to effect the transfer of the Mortgage Loans pursuant to Section 7.01(b) no later than the first day of the month before the month in which the transfer is to occur. The proceeds from the purchase of the Mortgage Loans, for purposes of payments on the Notes, shall be considered to have been received in the Collection Period before the Collection Period in which the Payment Date on which the purchase takes place occurs.

39

NYI 5998524v.11

CONFIDENTIAL

AGM00008537

(d)     Within 15 days after the tenth anniversary of the Closing Date, the Auction Administrator will conduct an auction of the Mortgage Loans remaining in the estate of the Issuer to third party investors. The Seller and the Sponsor will not bid or otherwise participate in such auction. The Auction Administrator will be permitted pursuant to the Indenture to hire an agent to conduct the auction or to advise it with respect to the administration of the auction. If a cash bid (net of expenses of sale) equal to at least the Minimum Auction Price is received or if the Note Insurer directs the Auction Administrator to accept the bid which, although the highest bid, is not equal to the Minimum Auction Price, (i) the Auction Administrator will instruct the Issuer to transfer the Mortgage Loans to the highest bidder, (ii) the Auction Administrator will deliver to the Indenture Trustee the proceeds of the auction for deposit into the Custodial Account, (iii) if necessary, the Note Insurer will deliver the amount of the shortfall between the highest bid received and the Minimum Auction Price in accordance with the terms of the Policy to the Indenture Trustee for deposit into the Custodial Account and (iv) the Indenture Trustee will pay to Noteholders the Note Principal Balance on the Payment Date related to the month of the auction. If a bid equal to at least the Minimum Auction Price is not received and the Note Insurer does not direct the Auction Administrator to accept a lower bid, the Auction Administrator will terminate the auction and the Note Insurer will have the option to purchase the Mortgage Loans or to direct the Auction Administrator to conduct another auction at any time before the payment date in June 2019. If the Note Insurer exercises its purchase option or if the Auction Administrator receives the Minimum Auction Price at a subsequent auction, the Indenture Trustee will pay Noteholders the Note Principal Balance on the Payment Date immediately following the purchase by the Note Insurer or the receipt of the Minimum Auction Price.

If the Mortgage Loans are not sold at auction and the Note Insurer does not exercise its option to purchase the Mortgage Loans prior to the Scheduled Final Payment Date, the Note Insurer will be required, in accordance with the Policy discussed below, to pay the outstanding Note Principal Balance of the Notes on the Scheduled Final Payment Date.

## ARTICLE VIII

### MISCELLANEOUS PROVISIONS

Section 8.01     *Amendment*.

This Agreement may be amended from time to time by the Seller, the Sponsor, the Servicer, the Depositor, the Owner Trustee, and the Indenture Trustee, if the Rating Agency Condition is satisfied. However, no amendment that significantly changes the permitted activities of the Issuer may be promulgated without the consent of a majority of the aggregate Outstanding Amount of the Notes. For this purpose no Notes owned by the Seller, the Sponsor or any of their affiliates may vote, nor shall their Notes be considered outstanding. This Agreement may also be amended from time to time by the Seller, the Sponsor, the Servicer, the Depositor, the Owner Trustee, and the Indenture Trustee, with the consent of the Note Insurer

40

NY1 5998524v.11

AGM00008538

and Holders of not less than 66²/₃% of the aggregate Outstanding Amount of the Notes. This Agreement may not be amended in a manner that would adversely affect the characterization of the Notes as indebtedness for tax purposes, cause the Noteholders to recognize taxable gain or loss or result in the Issuer being characterized as an association or publicly traded partnership taxable as a corporation or as a taxable mortgage pool.

The Indenture Trustee may enter into any amendment of this Agreement as to which the Rating Agency Condition is satisfied, and when so requested by an Issuer Request, the Indenture Trustee shall enter into any amendment of this Agreement:

    (i)    that does not impose further obligations or liabilities on the Indenture Trustee; and

    (ii)    as to which either the Rating Agency Condition is satisfied or Holders of not less than 66²/₃% of the aggregate Outstanding Amount of the Notes and the Note Insurer have consented.

Following the execution and delivery of any amendment to this Agreement or to the Policy to which the Note Insurer was required to consent, either the Transferor, if the Transferor requested the amendment, or the Servicer, if the Servicer requested the amendment, shall reimburse the Note Insurer for the reasonable out-of-pocket costs and expenses incurred by them in connection with the amendment.

