IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSURED GUARANTY MUNICIPAL CORP., f/k/a FINANCIAL SECURITY ASSURANCE INC.,<br><br>Plaintiff,<br><br>vs.<br><br>FLAGSTAR BANK, FSB; FLAGSTAR CAPITAL MARKETS CORPORATION; and FLAGSTAR ABS, LLC,<br><br>Defendants. | Case No. 11-CV-2375 (JSR)<br><br>**DECLARATION OF<br>JOSEPH R. MASON** |

JOSEPH R. MASON declares the following under penalty of perjury:

1.      My name is Joseph R. Mason. I am over the age of twenty-one (21) years, am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this declaration, and each of the facts and statements is true and correct. I submit this declaration to respond to certain points made by Flagstar in its motion to exclude my testimony.

Use of Original Balances

2.      My damages analysis relies upon an "Adverse Defect Rate" that is applied to the two securitizations. The Adverse Defect Rate represents the percentage of defective (breaching) defaulted loans relative to all defaulted loans in the two transactions on the basis of principal balance.

3.      Flagstar asserts that my calculations are flawed because they rely on the original principal balances of the loans. I did use original principal balances.

4. However, to confirm that my calculations were accurate, I cross-checked them using the unpaid principal balances at the time of charge-off rather than the original principal balances. Doing this results in similar Adverse Defect Rates for both transactions.

5. As of the January 26, 2009 frustration date, the Adverse Defect Rates for the 2005-1 and 2006-2 transactions using the original principal balance are **87.59%** and **75.73%,** respectively. Using the defaulted loan balances, the Adverse Defect Rates are **83.69%** and **86.86%,** respectively. Although the Adverse Defect Rates using the defaulted loan balances differ from the Adverse Defect Rates using the original principal balances, this has no effect on the nominal reimbursement amounts Flagstar owes Assured because the defect rate is high enough to reimburse Assured for all claims. (The total amount of interest, however, varies slightly depending on which defect rate is used).

## Damages Based on Defect Subcategories

6. Flagstar asserts that my damages analysis is flawed because it relies on breach findings premised on missing documentation that, according to Flagstar's theory, can be cured retrospectively. But even if I use a defect rate based solely on breaches of Flagstar's "no fraud" representation, Assured's damages are approximately **$108 million** (through June 25, 2012), based on the January 26, 2009 frustration date. Once again, the reason is that the defect rate is high enough to reimburse Assured for all claims.

7. I calculated the different defect rates for fraud and for underwriting deficiencies as of the January 26, 2009 frustration date. The fraud defect rates for the 2005-1 and 2006-2 transactions are **40.67%** and **63.94%** respectively. The underwriting defect rates are **83.69%** and **86.86%** respectively. Whether you use the fraud defect rates *or* the underwriting deficiency defect rates listed above, had Flagstar repurchased the corresponding percentage of defective

loans from the pools, Assured would have been reimbursed for, or insulated from, all claims (again, with slightly varying amounts of total interest).

8. Using the defect rates based solely on fraud, Assured's damages are **$108,361,440** (including interest) based on the January 26, 2009 frustration date. Using the defect rates based solely on underwriting deficiencies, Assured's damages are **$108,443,503** (including interest) based on the January 26, 2009 frustration date. The reason for the difference between these two damage amounts is that if the underwriting-only defect rate is used, Assured would have been reimbursed sooner by the trust for paid claims, resulting in a slight increase in the total amount of statutory interest due. These figures do not include Assured's expenses and costs associated with its attempts to enforce its contractual rights.

9. These figures are approximately **$5** million higher than I estimated in my Second Supplemental Report because of: (1) the additional net claims paid by Assured from December 2011 through June 2012 totaling approximately **$700,000** for 2005-1 and **$1.4 million** for 2006-2, and (2) the accumulation of additional interest on claims paid by Assured through June 25, 2012.

Interest Rate

10. Flagstar asserts that I "applied New York's statutory prejudgment interest rate to payments after a frustration date, even as [I] used the contract interest rate for payments up to that frustration date." That is not an accurate statement of what I did. I applied contractual interest to claim amounts paid by Assured up until the time that the trusts would have reimbursed Assured for those claims, had Flagstar repurchased the defective loans as it was supposed to. I applied statutory interest thereafter.

11.     In any case, even if *only* contractual interest is applied to *all* claims, damages would still amount to roughly **$102 million**, based on the January 26, 2009 frustration date, regardless of the whether the fraud or underwriting defect rate is used.

Recovery Amounts

12.     Flagstar asserts that "Dr. Mason also did not account for recoveries Flagstar collected on defaulted loans, and applied his Defect Rates to gross liquidation losses instead of liquidation losses net of recoveries." But my analysis *does* account for those recoveries; when those recoveries come in, they offset and lower the claims Assured pays in subsequent months.

Change in Adverse Defect Rate Over Time

13.     Flagstar asserts that my damages calculations are unreliable because the Adverse Defect Rate that I employ changes over time. But the fact that the Adverse Defect Rate changes over time merely takes proper account of the evolution of the loan pools. As previously explained, the Adverse Defect Rate is the percentage of defective defaulted loans relative to total defaulted loans. Because those numbers will both change over time, the rate may be different depending on when it is measured.

Dated: September 25, 2011

_____
Joseph R. Mason, Ph.D.