IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSURED GUARANTY MUNICIPAL CORP., f/k/a FINANCIAL SECURITY ASSURANCE INC.<br><br>Plaintiff,<br><br>vs.<br><br>FLAGSTAR BANK, FSB; FLAGSTAR CAPITAL MARKETS CORPORATION; and FLAGSTAR ABS, LLC,<br><br>Defendants. | Case No. 11-CV-2375 (JSR)<br><br>**DECLARATION OF<br>REBECCA WALZAK** |

REBECCA WALZAK declares the following under penalty of perjury:

1. My name is Rebecca Walzak. I am over the age of twenty-one (21) years, am competent to testify to the matters stated herein, have personal knowledge of the facts and statements in this declaration, and each of the facts and statements is true and correct.

2. I have been engaged as an expert in mortgage underwriting by counsel for Assured Guaranty Municipal Corp., formerly known as Financial Security Assurance, Inc. I have previously authored and disclosed an expert report dated November 14, 2011, and amended on December 2, 2011. My expert report summarized the methodology I employed to review 800 mortgage loans originated by Flagstar Bank, FSB, and its agents or affiliates. My expert report further summarizes the opinions I expect to offer at trial.

3. I have reviewed Defendants' Memorandum of Law in Support of Their Motions in Limine and to Exclude Plaintiff's Experts' Testimony. I submit this declaration to correct Defendants' misstatements regarding my deposition testimony and to clarify certain aspects of my testimony.

4. Counsel engaged me to determine whether the 800 loans in the review samples complied with certain representations and warranties contained in the Mortgage Loan Purchase Agreements ("MLPAs") dated December 8, 2005 and December 21, 2006, respectively. These representations and warranties included promises that the mortgage loans subject to the MLPAs complied with Flagstar underwriting guidelines.

5. To complete my assignment, I assembled a team of experienced mortgage underwriters. By "experienced," I mean that my team members collectively possessed decades of experience in underwriting loans to ensure compliance with originator underwriting guidelines. I also employed a supervisory underwriter to ensure that assignments were completed properly and on time.

6. Flagstar claims that I provided no meaningful guidance to my underwriting team. This is not true. Prior to commencing work, I conveyed written and verbal instructions to the team members and provided copies of Flagstar's underwriting guidelines. I also provided each team member with a spreadsheet containing over 100 questions designed to ensure the proper performance of the underwriting review and to answer essential questions regarding underwriting compliance and other issues.

7. After receiving the results of my underwriting team's reviews, I personally reviewed their findings regarding any loans that failed to comply with representations and warranties. Based on my personal review, I incorporated my team's findings in my expert opinions reflected in my report.

8. In reaching my opinions, I also utilized reviews performed by a company called Digital Risk, a risk mitigation and surveillance firm, in investigating potential fraud and misrepresentation in each of the 800 loan files. Prior to commencing work, I verbally discussed

the scope of the review with Digital Risk and authorized their proposed review protocols, including the use of a separate vendor called Clear Capital that would be tasked with conducting automated property valuations.

9. Digital Risk provided me the results of their reviews. I carefully considered each of their findings utilizing my extensive expertise in the industry. Based on my personal Review, I incorporated Digital Risk's findings in the expert opinions reflected in my report.

10. Of the one hundred and twenty-six loans referenced in Defendants' motions in limine, I have personally reviewed the loan files and any relevant findings and supporting documents provided by my underwriting team and Digital Risk.

*Rebecca B. Walzak*
Rebecca Walzak