UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSURED GUARANTY MUNICIPAL CORP., f/k/a FINANCIAL SECURITY ASSURANCE INC., <br><br>      Plaintiff, <br><br> vs. <br><br>FLAGSTAR BANK, FSB; FLAGSTAR CAPITAL MARKETS CORPORATION; and FLAGSTAR ABS, LLC, <br><br>      Defendants. | Civil Action No. 11–CIV–2375 (JSR) |

## **JOINT PROPOSED PRETRIAL ORDER**

A. **STATEMENT OF FACTS AND OTHER MATTERS ON WHICH THE PARTIES AGREE**

Pursuant to the Individual Rules of Practice of the Hon. Jed S. Rakoff, Plaintiff Assured Guaranty Municipal Corp., f/k/a Financial Security Assurance Inc. ("Plaintiff" or "Assured"), and Defendants Flagstar Bank, FSB, Flagstar Capital Markets Corporation, and Flagstar ABS, LLC ("Defendants" or "Flagstar"), by their undersigned attorneys, respectfully submit the following Statement of Facts on Which the Parties Agree.

I. **Parties**

    A.     Plaintiff Assured Guaranty Municipal Corp.

    1.     Assured is a New York corporation with its principal place of business at 31 West 52nd Street, New York, New York 10019.

    2.     Assured, formerly known as Financial Security Assurance Inc., or "FSA," provided note insurance with respect to the transactions at issue in this case.

    3.     In return, Assured was paid a premium out of the cash flows generated by the underlying mortgages in the Trusts.

    B.     The Flagstar Defendants

    4.     Flagstar Bank is a federally chartered savings bank organized under the laws of the state of Michigan with its principal place of business at 5151 Corporate Drive, Troy, Michigan 48098.

    5.     FCMC is a Delaware corporation and wholly owned subsidiary of Flagstar Bank. Its principal place of business is at 5151 Corporate Drive, Troy, Michigan 48098.

1

6. Flagstar ABS is a Delaware corporation and wholly owned subsidiary of FCMC. Its principal place of business is at 5151 Corporate Drive, Troy, Michigan 48098.

7. Flagstar Bank is a federally chartered stock savings bank with banking centers located in Michigan, Indiana and Georgia.

8. Flagstar Bank also has residential mortgage loan origination operations. The residential mortgage products offered by Flagstar Bank include, among other things, home equity lines of credit ("HELOCs") and second-lien mortgages, which carry a subordinated priority to first-lien mortgages.

## II.    The Transactions

9. Flagstar Bank is an originator of mortgage loans, and offers products including home equity lines of credit ("HELOCs") and second-lien mortgages, which are subordinated to first-lien mortgages.

10. In 2005, Flagstar completed a non-agency securitization involving the Flagstar Home Equity Loan Trust 2005-1 ("2005-1 Trust").

11. The mortgages underlying the notes issued by the 2005-1 Trust were HELOCs.

12. When issued, the 2005-1 Trust was collateralized by 8,155 individual HELOCs.

13. In 2006, Flagstar completed a non-agency HELOC securitization, backed by 4,186 HELOCs.

14. The HELOCs in both deals were originated through Flagstar's home lending group or purchased by Flagstar from mortgage loan brokers and correspondents throughout the United States.

15. Any HELOC in either deal purchased by Flagstar from mortgage loan brokers or correspondents was issued in accordance with Flagstar's underwriting guidelines and approved by Flagstar at the time of the loan.

16. Assured issued policies guaranteeing certain payments of principal and interest to the holders of the notes issued in the 2005-1 and 2006-2 Transactions. In exchange, Assured was paid a premium out of the cash flows generated by the underlying loans in the two deals.

17. Flagstar was the sponsor, servicer, depositor, and originator of the loans underlying the Transactions.

18. On or about December 8, 2005, Assured, Flagstar Bank FSB, Flagstar ABS, LLC, and the Flagstar Home Equity Loan Trust 2005-1 executed an Insurance and Indemnity Agreement ("2005-1 I&I") in connection with the issuance of certain Home Equity Loan Asset-Backed Notes known as Series 2005-1 (the "2005-1 Securities").