Before the execution of the amendment, the party to this Agreement requesting the amendment shall notify each Rating Agency of the substance of the amendment. The Indenture Trustee shall deliver fully executed original counterparts of the instruments effecting the amendment to the Note Insurer.

Section 8.02     *Governing Law*.

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without reference to its provisions that would result in the application of the laws of another State.

Section 8.03     *Notices*.

All notices, demands, instructions, consents, and other communications required or permitted under this Agreement shall be in writing and signed by the party giving the same and shall be personally delivered or sent by first class or express mail (postage prepaid), national overnight courier service, or by facsimile transmission or other electronic communication device capable of transmitting or creating a written record (confirmed by first class mail) and shall be considered to be given for purposes of this Agreement on the day that the writing is delivered when personally delivered or sent by facsimile or overnight courier or three Business Days after it was sent to its intended recipient if sent by first class mail. A facsimile has been delivered when the sending machine issues an electronic confirmation of transmission. Unless otherwise specified in a notice sent or delivered in accordance with the provisions of this Section, notices, demands, instructions, consents, and other communications in writing shall be given to or made on the respective parties at their respective addresses indicated below:

41

CONFIDENTIAL

if to the Issuer at:

>Flagstar Home Equity Loan Trust 2006-2
>c/o Wilmington Trust Company, as Owner Trustee
>Rodney Square North
>1100 North Market Street
>Wilmington, Delaware 19890-0001
>Attention: Corporate Trust Administration
>Telecopy: (302) 636-4140

if to the Depositor at:

>Flagstar ABS, LLC
>c/o The Corporation Trust Company
>Corporation Trust Center
>1209 Orange Street
>Wilmington, Delaware  19801
>Telecopy:  (866) 372-8255

if to the Servicer at:

>Flagstar Bank, FSB
>5151 Corporate Drive
>Troy, Michigan  48098-2639
>Attention: Chief Legal Officer
>Telecopy: (866)-748-6978

if to the Sponsor at:

>Flagstar Bank, FSB
>5151 Corporate Drive
>Troy, Michigan  48098-2639
>Attention: Chief Legal Officer
>Telecopy: (866)-748-6978

if to the Indenture Trustee at:

>The Bank of New York Trust Company, N.A.
>2 North LaSalle Street, Suite 1020
>Chicago, Illinois 60602

if to the Custodian at:

>Flagstar Bank, FSB
>5151 Corporate Drive
>Troy, Michigan  48098-2639
>Attention: Chief Legal Officer
>Telecopy: (866)-748-6978

42

NY1 5998524v.11

CONFIDENTIAL

AGM00008540

if to the Note Insurer at:

> Financial Security Assurance Inc.
> 31 West 52nd Street
> New York, New York  10019
> Attention:  Transaction Oversight
> Re:  Flagstar Home Equity Loan Trust 2006-2
> Confirmation:  (212) 826-0100
> Telecopy Nos.:  (212) 339-3518, (212) 339-3529

if to Moody's at:

> Residential Loan Monitoring Group, 4th Floor
> 99 Church Street
> New York, New York 10007

and if to Standard & Poor's at:

> 55 Water Street
> New York, New York 10041

Whenever a notice or other communication to the Note Insurer refers to an Event of Servicing Termination or with respect to which failure on the part of the Note Insurer to respond would constitute consent or acceptance, then a copy of the notice or other communication shall also be sent to the attention of the General Counsel of the Note Insurer and shall be marked to indicate "URGENT MATERIAL ENCLOSED."

Section 8.04     *Severability of Provisions.*

Any provisions of this Agreement that are held invalid for any reason or unenforceable in any jurisdiction shall, as to that jurisdiction, be ineffective to the extent of the invalidity or unenforceability without invalidating the remaining provisions of this Agreement, and the prohibition or unenforceability in a jurisdiction shall not invalidate or render unenforceable that provision in any other jurisdiction.

Section 8.05     *Assignment.*

Except as provided in Sections 5.02 and 5.04, this Agreement may not be assigned by the Depositor or the Servicer without the prior consent of the Note Insurer.