19. On or about December 1, 2005, Flagstar Home Equity Loan Trust 2005-1 and JPMorgan Chase Bank N.A. executed an indenture of trust ("2005-1 Indenture") in connection with the 2005-1 Securities. Section 19 of the 2005-1 Indenture designates Assured, the Note Insurer, as a third party beneficiary of the indenture.

20. On or about December 8, 2005, Flagstar Bank FSB, and Flagstar ABS, LLC executed a Purchase Agreement ("2005-1 PA") in connection with the 2005-1 Securities.

21. Section 7.08 of the 2005-1 PA designates Assured, the note insurer, as a third-party beneficiary of the agreement.

22. On or about December 8, 2005, Flagstar Bank ABS, LLC, Flagstar Bank FSB, Flagstar Home Equity Loan Trust 2005-1, and J.P. Morgan Chase Bank, N.A., executed a Sale and Servicing Agreement ("2005-1 SSA") in connection with the 2005-1 Securities.

23. Section 8.06 of the 2005-1 SSA designates Assured, the Note Insurer, as a third-party beneficiary of the agreement.

24. By its terms, the 2005-1 I&I incorporates the representations, covenants and warranties made by the Flagstar Entities in the 2005-1 PA and the 2005-1 SSA.

25. On or about December 21, 2006, Assured, as the note insurer, the Flagstar Defendants, and the Flagstar Home Equity Loan Trust 2006-2, executed an Insurance and Indemnity Agreement ("2006-2 I&I") in connection with in connection with certain Home Equity Loan Asset-Backed Notes known as Series 2006-2 (the "2006-2 Securities").

26. On or about December 21, 2006 Flagstar Home Equity Loan Trust 2006-2 and The Bank of New York Company, N.A. executed an indenture of trust ("2006-2 Indenture") in connection with the 2006-2 Securities.  Section 20 of the 2006-2 Indenture designates Assured, the Note Insurer, as a third party beneficiary of the indenture.

27. On or about December 21, 2006, the Flagstar Defendants executed a Purchase Agreement ("2006-2 PA") in connection with 2006-2 Securities.

28. Section 7.08 of the 2006-2 PA designates Assured, the Note Insurer, as a third-party beneficiary of the 2006-2 PA.

29. On or about December 21, 2006, the Flagstar Defendants, Flagstar Home Equity Loan Trust 2006-2, and The Bank of New York Trust Company, N.A., executed a Sale and Servicing Agreement ("2006-2 SSA") in connection with 2006-2 Securities.

30. Section 8.06 of the 2006-2 SSA designates Assured, the Note Insurer, as a third-party beneficiary of the agreement.

31. By its terms, the 2006-2 I&I incorporates the representations, covenants and warranties made by the Flagstar Entities in the 2006-2 PA and the 2006-2 SSA.

### III. Rapid Amortization Periods

32. The Rapid Amortization Period for Flagstar Home Equity Loan Trust 2005-1 began no later than May 16, 2008.

33. The Rapid Amortization Period for Flagstar Home Equity Loan Trust 2006-2 began no later than December 26, 2007.

### IV. Demands

34. By two January 13, 2009 letters from Assured Managing Director Errol Uhr, Assured made two repurchase demands regarding the 2005-1 and 2006-2 Transactions ("2009 Demands").

35. By two July 9, 2010 letters from Assured's Director of Loss Mitigation Linda Kobrin, Assured made two repurchase demands regarding the 2005-1 and 2006-2 Transactions ("2010 Demands").

### V. Transferor's Interest

36. The Transferor's Interest is a tranche in the transaction that represents Flagstar's residual interest in the Transactions.

37. Because the Transferor's Interest is subordinated to reimbursement of the Plaintiff's claims on the Transaction's cash flows, it is only paid if Plaintiff is fully reimbursed at the end of the Transaction for all claims it has paid.