Section 8.06     *Third-Party Beneficiaries.*

This Agreement will be binding on the parties to this Agreement, and inure to the benefit of the parties to this Agreement, the Noteholders, the Transferor, the Note Owners, the Owner Trustee, and the Note Insurer and their respective successors and permitted assigns. The Note Insurer is a third party beneficiary of this Agreement. No other person will have any rights under this Agreement.

43

CONFIDENTIAL

AGM00008541

Section 8.07    *Counterparts; Electronic Delivery.*

This Agreement may be executed in any number of copies, and by the different parties on the same or separate counterparts, each of which shall be considered to be an original instrument. Any signature page to this Agreement containing a manual signature may be delivered by facsimile transmission or other electronic communication device capable of transmitting or creating a printable written record, and when so delivered shall have the effect of delivery of an original manually signed signature page.

Section 8.08    *Effect of Headings and Table of Contents.*

The Article and Section headings in this Agreement and the Table of Contents are for convenience only and shall not affect the construction of this Agreement.

Section 8.09    *Limitation of Liability.*

It is expressly understood and agreed by the parties hereto that (a) this Agreement is executed and delivered by Wilmington Trust Company, not individually or personally but solely as trustee of the Issuer, in the exercise of the powers and authority conferred and vested in it, (b) each of the representations, undertakings and agreements herein made on the part of the property of the Issuer is made and intended not as personal representations, undertakings and agreements by Wilmington Trust Company but is made and intended for the purpose of binding only the Issuer, (c) nothing herein contained shall be construed as creating liability on Wilmington Trust Company, individually or personally, to perform any covenant either expressed or implied contained herein, all such liability, if any, being expressly waived by the parties hereto and by any Person claiming by, through or under the parties hereto and (d) under no circumstances shall Wilmington Trust Company be personally liable for the payment of any obligation, representation, warranty or covenant made or undertaken by the Issuer under this Agreement or any other related documents.

Section 8.10    *Obligations of the Sponsor.*

For the avoidance of doubt, the Sponsor will perform the obligations of the Seller under this Agreement in the event that the Seller fails to perform any of its obligations hereunder, without any requirement for receipt of prior notice by the Sponsor and within the time period specified herein as applicable to the Seller, and the Sponsor will not benefit from any cure period in addition to that specified herein with respect to the performance of the obligations of the Seller.

NY1 5998524v.11

CONFIDENTIAL                                    AGM00008542

Flagstar ABS, LLC
   Depositor


By: _____
      Name:
      Title:


FLAGSTAR BANK, FSB
   Sponsor


By: _____
      Name:
      Title:


FLAGSTAR BANK, FSB
   Servicer


By: _____
      Name:
      Title:


FLAGSTAR CAPITAL MARKETS CORPORATION
   Seller


By: _____
      Name:
      Title:


45

NY1 5998524v.11

CONFIDENTIAL

AGM00008543

THE BANK OF NEW YORK TRUST COMPANY,
    N.A.
    Indenture Trustee


By: _____
    Name:
    Title:


THE BANK OF NEW YORK TRUST COMPANY,
    N.A.
    Auction Administrator


By: _____
    Name:
    Title:


Flagstar HOME EQUITY LOAN TRUST 2006-2

BY: WILMINGTON TRUST COMPANY, not in its
    individual capacity but solely as Owner
    Trustee


By: _____
    Name:
    Title:

46

NY1 5998524v.11

AGM00008544

State of _____          )
                                 ) ss.:
County of _____         )


On the 21st day of December, 2006 before me, a notary public in and for the State of _____, personally appeared _____, known to me who, being by me duly sworn, did depose and say that he resides at _____, _____; that he is the _____of Flagstar ABS, LLC, a Delaware limited liability company, one of the parties that executed the foregoing instrument; that he signed his name thereto by order of the Board of Directors of said corporation.


_____
Notary Public

[NOT ARIAL STAMP]

47

NYI 5998524v.11

CONFIDENTIAL                                            AGM00008545

State of [_____]    )
                               ) ss.:
County of [_____]   )


On the 21st day of December, 2006 before me, a notary public in and for the State of _____, personally appeared _____, known to me who, being by me duly sworn, did depose and say that he resides at _____, _____; that he is the _____ of Flagstar Bank, FSB, a federal banking institution, one of the parties that executed the foregoing instrument; and that he signed his name thereto by order of the Board of Directors of said corporation.