**B.    DESCRIPTION OF CLAIMS, COUNTERCLAIMS & CROSS-CLAIMS**

Plaintiff's Claims:

Count I:  Claim for breach of contract against Flagstar Bank and Flagstar ABS. Assured claims that Flagstar Bank and Flagstar ABS have breached their obligations under the 2005-1 PA, 2005-1 SSA, and 2005-1 I&I.

Count II:  Claim for breach of contract against Flagstar Bank, FCMC, and Flagstar ABS.  Assured claims that Flagstar Bank, FCMC, and Flagstar ABS have breached their obligations under the 2006-2 PA, 2006-2 SSA, and 2006-2 I&I.

Defendant's Counterclaims and Crossclaims:

None.

**C.    PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

I.    Proposed Findings of Fact

The Court finds by a preponderance of the evidence that:

A.    The Parties

1.    Assured Guaranty Municipal Corp. ("Assured") is a New York corporation with its principal place of business at 31 West 52nd Street, New York, New York 10019.

2. Flagstar Bank, FSB ("Flagstar Bank") is a federally chartered savings bank organized under the laws of the state of Michigan with its principal place of business at 5151 Corporate Drive, Troy, Michigan 48098.

3. Flagstar Capital Markets Corp. ("FCMC") is a Delaware corporation and wholly owned subsidiary of Flagstar Bank. Its principal place of business is at 5151 Corporate Drive, Troy, Michigan 48098.

4. Flagstar ABS, LLC ("Flagstar ABS") is a Delaware corporation and wholly owned subsidiary of FCMC. Its principal place of business is at 5151 Corporate Drive, Troy, Michigan 48098.

5. Flagstar Bank, FCMC, and Flagstar ABS are referred to collectively as "Flagstar."

B.  The Transactions

6. Flagstar Bank is an originator of mortgage loans, and offers products including home equity lines of credit ("HELOCs") and second-lien mortgages, which are subordinated to first-lien mortgages.

7. Prior to 2005, Flagstar securitized loans for purchase by government-sponsored agencies (GSEs) such as Fannie Mae and Freddie Mac.

8. In the fourth quarter of 2005, Flagstar securitized $600 million of notes backed by HELOCs in a private placement.

9. That securitization involved the creation of Flagstar Home Equity Loan Trust 2005-1 ("2005-1 Trust"). The mortgages originally underlying the notes issued by the 2005-1 Trust were 8,155 HELOCs.

10. In December 2006, Flagstar securitized approximately $300 million of notes in the Flagstar Home Equity Loan Trust 2006-2 ("2006-2 Trust"). The mortgages originally underlying the notes issued by the 2006-2 Trust were 4,186 HELOCs. The 2005-1 and 2006-2 securitizations are collectively referred to herein as the "Transactions."

11. The HELOCs that collateralized both the 2005-1 and 2006-2 Trusts were originated by Flagstar, either through Flagstar's home lending group or purchased by Flagstar from mortgage loan brokers and approved correspondents throughout the United States.

12. Regardless of the originator, Flagstar represented to Assured that all of the HELOCs that collateralized the 2005-1 and 2006-2 Trusts were underwritten in accordance with Flagstar's underwriting guidelines.

13. Flagstar was the sponsor, servicer, depositor, and originator of the loans underlying the Transactions.

14. Assured, formerly known as Financial Security Assurance Inc., or "FSA," is a financial guaranty insurance company. Flagstar solicited FSA to provide financial guaranty insurance policies concerning the 2005-1 and 2006-2 Trusts (the "2005-1 Policy" and the "2006-2 Policy"). The policies guaranteed certain payments of principal and interest to the holders of the notes issued to investors in the 2005-1 and 2006-2 Transactions (the "2005-1 Securities" and the "2006-2 Securities"). In return, Assured received a premium out of the cash flows generated by the loans in the two deals.

C. The Transaction Documents

15. Assured and Flagstar are parties to a number of contracts relating to the 2005-1 and 2006-2 Policies and Securities ("Transaction Documents").

16. In connection with the 2005-1 Policy and Securities, on or about December 8, 2005, Assured, Flagstar Bank, Flagstar ABS and the Flagstar Home Equity Loan Trust 2005-1 executed an Insurance and Indemnity Agreement ("2005-1 I&I").