_____
Notary Public

[NOTARY STAMP]

48

NY1 5998524v.11

State of [_____]        )
                                   ) ss.:
County of [_____]       )


On the 21st day of December, 2006 before me, a notary public in and for the State of
_____, personally appeared _____, known to me who, being by me duly
sworn, did depose and say that he resides at _____, _____; that he is the
_____ of The Bank of New York Trust Company, N.A., a national banking
association, one of the parties that executed the foregoing instrument; that he signed his name
thereto by order of the Board of Directors of said corporation.



_____
Notary Public

[NOTARY STAMP]

49

NY1 5998524v.11

CONFIDENTIAL

AGM00008547

State of [_____]          )
                                     ) ss.:
County of [_____]         )


      On the 21st day of December, 2006 before me, a notary public in and for the State of _____, personally appeared _____, known to me who, being by me duly sworn, did depose and say that she resides at _____, _____; that she is an _____ of Wilmington Trust Company, not in its individual capacity but in its capacity as Owner Trustee of Flagstar Home Equity Loan Trust, Series 2006-2, one of the parties that executed the foregoing instrument; that she signed her name thereto by order of the Board of Directors of said corporation.


                                _____

                                            Notary Public

                My Commission Expires _____

50

NY1 5998524v.11

CONFIDENTIAL

AGM00008548

EXHIBIT A

MORTGAGE LOAN SCHEDULE

[On File with the Indenture Trustee]

A-1

NY1 5998524v.11

CONFIDENTIAL

AGM00008549

EXHIBIT B

FORM OF LETTER OF REPRESENTATIONS

B-1

NY1 5998524v.11

CONFIDENTIAL

AGM00008550

EXHIBIT C

FORM OF REQUEST FOR RELEASE OF DOCUMENTS

[DATE]

The Bank of New York Trust Company, N.A.
2 North LaSalle Street, Suite 1020
Chicago, Illinois 60602

   Re: Flagstar Home Equity Loan Trust 2006-2
     Asset Backed Notes, Series 2006-2

Gentlemen:

   In connection with the administration of the Mortgage Loans held by you as Indenture Trustee under the Sale and Servicing Agreement, dated as of December 21, 2006, among Flagstar ABS, LLC as Depositor, Flagstar Bank, FSB, as Servicer and Sponsor, Flagstar Home Equity Loan Trust 2006-2 and you, as Indenture Trustee and Auction Administrator (the "Agreement"), we hereby request a release of the Mortgage File held by you as Indenture Trustee with respect to the following described Mortgage Loan for the reason indicated below. Loan No.:

Reason for requesting file:

| | | |
|---|---|---|
| _____ | 1. | Mortgage Loan paid in full. (The Servicer hereby certifies that all amounts received in connection with the payment in full of the Mortgage Loan which are required to be deposited in the Custodial Account pursuant to Section 3.02 of the Agreement have been so deposited). |
| _____ | 2. | Retransfer of Mortgage Loan. (The Servicer hereby certifies that the Transfer Deposit Amount has been deposited in the Custodial Account pursuant to the Agreement). |
| _____ | 3. | The Mortgage Loan is being foreclosed. |
| _____ | 4. | The Mortgage Loan is being re-financed by another depository institution. (The Servicer hereby certifies that all amounts received in connection with the payment in full of the Mortgage Loan which are required to be deposited in the Custodial Account pursuant to Section 3.02 of the Agreement have been so deposited). |
| _____ | 5. | Other (Describe). |

   The undersigned acknowledges that the above Mortgage File will be held by the undersigned in accordance with the provisions of the Agreement and will promptly be returned to the Indenture Trustee when the need therefor by the Servicer no longer exists unless the Mortgage Loan has been liquidated or retransferred.

C-1

NY1 5998524v.11

AGM00008551

Capitalized terms used herein shall have the meanings ascribed to them in the Agreement.