17. On or about December 8, 2005, Flagstar Bank and Flagstar ABS executed a Purchase Agreement ("2005-1 PA"). Section 7.08 of the 2005-1 PA designates Assured as a third-party beneficiary of the agreement.

18. On or about December 8, 2005, Flagstar Bank, the Flagstar Home Equity Loan Trust 2005-1, and J.P. Morgan Chase Bank, N.A., executed a Sale and Servicing Agreement ("2005-1 SSA"). Section 8.06 of the 2005-1 SSA designates Assured as a third-party beneficiary of the agreement.

19. By its terms, the 2005-1 I&I incorporates the representations, covenants and warranties made by Flagstar in the 2005-1 PA and the 2005-1 SSA.

20. In connection with the 2006-2 Policy and Securities, on or about December 21, 2006, Assured, Flagstar Bank, FCMC, and Flagstar ABS executed an Insurance and Indemnity Agreement ("2006-2 I&I").

21. On or about December 21, 2006, Flagstar Bank, FCMC, and Flagstar ABS executed a Purchase Agreement ("2006-2 PA"). Section 7.08 of the 2006-2 PA designates Assured as a third-party beneficiary of the agreement.

22. On or about December 21, 2006, Flagstar Bank, FCMC, Flagstar ABS, the Flagstar Home Equity Loan Trust 2006-2, and the Bank of New York Trust Company,

N.A., executed a Sale and Servicing Agreement ("2006-2 SSA"). Section 8.06 of the 2006-2 SSA designates Assured as a third-party beneficiary of the agreement.

23. By its terms, the 2006-2 I&I incorporates the representations, covenants and warranties made by Flagstar in the 2006-2 PA and the 2006-2 SSA.

D. <u>Flagstar's Breach of the Transaction Documents</u>

  i. <u>The Transaction Documents are Valid and Enforceable</u>

24. The Transaction Documents are valid and enforceable contracts.

  ii. <u>Assured Has Performed Its Obligations Under the Transaction Documents</u>

25. Assured has performed its obligations under all of the Transaction Documents.

  iii. <u>Flagstar Has Breached the Transaction Documents</u>

    (a) <u>Assured's Samples are Representative</u>

26. Based on the credible testimony of expert witness Dr. Nelson Lipshutz, the two 400-loan random samples of loans used by Assured in this litigation are representative of the total loan populations in the 2005-1 and 2006-2 securitization pools, respectively, for all purposes relevant to this case.

    (b) <u>2005-1 and 2006-2 PA</u>

27. In the 2005-1 PA and 2006-2 PA, Flagstar Bank (the "Seller") made over seventy five representations and warranties relating to the HELOCs in the two securitization pools ("Mortgage Loans").

28. Included among these representations and warranties were that:

> "There is no default, breach, violation or event of acceleration existing under the Mortgage or the related Credit Line Agreement and no event which, with the

passage of time or with notice and the expiration of any grace or cure period, would constitute a default, breach, violation or event of acceleration; and neither Flagstar nor the Seller has waived any default, breach, violation or event of acceleration." 2005-1 PA § 3.02(a)(35); 2006-2 PA § 3.02(a)(34);

"Each Mortgage Loan was originated in good faith and in accordance with the Seller's underwriting guidelines." 2005-1 PA § 3.02(a)(36); 2006-2 PA § 3.02(a)(35);

"The Mortgage Loan was acquired by the Seller directly through loan brokers or correspondents such that (a) the Mortgage Loan was originated in conformity with the Seller's underwriting guidelines, (b) the Seller approved the Mortgage Loan prior to funding and (c) the Seller provided the funds used to originate the Mortgage Loan and acquired the Mortgage Loan on the date of origination thereof." 2005-1 PA § 3.02(a)(60); 2006-2 PA § 3.02(a)(59);

"No error, omission, misrepresentation, negligence, fraud or similar occurrence with respect to a Mortgage Loan has taken place on the part of any person, including, without limitation, the Mortgagor, any appraiser, any builder or developer, or any other party involved in the origination of the Mortgage Loan or in the application of any insurance in relation to such Mortgage Loan." 2005-1 PA § 3.02(a)(65); 2006-2 PA § 3.02(a)(64);