FLAGSTAR BANK, FSB

By:_____

    Name:
    Title: Servicing Officer

C-2

NY1 5998524v.11

CONFIDENTIAL

AGM00008552

EXHIBIT **D**

[RESERVED]

D-1

NY1 5998524v.11

CONFIDENTIAL

EXHIBIT E

FORM OF SUBSEQUENT TRANSFER AGREEMENT

Pursuant to this Subsequent Transfer Agreement (the "*Agreement*"),  dated as of [  ] [ ], 200[ ] among Flagstar Capital Markets Corporation, as seller (the "*Seller*"), Flagstar ABS, LLC, as depositor (the "*Depositor*"), and Flagstar Home Equity Loan Trust 2006-2, as issuer (the "*Issuer*"), pursuant to the purchase agreement dated as of December 21, 2006 (the "*Purchase Agreement*"), among the Seller, as seller, the Depositor, as purchaser and Flagstar Bank, FSB, as sponsor (the "*Sponsor*"), and pursuant to the sale and servicing agreement dated as of December 21, 2006 (the "*Sale and Servicing Agreement*") among the Depositor, the Sponsor, as sponsor and servicer, the Seller, the Issuer and The Bank of New York Trust Company, N.A., as indenture trustee and auction administrator (the "*Indenture Trustee*"), the Seller, the Depositor, the Sponsor and the Issuer agree to the sale by the Seller to the Depositor and by the Depositor to the Issuer and the purchase by the Depositor from the Seller and by the Issuer from the Depositor of the mortgage loans listed on the attached Schedule of Additional Mortgage Loans (the "*Additional Mortgage Loans*").

Capitalized terms used and not defined herein have their respective meanings as set forth in Appendix A to the indenture dated as of December 21, 2006, between the Issuer and the Indenture Trustee, which meanings are incorporated by reference herein.  All other capitalized terms used herein shall have the meanings specified herein.

ARTICLE II    SALE OF ADDITIONAL MORTGAGE LOANS.

Section 1.01    Each of the Seller and the Depositor does hereby sell, transfer, assign, set over and convey to the Issuer, without recourse, all of its right, title and interest in and to the Additional Mortgage Loans (including the Additional Balances now existing and thereafter arising), all principal received and interest thereon on and after the Subsequent Transfer Date, all monies due or to become due thereon and all items with respect to the Additional Mortgage Loans to be delivered pursuant to Section 2.01(b) of the Purchase Agreement; provided, however, that the Seller reserves and retains all right, title and interest in and to principal received and interest accruing on the Additional Mortgage Loans prior to the Subsequent Transfer Date. The Seller and the Depositor, contemporaneously with the delivery of this Agreement, has delivered or caused to be delivered to the Indenture Trustee each item required to be delivered pursuant to Section 2.01(b)(iv) and (v) of the Sale and Servicing Agreement.

The transfer to the Depositor by the Seller and to the Issuer by the Depositor of the Additional Mortgage Loans identified on the Mortgage Loan Schedule shall be absolute and is intended by the parties hereto to constitute a sale by the Seller to the Depositor and from the Depositor to the Issuer on the Subsequent Transfer Date of all their respective interest in the Additional Mortgage Loans, and other property as and to the extent described above, and the

E-1

NY1 5998524v.11

AGM00008554

Issuer hereby acknowledges such transfer. In the event the transactions set forth herein shall be deemed not to be a sale, the Seller hereby grants to Depositor and the Depositor hereby grants to the Issuer as of the Subsequent Transfer Date a security interest in all of its applicable interest in, to and under all accounts, chattel papers, general intangibles, contract rights, certificates of deposit, deposit accounts, instruments, documents, letters of credit, money, payment intangibles, advices of credit, investment property, goods and other property consisting of, arising under or related to the Additional Mortgage Loans, and such other property, to secure all of the Issuer's obligations hereunder, and this Agreement shall constitute a security agreement under applicable law. Each of the Seller and the Depositor agrees to take or cause to be taken such actions and to execute such documents, including without limitation the filing of all necessary UCC-1 financing statements filed in the State of Delaware (which shall be submitted for filing as of the Subsequent Transfer Date), any continuation statements with respect thereto and any amendments thereto required to reflect a change in the name or corporate structure of the Seller or the filing of any additional UCC-1 financing statements due to the change in the principal office or jurisdiction of incorporation of the Seller, as are necessary to perfect and protect the Issuer's interests in each Additional Mortgage Loan and the proceeds thereof.

Section 1.02    The expenses and costs relating to the delivery of the Additional Mortgage Loans, this Agreement and the Purchase Agreement shall be borne by the Seller.

Section 1.03    Additional terms of the sale are set forth in the attachment hereto.

ARTICLE II    REPRESENTATIONS AND WARRANTIES; CONDITIONS PRECEDENT.