"No selection procedure adverse to the interests of the Purchaser, the Noteholders, or the Note Insurer was used in selecting the Mortgage Loans." 2005-1 PA § 3.02(a)(19); 2006-2 PA § 3.02(a)(19);

"[At] the time of origination Seller had no knowledge of any fact that would have led it to expect that any interest in any Mortgage Loan is unlikely to be paid in full when it becomes due and payable." 2005-1 PA § 3.02(a)(74); 2006-2 PA § 3.02(a)(73).

29.     Based on the credible testimony of underwriting expert, Rebecca Walzak, at least 340 out of the 400 loans in the 2005-1 random sample contain one or more breaches of Flagstar Bank's representations and warranties in the 2005-1 PA. Further,

266 out of the 400 loans in the 2006-2 random sample contain one or more breaches of Flagstar Bank's representations and warranties in the 2006-2 PA.

(c) <u>2005-1 and 2006-2 SSA</u>

30. In the 2005-1 and 2006-2 SSAs, Flagstar Bank (2005-1 and 2006-2) and FCMC (2006-2) incorporated each representation and warranty made by Flagstar in section 3.02(a) of the 2005-1 and 2006-2 PAs. 2005-1 and 2006-2 SSA, §2.04(a).

31. Flagstar Bank agreed to "use all reasonable efforts to cure in all material respects any breach of the foregoing representations and warranties within 90 days of becoming aware of it" or that "all interest of the Issuer in the Defective Mortgage Loan shall . . . automatically be retransferred without recourse, representation, or warranty to [Flagstar Bank]." *Id*., §2.04(d).

32. The evidence and the record, including (a) the pervasive nature of the breaches at issue; (b) evidence of Flagstar's awareness of breaches before, during, and shortly after the time the Transaction Documents were executed; (c) the fact that the Mortgage Loans were originated by Flagstar, its employees, and its agents; (d) the fact that Flagstar serviced the Mortgage Loans following execution of the Transaction Documents until 2010; and (e) the fact that, beginning in January 2009, Assured made formal repurchase demands to Flagstar on approximately 900 hundred Mortgage Loans, support the conclusion that Flagstar knew or should have known about the breaches of its representations and warranties with respect to all of the Mortgage Loans no later than January 26, 2009.

33. Flagstar Bank's failure to repurchase the Mortgage Loans in Assured's samples was a breach of Flagstar Bank's obligations under §2.04(d) of the 2005-1 and 2006-2 SSAs.

(d) <u>2005-1 and 2006-2 I&I</u>

34. In the 2005-1 and 2006-2 I&Is, Flagstar represented and warranted to Assured that "[e]ach of the representations and warranties of the [Flagstar Bank], [FCMC] or [Flagstar ABS] contained in the Transaction Documents is true and correct in all material respects and [Flagstar Bank], [FCMC] and [Flagstar ABS] hereby makes each such representation and warranty to, and for the benefit of, [Assured] as if the same were set forth in full herein." §2.02(k).

35. In Appendix A to each of the I&Is, Flagstar agreed that a "Condition Precedent to the Issuance of the Policy" was that "[t]he representations and warranties of [Flagstar], [FCMC] and [Flagstar ABS] in this Agreement shall be true and correct in all material respects as of the Date of Issuance as if made on the Date of Issuance."

36. In light of the breaches identified above, Flagstar materially breached its representation and warranty in §2.01(k) and violated a condition precedent to Assured's issuance of the 2005-1 and 2006-2 Policies.

      iv. <u>Assured Has Incurred Substantial Damages Caused By Flagstar's Breaches of Contract</u>

37. As of September 25, 2012, Assured has paid $14,737,910.65 in claims pursuant to the 2005-1 Policy. Ex. 459, 2005-1 Trustee Report.

38. As of September 25, 2012, Assured has paid $75,420,269.95 in claims pursuant to the 2006-2 Policy. Ex. 458, 2006-2 Trustee Report.