Section 2.01    Each of the Sponsor and the Seller hereby affirms the representations and warranties made by it and set forth in the Purchase Agreement that relate to the Sponsor, the Seller or the Additional Mortgage Loans as of the date hereof. The Depositor hereby affirms the representations and warranties made by it and set forth in the Sale and Servicing Agreement that relate to the Depositor or the Additional Mortgage Loans as of the date hereof. Each of the Sponsor, the Seller and the Depositor hereby confirms that each of the conditions set forth in Section 2.01(b)(v) of the Sale and Servicing Agreement are satisfied as of the date hereof.

Section 2.02    Each of the Seller and the Depositor is solvent, is able to pay its debts as they become due and has capital sufficient to carry on its business and its obligations hereunder; it will not be rendered insolvent by the execution and delivery of this Agreement or by the performance of its obligations hereunder nor is it aware of any pending insolvency; no petition of bankruptcy (or similar insolvency proceeding) has been filed by or against the Seller or the Depositor prior to the date hereof.

Section 2.03    All terms and conditions of the Purchase Agreement and the Sale and Servicing Agreement relating to the Additional Mortgage Loans are hereby ratified and confirmed; provided, however, that in the event of any conflict the provisions of this Agreement

E-2

NY1 5998524v.11

CONFIDENTIAL

shall control over the conflicting provisions of the Purchase Agreement or the Servicing Agreement, as applicable.

ARTICLE III    GOVERNING LAW.  THIS INSTRUMENT SHALL BE CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK AND THE OBLIGATIONS, RIGHTS AND REMEDIES OF THE PARTIES HEREUNDER SHALL BE DETERMINED IN ACCORDANCE WITH SUCH LAWS.

ARTICLE IV    COUNTERPARTS. This Agreement may be executed in counterparts, each of which, when so executed, shall be deemed to be an original and together shall constitute one and the same instrument.

ARTICLE V    SUCCESSORS AND ASSIGNS.  This Agreement shall inure to the benefit of and be binding upon the Sponsor, the Seller, the Depositor and the Issuer and their respective successors and assigns.

E-3

NY1 5998524v.11

CONFIDENTIAL

AGM00008556

FLAGSTAR CAPITAL MARKETS
CORPORATION, as Seller


By: _____
     Name:
     Title:


FLAGSTAR ABS, LLC, as Depositor


By: _____
     Name:
     Title:


FLAGSTAR BANK, FSB


By: _____
     Name:
     Title:


FLAGSTAR HOME EQUITY LOAN
TRUST 2006-2, as Issuer


By: WILMINGTON TRUST COMPANY,
     not in its individual capacity but solely
     as Owner Trustee


By: _____
     Name:
     Title:

E-4

NY1 5998524v.11

CONFIDENTIAL                                                                 AGM00008557

EXHIBIT F

FORM OF NOTICE OF ADDITIONAL BALANCE INCREASE AMOUNT AND
ADDITIONAL BALANCE

[DATE]

The Bank of New York Trust Company, N.A.
2 North LaSalle Street, Suite 1020
Chicago, Illinois 60602

Re:     Flagstar Home Equity Loan Trust 2006-2
        Asset Backed Notes, Series 2006-2

Gentlemen:

In connection with the Sale and Servicing Agreement, dated as of December 21, 2006, among Flagstar ABS, LLC as Depositor, Flagstar Bank, FSB, as Servicer and Sponsor, Flagstar Home Equity Loan Trust 2006-2 and you, as Indenture Trustee and Auction Administrator (the "Agreement"), we hereby request that you release from the lien of the Indenture and pay in cash from funds on deposit in the Funding Account on _____, 20_____.

Reason for requesting release:

_____     1.     To the order of the [Issuer][Owner Trustee] for payment to the
                            Transferor in reduction of the outstanding Additional Balance
                            Increase Amount, the amount of $[_____].

_____     2.     To the order of the Flagstar Capital Markets Corporation, as Seller,
                            in consideration of the purchase of Additional Balances by the Issuer,
                            the amount of $[_____].

Capitalized terms used herein shall have the meanings ascribed to them in the Agreement.

FLAGSTAR HOME EQUITY LOAN TRUST 2006-2, as
Issuer

By:_____

    Name:
    Title: Servicing Officer

F-1

NY1 5998524v.11

CONFIDENTIAL

AGM00008558

ANNEX 1

GLOSSARY OF DEFINED TERMS

F-2

NY1 5998524v.11

CONFIDENTIAL

AGM00008559