13

39. Based on the credible testimony of expert witness Dr. Joseph R. Mason, and focusing only on the material breaches identified in defaulted Mortgage Loans in Assured's samples (extrapolated to the total loan populations), Assured would have avoided, or been reimbursed in full, for all claims paid with respect to the Policies had Flagstar timely complied with its repurchase obligations under the 2005-1 and 2006-2 SSAs as of January 26, 2009.

40. Based on Dr. Mason's testimony, Assured's total contractual damages (exclusive of reimbursable fees and expenses, which are addressed separately below) are the full amount of the claims it has paid, in addition to applicable statutory and contractual interest, in the total amount of $108,443,503.

41. Dr. Mason's testimony also supports the conclusion that Flagstar's timely repurchase of the Mortgage Loans in question would have provided the Transactions with overcollateralization sufficient to insulate Assured from any future claims payable with respect to the 2005-1 and 2006-2 Policies.

42. Section 3.03(b)(iii) if the 2005-1 and 2006-2 I&I requires that Flagstar reimburse Assured for its reasonable fees and expenses incurred in pursuing its claims in this litigation, and also in pursuing the repurchase of loans prior to the commencement of this litigation.

43. Assured has incurred reasonable costs, fees and expenses of $4,900,320.11 through June 29, 2012, and has incurred additional reimbursable costs, fees, and expenses through the present date to be determined after trial.

14

E. <u>Flagstar's Affirmative Defenses</u>

44. The pre-closing reviews of loans conducted by Clayton Group and Bohan Group are not relevant to the question whether Flagstar materially breached its contractual obligations under the Transaction Documents.

45. Neither Assured's nor Flagstar's pre-Transaction estimates of the losses expected to be incurred with respect to the Transactions are relevant to the question of whether Flagstar breached its contractual obligations under the Transaction Documents.

46. Flagstar's affirmative defenses set forth in its Answer to the First Amended Complaint are otherwise without merit. To the extent any of Flagstar's affirmative defenses were not expressly precluded by the Court's September 25, 2012 Memorandum denying Flagstar's motion to summary judgment, Dkt. No. 100 (the "Order"), they are unsupported by the evidence presented at trial.

II. <u>Proposed Conclusions of Law</u>

The Court renders the following conclusions of law:

A. <u>Sampling is a Proper Measure of Proof</u>

1. Assured use in this case of sampling as a method of proof to prove Flagstar's liability for breach of contract, and the damages attributable to Flagstar's breaches, is proper under New York law. *MBIA v. Countrywide Home Loans, Inc.*, 30 Misc. 3d 1201(A), at *4 (N.Y. Sup. Ct. Dec. 22, 2010) ("The court finds that Plaintiff's proposed methodology of statistical sampling may be used at trial."); *Syncora Guarantee Inc. v. EMC Mortg. Corp.*, 2011 WL 1135007, at *4 (S.D.N.Y. March 25, 2011) (granting Syncora's motion for partial summary judgment, where Syncora contended that

"it was not limited to the contractual loan-by-loan remedy, but rather could seek a pool-wide remedy based on sampling and extrapolation").

B. <u>Legal Standards Applicable to Assured's Claims</u>

1. The Transaction Documents are governed by New York law. 2005-1 and 2006-2 I&I at §6.05, 2005-1 and 2006-2 PA at §7.02, 2005-1 and 2006-2 SSA at §8.02, 2005-1 and 2006-2 Policy at p. 1.

2. The elements of a breach of contract action are "the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." *Harris v. Seward Park Hous. Corp.*, 79 A.D.3d 425, 913 N.Y.S.2d 161, 162 (1st Dep't 2010) (per curiam).

3. The standard for materiality with respect to breaches of the representations and warranties concerning a Mortgage Loan is that the breach increase the risk of loss on the loan at the time the Transaction Documents were executed. Order at 9-11 (Slip Op.).

4. Flagstar is obligated to repurchase any Mortgage Loan upon becoming aware of a breach of its representations and warranties in the Transaction Documents. "Awareness" may be either actual or constructive, and thus if Flagstar should have known, based on the circumstances, of the breach, it was obligated to repurchase the loan in question. *See* Amended Memorandum, Dkt. No. 56, at 18 ("In that vein, given the material uniformity of the underlying loan population, AGM contends that its notification [to Flagstar] of pervasive breaches" affecting the charged off loans that were the subject of AGM's internal review . . . rendered Flagstar constructively "aware" - or, at minimum, put Flagstar on inquiry notice - of the substantial likelihood that these breaches extended

beyond the charged off loan population and into the broader loan portfolio. For purposes of the instant motion, the Court agrees.").

5. The contractual interest rate in §6.03 of the 2005-1 and 2006-2 I&Is is applicable to Assured's claims except to the extent that Assured would not have paid a claim, or would have been reimbursed for claims payments sooner, had Flagstar not breached its repurchase obligations. To the extent that any claims should not have been paid, or for the additional delay in reimbursement due to the Flagstar's breach, 9% statutory interest pursuant to NY CPLR §§5001-5004 is applicable.

6. Flagstar cannot cure "in all material respects" any breach as to a Mortgage Loan that has already defaulted.

### D. DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Defendants' proposed findings of fact and conclusions of law are attached hereto as Exhibit E.

### E. DAMAGES

1. Assured claims a total of $108,443,503 in contractual damages, inclusive of applicable contractual and statutory interest, for Flagstar's breaches of the Transaction Documents, as follows: Count I: $16,346,591 in contractual damages for breach of the 2005-1 PA, 2005-1 SSA, and 2005-1 I&I, of which approximately $2 million is interest; and Count II: $92,096,912 in contractual damages for breach of the 2006-2 PA, 2006-2 SSA, and 2006-2 I&I the 2006-2 Transaction, of which approximately $16 million is interest.

2. Assured claims a total of $4,900,320.11 in reimbursable costs, fees, and expenses through June 29, 2012, associated with its attempts to enforce its rights against Flagstar under the Transaction Documents, as follows: (1) $3,067,572.96 in billed and unbilled legal fees incurred in connection with Assured's repurchase demands to Flagstar and this litigation, (2) $1,133,815.66 in expert witness fees and costs incurred in connection with this litigation, (3) $698,931.47 in third-party fees and costs incurred in connection with this litigation.  Assured has incurred additional reimbursable costs, fees, and expenses through the present date.

3. Prospective relief for future damages that may be incurred by Assured.

### F.   LIST OF WITNESSES

Plaintiff:

Assured Guaranty Municipal's witness list is appended hereto as Exhibit A.

Defendants:

Flagstar's witness list is appended hereto as Exhibit B.

### G.   LIST OF EXHIBITS

Plaintiff:   Assured Guaranty Municipal's exhibit list is appended hereto as Exhibit C.

Defendants:   Flagstar's exhibit list is appended hereto as Exhibit D.

### H.   PROBABLE LENGTH OF TRIAL

Assured estimates that trial should last one court day for the presentation of its affirmative case, not including cross-examination.  Given how many of defendants'

arguments have been rejected on summary judgment, Assured believes that this trial should take no more than five court days.

Defendants estimate that trial should last 8 court days.

DATED: October 3, 2012

                                **APPROVED AS TO**
                                **FORM AND SUBSTANCE:**

                                **SUSMAN GODFREY LLP**

By:   */s/ Jacob W. Buchdahl*
      Jacob W. Buchdahl
      Arun Subramanian
      Warren Burns
      Joseph Portera
      SUSMAN GODFREY L.L.P.
      560 Lexington Ave., 15th Floor
      New York, NY 10022
      (212) 336-8330

                                **ARNOLD & PORTER LLP**

By:   */s/ Veronica E. Rendon*
      Veronica E. Rendón
      Stewart D. Aaron
      Susan L. Shin
      399 Park Avenue
      New York, New York 10022
      Tel. No. 212 715-1000
      Fax No. 212 715-1399
      *Attorneys for Defendants Flagstar Bank, FSB; Flagstar Capital Markets Corporation; and Flagstar ABS, LLC*